UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
JOHN DOE,                            )
    Plaintiff                        )
                                     )
v.                                   )
                                     )   No. 1:16-cv-11381-GAO
MUTUAL OF OMAHA                      )
INSURANCE COMPANY,                   )
    Defendant                        )
_____)

**PLAINTIFF'S MOTION FOR LEAVE OF COURT TO FILE REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO REMAND AND INCORPORATED <u>REPLY MEMORANDUM</u>**

Pursuant to LR. 7.1(b)(3), Plaintiff John Doe ("Doe") requests leave of court to file this short reply memorandum in order to respond to assertions in Defendant Mutual of Omaha Insurance Company's ("Mutual") opposition to Doe's motion to remand the case to state court. In sum, Doe contends that Mutual has not met its burden to prove that a policy will issue to Doe as a result of the judgment in this case. Doe, however, will withdraw his motion to remand the case to state court upon the filing of a stipulation by Mutual to that effect.

    I.    **RESPONSE TO MUTUAL'S PRELIMINARY STATEMENT.**

Although it is well established that "a plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction," *Huston v. FLS Language Centres*, 18 F.Supp.3d 17, 21 (D. Mass. 2014) (internal quotation omitted), Mutual began its opposition to Plaintiff's motion to remand by arguing the merits of its case and attaching documents that require context and expert testimony to be fully understood. *See* Mutual Opposition at 1-2. It is therefore fair and appropriate for Doe to respond briefly. This case will involve scientific evidence about the

1

risk of HIV transmission, a subject that has raised much fear and misunderstanding throughout the history of the epidemic. Mutual raises the specter of these fears by throwing out the terms "significant risk" and "high risk" of contracting HIV when in fact these are epidemiological categories that require nuanced understanding, and the general risk of HIV transmission even without any protective steps is far smaller than is popularly perceived. Pre-exposure prophylaxis (PrEP) through oral administration of the drug Truvada to HIV-negative individuals dramatically reduces the risk of HIV transmission. As the United States Centers for Disease Control and Prevention has stated, "'[s]tudies have shown that PrEP reduces the risk of getting HIV from sex by more than 90% when used consistently." *See* Centers for Disease Control and Prevention, *PrEP,* http://www.cdc.gov/hiv/basics/prep.html (last modified April 12, 2016)*. See also* Donald G. McNeil Jr., *Insurer Says Clients on Daily Pill Have Stayed H.I.V.-Free*, N.Y. Times, (Sept. 2, 2015), http://nyti.ms/1hzTE7g. (discussing peer- reviewed study that found no HIV infections in PrEP users over more than two-year period); Ben Sanders, *HIV/AIDS Advocates: PrEP Controversy Makes Job Difficult*, Windy City Times, (Sept. 30, 2015), http://www.windycitymediagroup.com/lgbt/HIV-AIDS-Advocates-PrEP-controversy-makes-job-difficult/52995.html. (quoting Dr. Anthony Fauci, the Director of the National Institute of Allergy and Infectious Diseases, a branch of the National Institute of Health, that if PrEP users adhere to the medication regimen "it is virtually 95-plus percent effective"). Mutual's decision to exclude all HIV- negative individuals who are prescribed PrEP is based on misinformation about HIV transmission and unsound actuarial principles. Mutual does not exclude from its long-term care insurance all applicants in populations that are at a disproportionately higher risk for HIV than the general population, such as gay men and African-Americans. Mutual, for example, will

2

sell long-term care insurance to an otherwise qualified sexually active gay man who is *not* on PrEP, but will categorically deny long-term care insurance to a similarly situated otherwise qualified gay man who *is* on PrEP. Mutual thus offers its insurance product to the relative higher risk and discriminates against the relative lower risk on the unfounded grounds that the lower risk individual is at too high a risk for HIV. This is not how insurance companies typically act with respect to risk.

>   II.   **MUTUAL HAS NOT DEMONSTRATED A REASONABLE PROBABILITY THROUGH COMPETENT EVIDENCE THAT A POLICY WILL ISSUE TO DOE AS A RESULT OF THE JUDGMENT IN THIS CASE.**

Mutual's opposition does not sufficiently counter Doe's contention that a judgment in this case will not lead directly to the issuance of a policy to him, but rather is contingent on an independent event – that is, any further underwriting that Mutual may do beyond the Truvada exclusion. *See New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892); *United States Olympic Comm. v. Ruckman*, 2010 U.S. Dist. LEXIS 52840, *32 (D. Mass. 2010) (amount in controversy cannot be based on "the occurrence of events yet to take place, and there is no guarantee (or even proof of likelihood) that such events will").

Mutual has not met its burden to prove through competent evidence that there is a reasonable probability that a policy will issue to Doe as a result of a judgment in this case. Mutual cannot rely on Doe's good faith pleadings. Plaintiff may believe that he is otherwise qualified for long-term care insurance, but whether a policy will issue is solely within Mutual's knowledge.[1] Further, Mutual does not meet its burden of proof through the statement of its

---

[1] Mutual's own statements in its Answer are equivocal. As Mutual notes, Doe alleges that if he were not taking Truvada, his application would have been accepted. Mutual Opposition at 3.

