UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> MUTUAL OF OMAHA INSURANCE COMPANY, <br><br> Defendant. | C.A. No. 1:16-cv-11381-GAO |

**PLAINTIFF JOHN DOE'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO RONALD KATZ, M.D. AND FOR PROTECTIVE ORDER AS TO SCOPE OF DISCOVERY INTO DOE'S MEDICAL AND HEALTH INFORMATION[1]**

**INTRODUCTION AND ORDER REQUESTED**

On February 9, 2015 Defendant Mutual of Omaha Insurance Company ("Mutual") denied Plaintiff John Doe's application for long-term care insurance after reviewing the medical records of his primary care physician, Ronald Katz, M.D., and other health-related information. It is undisputed, and Mutual has unequivocally represented to this Court in its previous filings, that the sole reason for the denial was that Doe was taking the medication Truvada as pre-exposure prophylaxis to prevent the transmission of HIV disease,[2] and that but for taking Truvada, Mutual

---

[1] Bennett Klein, counsel for John Doe, and Brooks Magratten, counsel for Mutual of Omaha Insurance Company, conferred pursuant to Local Rule 37.1 by telephone on May 18, 2017 for approximately 40 minutes. We did not reach agreement on the scope of Mutual's requested inquiries into Doe's health that are at issue in the subpoena to Dr. Katz and discovery in this case, including Doe's deposition.

[2] Known by the acronym PrEP, pre-exposure prophylaxis through oral administration of the drug Truvada to HIV-negative individuals dramatically reduces the risk of HIV transmission.

1

would have issued him a long-term care policy in February 2015 without further underwriting requirements. *See* Argument, § I (B), *infra*. This case is a state law antidiscrimination claim challenging Mutual's *blanket policy* of excluding individuals who take PrEP from long-term care insurance.

Doe files this motion to request that the Court prohibit Mutual's overbroad and irrelevant inquiry into medical and health-related information about him. Mutual seeks intrusive information about Doe which, as Mutual has conceded, it did not consider or rely upon in the decision to deny his application, including medical information for the period after its February 9, 2015 denial. Thus, it is clear on its face that Mutual's inquiries are not "relevant to any party's claim or defense" and are therefore outside the scope of permissible discovery. *See* Fed. R. Civ. P. 26(b)(1) (a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"); *Green v. Cosby*, 2017 U.S. Dist. LEXIS 55229, at *8 (D. Mass. 2017) (evidence must bear on a "fact … of consequence in determining the action") (quoting Fed. R. Evid. 401); *Hall v. Ferrell*, 2016 Bankr. LEXIS 913, at *8 (Bankruptcy D. Me. 2016) ("Relevance is hinged to the specific claims and defenses that are actually being litigated in the current proceeding."). Doe's medical records and health-related information that Mutual did not rely upon, including most notably health information *after* February 9, 2015, are entirely irrelevant by reason of Mutual's clear statements that its denial was based entirely on information acquired before that date, and that Doe would have been issued a policy at the time of denial if Doe had not been taking Truvada. *See* Argument, § I(A), *infra*.

For these reasons, Doe moves pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii) and 45(d)(3)(A) that the Court quash the subpoena issued by Mutual to Ronald Katz, M.D. for the production of

Doe's medical records from December 28, 2009 to present.[3] The subpoena for June 9, 2017 is attached as Exhibit A.

Additionally, Doe moves for a protective order pursuant to Fed. R. Civ. P. 26(b)(2)(c)(iii) and 26(c)(1)(D) as follows[4]:

(1) Prohibiting inquiry at Doe's deposition, and in discovery generally, into any matters related to medical and health-related information beyond the records and materials that Mutual obtained, and that it relied upon, in evaluating Doe's application and denying coverage to him on February 9, 2015, including information about any aspects of Doe's health or medical condition *after* the date of Mutual's denial of long-term care insurance. Mutual has served Doe's counsel with a notice of his deposition for June 27, 2017.