3

counsel that "[t]here is no evidence otherwise." Mutual Opposition at 4. Rather, Mutual must provide an "affidavit or other 'competent proof'… that the amount in controversy exceeds the jurisdictional minimum." *Lee v. Citimortgage, Inc.*, 739 F.Supp.2d 940, 947 (E.D. Va. 2010). *See also Toglan v. Marriott Int'l, Inc.,* 2011 U.S. Dist. LEXIS 91313, *14 (D. Mass. 2011) (in dispute about amount in controversy defendant failed to submit an affidavit in support of its position as required by Rule 7.1(b)(2) of the Local Rules").

Although Mutual has not yet met its burden of proof, Doe agrees that the amount in controversy requirement for diversity jurisdiction will be satisfied if Mutual provides legally binding competent evidence that a policy will in fact issue to Doe if the Court rules that the Truvada exclusion is unlawful. Accordingly, Doe will withdraw his motion to remand the case to state court if Mutual files a binding stipulation that: (1) if the court determines that Mutual of Omaha is prohibited from relying on Doe's use of Truvada to deny him long-term care insurance, then (2) Mutual will provide Doe with the long-term care insurance he applied for with the same terms and rates he would have received had his original application been accepted.

### III. MUTUAL HAS NOT ESTABLISHED BY COMPETENT EVIDENCE THAT THE ATTORNEYS' FEES IN THIS CASE MEET THE JURISDICTIONAL AMOUNT OF $75,000.

Mutual does not appear to press the argument that the amount in controversy requirement is met in this case by the attorneys' fees that Doe might collect if he prevails. *See* Mutual Opposition at 6 ("To that end, the Plaintiffs' fees must be a significant factor, at the very least, that this Court considers when determining the amount in controversy and the propriety of

---

*See* Complaint at ¶ 22. However, Mutual does not admit the truth of this allegation but rather answers that it "[l]acks knowledge or information sufficient to form a belief as to the truth of paragraph [22]." Answer at ¶ 10.

federal jurisdiction"). Mutual's hesitancy is wise. Precedent from this district holds that the fees to be considered for purposes of determining the amount in controversy should be limited to the fees incurred at the time the case is removed. In addressing this question, Judge Talwani recently wrote as follows, in a case cited by Mutual:

> The First Circuit has not directly addressed whether the court should include in the calculation only attorneys' fees incurred to date or should predict the reasonable fees that may be incurred over the course of the entire matter. The First Circuit's direction more generally, however, is to determine the amount in controversy "*at the time of removal,*" Amoche, 556 F.3d at 51 (emphasis in the original). Fees that have not yet been incurred cannot be said to be in controversy at the time of removal. Excluding fees that have not yet been incurred is also consistent with the overall statutory scheme, which excludes "costs" from the amount of controversy, an exclusion justified by legal scholars as "an inappropriate element for inclusion in determining whether the jurisdictional amount requirement has been satisfied since that must be ascertained at the beginning of the case." § 3712 Interest and Costs, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.).
>
> Nor would the court reach a different result here if anticipated fees are properly included. ASM asks the court to consider substantial fees that may later be incurred because Plaintiff's "claim under the Medical Marijuana Act is a matter of first impression." (citations omitted). Under this reasoning, all state law claims of first impression between citizens of diverse states could be brought to federal court. Moreover, the fees here may depend more on the vigorousness of Defendants' litigation posture than any other factor. Because it is ASM's burden to "sufficiently demonstrate that the amount in controversy exceeds" $75,000, such speculation is simply insufficient. Amoche, 556 F.3d at 50.

*Barbuto v. Advantage Sales & Mktg., LLC,* 148 F.Supp.3d 145, 148-149 (D. Mass. 2015).

In this connection, counsel for Doe represent that the second attorney on this case, John Ward, only began work on this case after the MCAD proceedings had been concluded and played no role in drafting the complaint. In any case, counsel for Doe represent that the fees incurred up to the time of removal do not even remotely approach the jurisdictional amount. In short, in the absence of any evidence to the contrary, the Court should reject Mutual's argument

that an entirely speculative estimate of what fees, if any, will eventually be awarded to Doe's attorneys is enough to keep the case in this Court.

## CONCLUSION

For the foregoing reasons, Doe will withdraw his motion to remand the case to state court if Mutual provides a binding stipulation that a judgement for plaintiff will result in the issuance of a long-term care policy to Doe on the same terms as his original application. Alternatively, and in the absence of such a stipulation, the Court should remand this case to Suffolk Superior Court.

Respectfully submitted,

JOHN DOE
By his attorneys,


/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

/s/ John P. Ward
John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on August 31, 2016, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.


Brooks R. Magratten, BBO# 650393
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

Mark A. Pogue, BBO# 550807
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
mpogue@pierceatwood.com

Katharine E. Kohn, BBO# 675362
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
kkohm@pierceatwood.com