(2) Prohibiting inquiry at Doe's deposition, and in discovery generally, into the following specific subjects set forth in Mutual's First Set of Interrogatories dated April 11, 2017: (a) the identity of all physicians with whom Doe treated or consulted from December 2009 to present; (b) all health insurance coverage from December 2009 to present; (c) all dates Doe has been tested for HIV from 2009 to present and the test results; and (d) the reasons that Doe began taking Truvada.[5]

---

[3] Doe has standing to move to quash the subpoena because the information sought implicates his privacy interests and because a party may move to limit discovery as outside the scope of Fed. R. Civ. P. 26(b)(1). *Green*, 2017 U.S. Dist. LEXIS at *7-8.

[4] The Court may enter a protective order to prohibit or limit discovery. Fed. R. Civ. P. 26(c). "The burden of demonstrating good cause rests on the proponent of the protective order." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F. Supp. 2d 298, 301 (D. Mass. 2009), citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988). However, the party seeking discovery (here, Mutual) has the ultimate burden to show its relevance. *See Murphy v. Harmatz*, 2016 U.S. Dist. LEXIS 167569, at *9 (D. Mass. 2016).

[5] Doe objected to interrogatories on these subjects in his answers to Mutual's interrogatories dated May 19, 2017.

**ARGUMENT**

I. **THE COURT SHOULD GRANT THE MOTION TO QUASH AND FOR A PROTECTIVE ORDER BECAUSE THE MEDICAL INFORMATION MUTUAL SEEKS IS FAR AFIELD FROM ANY CLAIM OR DEFENSE.**

Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

A. **The Standard for Relevance Under Rule 26(b)(1).**

Discovery sought under Rule 26(b)(1) must be linked to a "party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is assessed by reference to the Federal Rules of Evidence. As this Court has noted, "[e]vidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *Green*, 2017 U.S. Dist. LEXIS at *8 (quoting Fed. R. Evid. 401). *See also Carver v. Bank of N.Y. Mellon*, 2016 U.S. Dist. LEXIS 44742, at *47 (D. Mass. 2016) ("discovery sought is not germane to any of the issues presented because it would not affect the consideration of any of the claims on the merits"); *Hall*, 2016 U.S. Bankr. LEXIS at *7 ("Relevance is determined by reference to the specific claims and defenses in the case . . . Relevance is hinged to the specific claims and defenses that are actually being litigated in the current proceeding."); *Zibolis-Sekella v. Ruehrwein*, 2013 U.S. Dist. LEXIS 100018, at *12 (D.N.H. 2013) (in negligence claim against defendant who was driving under the influence of a controlled drug, plaintiff "has not shown how other medical records pertaining to a change in medication after the accident or to treatment long before the accident are relevant to her claim"); 6 Moore's Federal Practice § 26.42[1] (3d

4

ed. 2016) ("the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be the proper subject of discovery").

The current scope of Fed. R. Civ. P. 26(b)(1) reflects an amendment in 2000 that was intended "'to involve the court more actively in regulating the breadth of sweeping or contentious discovery' . . . [by] distinguish[ing] between discovery regarding matters that are relevant to a party's claim or defense and discovery of a broader scope encompassing 'any matter relevant to the subject matter involved in the action.'" *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment). The 2000 Amendment "is a clarion call for the courts to use their administrative authority to control discovery to eliminate those instances in which the parties stray far afield from the factual issues that are at the heart of their case." 6 Moore's Federal Practice § 26.42[1] (3d ed. 2016) (citing advisory committee note).[6] Courts deny discovery that is "speculative," see *Soto v. ECC Indus.,* 2006 U.S. Dist. LEXIS 85634, at *2, *7 (E.D.N.Y. 2006), or "too far attenuated" from the claims. See *Dziadek v. Charter Oak Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 26703, at *31 (D.S.D. 2014). *See also Witzel*, 531 F.3d at 119 (denying motion to enforce subpoena where there is "speculative and attenuated connection" between discovery sought and claims in case).

This Court should grant Doe's motion to quash and for protective order because the requested medical information, including material for the period after the February 9, 2015 denial, is far afield from any claim or defense of the parties and cannot be remotely "of consequence" to the merits of the case as framed by the plaintiff and the defendant.

---

[6] *See also Soto v. ECC Indus.*, 2006 U.S. Dist. LEXIS 85634, at *5 (E.D.N.Y. 2006).

### B. The Medical Information Mutual Seeks is Not Germane to Plaintiff's Claims or Mutual's Defenses.

An examination of the parties' claims and defenses, and critically, Mutual's own admissions, reveals that the medical information Mutual seeks has no connection to the claims and defenses here.

The only issue in this case is the lawfulness of Mutual's blanket exclusion of Truvada users – simply, Doe's contention that the exclusion is discriminatory and Mutual's defense that it is legitimate and lawful. Doe's complaint alleges that Mutual has a blanket policy of rejecting applicants for long-term care insurance who take Truvada, a medication that has been proven to virtually eliminate the risk of HIV transmission to persons, like Doe, who are currently free from HIV disease. *See* Doc. # 1, Notice of Removal, Ex. A, Complaint, ¶ 1. Doe contends that this blanket exclusion violates the Massachusetts Public Accommodation Act (M.G.L. c. 272, § 98) because it constitutes impermissible discrimination based on both disability (Count I) and sexual orientation (Count II). *See* Doc. # 1, Notice of Removal, Ex. A, Complaint, ¶¶ 30-35. He seeks injunctive relief; there is no claim for damages. *See* Doc. # 1, Notice of Removal, Ex. A, Complaint, Requests for Relief. Mutual's defense is that its blanket policy is based on legitimate underwriting considerations and therefore lawful. *See* Doc. # 9, Answer, Fifth Defense ("Plaintiff's claims are barred because Mutual of Omaha's actions were based on legitimate underwriting business considerations.").[7]

---

[7] Mutual also pled affirmative defenses that: (1) Doe is "not disabled nor regarded as disabled" (Third Defense);  (2) "Mutual of Omaha is not a place of public accommodation" (Fourth Defense); and (3) the "Court may not construe M.G.L. c. 151B so as to restrict Mutual of Omaha's classification of Truvada use as an uninsurable risk" (Sixth Defense). *See* Doc. #9, Answer.

6

No other issue is pled or reasonably inferred from the pleadings. More importantly, Mutual's own actions and statements to this Court underscore this specific focus of the dispute. Upon receiving Doe's application for insurance, Mutual undertook its usual and standard medical underwriting practices for evaluating the insurability of an applicant. Mutual explained in its Position Statement to the Massachusetts Commission Against Discrimination:

> Following its standard practices, on January 9, 2015, an agent of Mutual interviewed Doe over the phone about his medical history. Doe indicated during the interview that he used Truvada for HIV prevention. [] In addition, using an authorization provided by Doe, Mutual obtained medical records from Doe's primary care physician [Ronald Katz, M.D.]. Those records confirmed that Doe had been prescribed Truvada for HIV prevention on November 10, 2014.

*See* Mutual of Omaha Position Statement, November 24, 2015 (cover page and page 5), attached as Exhibit B.

Mutual has emphatically represented to this Court that based on its review of Doe's medical history, it would have issued him a long-term care policy in February 2015 if he had not been on Truvada. It stated to this Court:

> According to both plaintiff and Mutual of Omaha, Truvada was the only reason the policy application was denied. There is no evidence otherwise. As such, were Plaintiff to prevail in his Complaint, there would be "<u>no other underwriting requirements</u>" <u>to meet and he would be, as he prayed, entitled to the benefit of the</u> <u>[] policy</u>.

*See* Doc. # 13, Defendant Mutual of Omaha Insurance Company's Memorandum in Opposition of Plaintiff's Motion to Remand, p. 4 (emphasis added). Mutual further represented that "Mutual of Omaha issuing coverage is not 'contingent on events that will occur beyond the operation of the [Plaintiff's successful] judgment in this case.'" *Id*. at 5. *See also id.* at 2 ("Because Plaintiff uses Truvada, this was the 'sole' reason his application for insurance was denied. Complaint ¶ 1,

2nd sentence & ¶ 10; Answer at First Defense at ¶¶ 2, 3 (admitting Complaint ¶1, 2nd sentence & ¶10).")); *id*. at 3 ("Plaintiff previously alleged: 'Mutual of Omaha denied Plaintiff John Doe long-term care insurance <u>solely</u> <u>because</u> he takes the medication Truvada' and that the 'the reason for the denial of coverage [was] that [Plaintiff] was taking the medication Truvada.' . . . Mutual of Omaha agrees.") (emphasis in original ).

Mutual made this representation to the Court when arguing that the amount in controversy in the case is the face value of the policy that would issue to Doe by operation of the judgment if the Truvada exclusion is ruled unlawful. Mutual banked its entire opposition to Doe's motion to remand the case to state court on its representation that there were no additional requirements that would make the issuance of a policy to Doe contingent on further medical underwriting beyond its February 2015 medical review. Mutual's own representations underscore the irrelevance of information after the date of its assessment and denial of Doe's insurability based on Truvada. This Court should not permit Mutual to unequivocally represent to it that no further underwriting requirements are necessary to Doe's insurability when that suited Mutual's efforts to defeat a motion for remand, and then turn around and argue for broad and intrusive medical information long after the date of its assessment of Doe's insurability.

In assessing Mutual's requests under the Rule 26(b)(1) standard, this Court is no doubt mindful of the "tremendous potential for abuse that exists when a defendant has unfettered access to a plaintiff's medical records." *Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376, 383 (E.D. Tex. 1997). *See also EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 123 (W.D.N.Y. 2009) (in reference to medical records, court states "defendants' 'contention that any physical malady might cause emotional distress … scarcely gives defendants a license to rummage through all aspects of plaintiff's life in search of a possible source of stress or

distress.'") (quoting *Evanko* v. *Electronic Systems Assocs., Inc.,* 1993 U.S. Dist. LEXIS 218, at *2 (S.D.N.Y. 1993)).

Our legal system places a high value on protecting personal medical information. Because medical records "may contain intimate facts of a personal nature . . . . [it] has been recognized in various contexts that medical records and information stand on a different plane than other relevant material.'" *U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir. 1980). *See also Alberts v. Devine*, 395 Mass. 59, 60 (1985) (common law duty in Massachusetts of physician not to disclose patient medical information unless necessary to meet a serious danger to others); Wendy K. Mariner, *Reconsidering Constitutional Protection for Health Information Privacy*, 18 U. Pa. J. Const. L. 975, 1012 (2016) ("there are enough laws limiting the disclosure of health information to conclude that society accepts as reasonable an expectation of privacy in that information"). These principles are particularly important in light of the far-reaching information that Mutual seeks.

This Court should not permit Mutual to rummage through highly personal and sensitive medical records, particularly *after* the date of the denial at issue in this case, when the pleadings and Mutual's own representations, show that such information is not relevant to or remotely at play in this litigation. The Court should grant Doe's requested motion to quash the subpoena to Dr. Katz and for a protective order as to the scope of permissible discovery.

## **CONCLUSION**

For the foregoing reasons, this Court should:

(1) Quash the subpoena issued by Mutual to Ronald Katz, M.D. for the production of Doe's medical records from December 28, 2009 to present;

(2) Issue a Protective Order prohibiting inquiry at Doe's deposition, and in discovery generally, into any matters related to medical and health-related information beyond the records and materials that Mutual obtained, and that it relied upon, in evaluating Doe's application and denying coverage to him on February 9, 2015, including information about any aspects of Doe's health or medical condition <u>after</u> the date of Mutual's denial of long-term care insurance; and

(3) Issue a Protective Order prohibiting inquiry at Doe's deposition, and in discovery generally, into the following specific subjects set forth in Mutual's First Set of Interrogatories dated April 11, 2017: (a) the identity of all physicians with whom Doe treated or consulted from December 2009 to present; (b) all health insurance coverage from December 2009 to present; (c) all dates Doe has been tested for HIV from 2009 to present and the test results; and (d) the reasons that Doe began taking Truvada.

    Respectfully submitted,

    JOHN DOE
    By his attorneys,


    /s/ Bennett H. Klein
    Bennett H. Klein
    BBO # 550702
    GLBTQ Legal Advocates & Defenders
    30 Winter St. Suite 800
    Boston, MA 02108
    617-426-1350
    bklein@glad.org

    /s/ John P. Ward
    John P. Ward
    BBO # 515860
    Law Offices of John P. Ward
    584 Castro St., No. 802
    San Francisco, CA 94114
    johnpward@gmail.com

## CERTIFICATION OF COMPLIANCE WITH RULE 7.1 AND 37.1

I, Bennett Klein, certify that I have conferred pursuant to Local Rule 7.1 with Brooks Magratten, counsel for defendant Mutual of Omaha Insurance Company, in a good faith effort to resolve or narrow the issues that are the subject of this motion and further that I have complied with the provisions of Local Rule 37.1.

/s/ Bennett H. Klein
Bennett H. Klein

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on May 26, 2017, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.


Brooks R. Magratten, BBO# 650393
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

Mark A. Pogue, BBO# 550807
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
mpogue@pierceatwood.com

Katharine E. Kohn, BBO# 675362
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
kkohm@pierceatwood.com

<u>/s/ Bennett H. Klein</u>
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

**EXHIBIT A**

**PLAINTIFF JOHN DOE'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO RONALD KATZ, M.D. AND FOR PROTECTIVE ORDER AS TO SCOPE OF DISCOVERY INTO DOE'S MEDICAL AND HEALTH INFORMATION**

# PIERCE ATWOOD LLP

**BROOKS R. MAGRATTEN**

72 Pine Street
Providence, RI 02903

P 401.588.5113
F 401.588.5166
C 401.965.2506
bmagratten@pierceatwood.com
pierceatwood.com

Admitted in: CT, MA, RI

May 11, 2017

Dr. Ronald Katz
25 Boylston Street
Chestnut Hills, MA 02467

Re:   John Doe
      v. Mutual of Omaha Ins. Co.

Dear Dr. Katz:

The enclosed subpoena is being served on you for production of records pertaining to Mr. ████████, as described more fully in the subpoena.

Please note that you do not need to appear at our office with the requested records. Please have your assistant contact me to arrange to transmit the records.

Thank you for your assistance.

Very truly yours,

Brooks R. Magratten

BRM:bab

Enclosure

cc:   Bennett Klein, Esq.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| John Doe <br> *Plaintiff* <br> v. <br> Mutual of Omaha Ins. Co. <br> *Defendant* | ) <br> ) <br> ) Civil Action No. 1:16-cv-11381 <br> ) <br> ) <br> ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:  Dr. Ronald Katz, 25 Boylston Street, Chestnut Hills, MA 02467

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All records of any medical examination, test, treatment, diagnosis or consultation (including any and all prescriptions) for ▮▮▮▮ (d/o/b: ▮▮▮▮) from December 28, 2009, to the present.

| Place: Pierce Atwood LLP, 22nd Floor, 100 Summer Street, Boston, MA 02110 | Date and Time: <br> 6/09/17  10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/11/17

CLERK OF COURT

_____     OR     _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Mutual of Omaha , who issues or requests this subpoena, are:

Brooks Magratten, Pierce Atwood LLP, 72 Pine Street, Providence, RI 02903; bmagratten@pierceatwood.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-cv-11381

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT B**

**PLAINTIFF JOHN DOE'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO RONALD KATZ, M.D. AND FOR PROTECTIVE ORDER AS TO SCOPE OF DISCOVERY INTO DOE'S MEDICAL AND HEALTH INFORMATION**

# PIERCE ATWOOD LLP

**MARK A. POGUE**

72 Pine Street
Providence, RI 02903

P 401.490.3416
F 401.588.5166
mpogue@pierceatwood.com
pierceatwood.com

Admitted in: MA, RI

November 24, 2015

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place
Boston, MA 02108
ATTN: Keith Healey
Administrative Assistant

RE: John Doe v. Mutual of Omaha
MCAD Docket Number: 15BPA02661

Dear Mr. Healey:

This letter sets forth the position of Respondent Mutual of Omaha Insurance Company ("Mutual" or the "Company") in response to the charge of discrimination (the "Charge") filed by John Doe ("Doe"). As shown below, Mutual had every right to deny long-term care insurance to Doe and any other person using the drug Truvada. Doe's claims of disability and sexual orientation discrimination are consequently without merit, and the Commission should dismiss the Charge.

## Factual Background

The following facts are relevant to the Charge.

### A. Mutual of Omaha Insurance Company

Mutual is a full-service, multi-line provider of insurance and financial services products that provide financial protection to help families, individuals, businesses and groups achieve their financial goals. The Company's products include annuities and retirement plans, dental insurance, disability insurance, life insurance, long-term care insurance and Medicare supplement insurance.

Page 5
November 24, 2015

Truvada is only prescribed for people who are HIV-positive, or who are at high risk of becoming HIV-positive.

Second, even when used as directed, Truvada for PrEP is not completely effective in preventing HIV infection. Exhs. C, D. Given that Truvada users already are at significant risk of becoming infected with HIV, the fact that the drug is less than 100% effective adds another layer of risk to their underwriting profiles.

In addition to these risks, there is a concern that Truvada as PrEP will give users a false sense of security and encourage promiscuity or condomless intercourse, thereby increasing the risk of HIV infection. Burda, supra at 172. There is anecdotal evidence that use of PrEP increases promiscuity, and decreases condom use. Exh. F.

Nowhere in Mutual's underwriting guidelines is sexual orientation used as a basis for granting or denying long-term care coverage. In fact, Mutual's records reflect that, in the past five years, it has sold more than 150 long-term care insurance policies to male partners who submitted joint applications for such insurance, and are presumably homosexual.

Mutual's list of uninsurable medications include several other drugs which, like Truvada, are used as a preventive, or other than for treatment of a disease or infection. These include Antabuse, Cerefolin, Marinol and Methadone. [2]

Any person using a drug appearing on the uninsurable medications list – male or female, heterosexual or homosexual – is ineligible for purchasing long-term care insurance from Mutual.

### E. Doe's Application For Long-Term Care Coverage

Doe received a prescription for Truvada in November, 2014. Exh. G. The following month, he and his partner applied for long-term care insurance from Mutual. Charge ¶ 4.

Following its standard practices, on January 9, 2015, an agent of Mutual interviewed Doe over the phone about his medical history. Doe indicated during the interview that he used Truvada for HIV prevention. Exh. H. In addition, using an authorization provided by Doe, Mutual obtained medical records from Doe's primary care physician. Those records confirmed that Doe had been prescribed Truvada for HIV prevention on November 10, 2014. Exh. G.

By letter dated February 9, 2014, Mutual denied Doe's application for long-term care insurance. Exh. I. The denial letter explained that Doe's application was being denied because Mutual does not insure people using Truvada, whether for PrEP or for treatment of HIV. The

---

[2] Antabuse is used as a preventive against consumption of alcohol. Cerefolin is a dietary supplement. Marinol, or synthetic marijuana, is used for (among other things) appetite enhancement. Methadone reduces narcotic withdrawal symptoms, and thereby serves as a preventive against the injection of opiate drugs.

{W5211426.1}