UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————
                                          )
JOHN DOE,                                 )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )      C.A. No. 1:16-cv-11381-GAO
                                          )
MUTUAL OF OMAHA INSURANCE                 )
COMPANY,                                  )
                                          )
              Defendant.                  )
———————————————————)

**PLAINTIFF JOHN DOE'S CONSOLIDATED OPPOSITION TO DEFENDANT'S
MOTIONS TO COMPEL INTERROGATORIES AND DOCUMENT REQUESTS, AND
MOTION FOR LEAVE TO FILE REPLY TO DEFENDANT'S OPPOSITION TO
PLAINITFF'S MOTION TO QUASH SUBPOENA TO RONALD KATZ, M.D. AND FOR
PROTECTIVE ORDER AS TO SCOPE OF DISCOVERY INTO DOE'S MEDICAL AND
HEALTH INFORMATION (WITH INCORPORATED REPLY)**

       This Court has before it four discovery motions that address the same dispute which can

be summarized as: (1) whether Defendant Mutual of Omaha Insurance Company's ("Mutual")

request for medical information about Doe, including after the date it denied his application for

long-term care insurance, is outside the scope of permissible discovery under Fed. R. Civ. P.

26(b)(1); and (2) whether Mutual's contention interrogatories are premature at this early stage of

discovery before deposition testimony has been completed, and should be deferred to a later

stage in the litigation pursuant to Fed. R. Civ. P. 33(a)(2). The motions in order of filing are: (1)

Doe's motion to quash a subpoena for the records of his primary care physician, Ronald Katz,

M.D., and for a protective order as to the scope of discovery into his medical and health

information (Doc. No. 29); (2) Mutual's motion to compel compliance with the subpoena to Dr.

Katz (Doc. No. 32); (3) Mutual's motion to compel interrogatory answers (Doc. No. 38); and (4)

1

Mutual's motion to compel the production of documents (Doc. No. 40).[1] Because these various motions cover the same ground, Doe files this consolidated objection to Mutual's motion to compel interrogatory answers and document requests, and requests leave pursuant to Local Rule 7.1(b)(3) to file this memorandum as his reply to Defendant's objection to Doe's motion to quash the subpoena of Dr. Katz and for protective order (Doc. No. 42).

## INTRODUCTION

This case is a state law discrimination claim arising from Mutual's blanket policy of excluding from long-term care insurance every applicant who is HIV-negative and takes the medication Truvada as pre-exposure prophylaxis (PrEP) to prevent HIV disease. PrEP involves taking one pill a day to dramatically reduce the risk of HIV transmission. Doe contends that Mutual's policy barring people who do not have a disqualifying health condition, and who take steps to prevent disease, is irrational and actuarially unsound. Mutual will issue a long-term care insurance policy to an otherwise qualified sexually active gay man who is *not* on PrEP, but will categorically deny long-term care insurance to a similarly situated otherwise qualified gay man who *is* on PrEP. It will thus insure the relative higher risk and reject the lower risk person who takes responsible health prevention steps. Further, PrEP is a highly successful preventative. As the United States Centers for Disease Control and Prevention has stated, "'[s]tudies have shown

---

[1] The contested interrogatories regarding medical information are: No. 1(requesting the names of physicians with whom Doe has treated, consultation or consulted since 2009); No. 2 (requesting all health insurance coverage since 2009); No. 3 (requesting information about why Doe is taking Truvada); and No. 4 (requesting information about who prescribed Doe Truvada and why). Doe provided information about when he started Truvada and why. The contested document requests are: No. 1 (all records of any medical treatment, consultation, examination or procedures since 2009); No. 2 (documents pertaining to Interrogatory No. 2); and No. 3 (documents pertaining to Interrogatory No. 4). Doe will refer to these interrogatories and document requests and the records of Dr. Katz generally as the "medical information" unless otherwise specifically discussed. Interrogatories Nos. 11-17 are the disputed contention interrogatories.

that PrEP reduces the risk of getting HIV from sex by more than 90% when used consistently."
*See* Centers for Disease Control and Prevention, *PrEP,* http://www.cdc.gov/hiv/basics/prep.html
(last modified June 7, 2017). *See also* Donald G. McNeil Jr., *Insurer Says Clients on Daily Pill
Have Stayed H.I.V.-Free*, N.Y. Times, (Sept. 2, 2015), http://nyti.ms/1hzTE7g (discussing peer-
reviewed study that found no HIV infections in PrEP users over more than two-year period); Ben
Sanders, *HIV/AIDS Advocates: PrEP Controversy Makes Job Difficult*, Windy City Times,
(Sept. 30, 2015), http://www.windycitymediagroup.com/lgbt/HIV-AIDS-Advocates-PrEP-
controversy-makes-job-difficult/52995.html (quoting Dr. Anthony Fauci, the Director of the
National Institute of Allergy and Infectious Diseases, a branch of the National Institute of Health,
that if PrEP users adhere to the medication regimen "it is virtually 95-plus percent effective").
Doe will present expert testimony that the best and most reliable information available at the
time of Doe's application for long-term care insurance indicates that PrEP efficacy is 99% or
greater when used as directed (and that such protection is achieved even when the daily one pill
dose is taken four days a week).[2] Finally, the underlying assumption behind Mutual's policy, that
people with HIV disease itself present an elevated claims risk, is no longer actuarially sound in
light of advances in the control of HIV disease and in comparison to the medical impairments
that are insurable under Mutual's underwriting guidelines.

All of these issues relevant to Mutual's blanket exclusion of people who use PrEP will be
the subject of the parties' respective expert opinions, but the medical information that Mutual
seeks, including after the date of the insurance denial, is not relevant to any claim or defense in
this case. On February 9, 2015 Mutual denied Doe's application for long-term care insurance

---

[2] Doe vigorously disagrees with Mutual's statements regarding sub-optimal adherence to
PrEP in certain research studies. Doe will present expert testimony that placebo-based trials, in
which people do not know whether they are receiving the therapy in question, are not indicative
of adherence to therapies with demonstrated benefits in real-world usage.

after reviewing the medical records of his primary care physician, Dr. Katz, and undertaking a thorough evaluation of all of the medical history and conditions detailed in those records. It is undisputed, and Mutual has unequivocally represented to this Court in its previous submissions, as well as more recently in its answers to Doe's interrogatories, that the sole reason for the denial was Doe's use of the medication Truvada, and that but for taking Truvada, Mutual would have issued him a long-term care policy in February 2015 without further underwriting requirements. *See* Argument, § I(B), *infra*.

Despite having asserted in its successful bid to defeat Doe's motion to remand that the issuance of a policy was not contingent on other events beyond a determination of the lawfulness of the Truvada exclusion, Mutual now asserts that it must be able to explore "other medical reasons not to issue an LTC policy." *See* Mutual's Opposition to Doe's Motion to Quash and for Protective Order ("Mutual Opposition"), Doc. No. 42 at 3, 5. This Court should apply the doctrine of judicial estoppel to prevent Mutual from gaining a legal advantage by "pressing a claim that is inconsistent with a position taken by [it] . . . in an earlier phase of [this] same legal proceeding." *See Alternative System Concepts, Inc. v. Synopys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004) (quoting *InterGen N.V. v. Grina*, 344 F. 3d 134, 144 (1st Cir. 2003)), and cases discussed in Argument, § I(B), *infra*.

In its attempt to circumvent its prior representations, Mutual presses two red herrings. First, Mutual claims that it needs Doe's medical information to ascertain his compliance with the Truvada protocol. But determinations of individual circumstances are irrelevant by virtue of Mutuals' own stated policy. Either Mutual evaluates individual circumstances and provides insurance to those who satisfy its criteria, or it has a policy of blanket exclusion that it must defend on that basis. Mutual cannot have it both ways. *See* Argument, § I(C), *infra*.

Second, Mutual suggests that it is entitled to all of Doe's medical information from 2009 to present because Doe did not list Truvada on his application. This argument is quite misleading. Doe will demonstrate below that he was not taking Truvada when he filled out his initial application on November 1, 2014. Doe then disclosed that he was taking Truvada, without prompting, during a telephone interview that was part of Mutual's underwriting process in January 2015. Mutual was fully aware during the underwriting process in January and February 2015, and noted in its own records, that Truvada was not listed on Doe's application. If Mutual believed that this issue warranted further underwriting or inquiry into Doe's application and medical history before it could issue a policy, Mutual could not in good faith have represented to this Court in the remand proceedings that no further underwriting requirements were required to issue Doe a policy if the Truvada exclusion were ruled unlawful. It was a non-issue to Mutual until it conjured up arguments to gain access to Doe's medical records now. This Court should not permit Mutual to gain access to broad, irrelevant medical information about Doe based on such a baseless maneuver. *See* Argument, § I(D), *infra*.

This Court should also order that answers to Defendant's contention interrogatories be deferred until after the completion of discovery. Courts routinely do so because it is neither fair nor efficient to require a party to summarize its trial evidence at the outset of discovery, particularly where, as here, much of the evidence is in the possession of the defendant, or the subject of expert opinion. See Argument, § II, *infra*.

## ARGUMENT

I.     **THE COURT SHOULD DENY MUTUAL'S MOTIONS TO COMPEL AND GRANT PLAINTIFF'S MOTION TO QUASH THE KATZ SUBPOENA AND FOR A PROTECTIVE ORDER BECAUSE THE MEDICAL INFORMATION MUTUAL SEEKS IS FAR AFIELD FROM ANY CLAIM OR DEFENSE.**

Fed. R. Civ. P. 26(b)(1) provides:

5

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

### A.    The Standard for Relevance Under Rule 26(b)(1).

Discovery sought under Rule 26(b)(1) must be linked to a "party's claim or defense."

Fed. R. Civ. P. 26(b)(1). Relevance is assessed by reference to the Federal Rules of Evidence. As

this Court has noted, evidence is relevant if "'the fact is of consequence in determining the

action.'" *Green v. Cosby*, 2017 U.S. Dist. LEXIS 55229, at *8 (quoting Fed. R. Evid. 401). *See*

*also Carver v. Bank of N.Y. Mellon*, 2016 U.S. Dist. LEXIS 44742, at *47 (D. Mass. 2016)

("discovery sought is not germane to any of the issues presented because it would not affect the

consideration of any of the claims on the merits"); *Hall v. Ferrell*, 2016 U.S. Bankr. LEXIS 913,

at *7-8 ("Relevance is determined by reference to the specific claims and defenses in the case . . .

Relevance is hinged to the specific claims and defenses that are actually being litigated in the

current proceeding."); *Zibolis-Sekella v. Ruehrwein*, 2013 U.S. Dist. LEXIS 100018, at *12

(D.N.H. 2013) (in negligence claim against defendant who was driving under the influence of a

controlled drug, plaintiff "has not shown how other medical records pertaining to a change in

medication after the accident or to treatment long before the accident are relevant to her claim");

6 Moore's Federal Practice § 26.42[1] (3d ed. 2016) ("the fact must be germane to a claim or

defense alleged in the pleading for information concerning it to be the proper subject of

discovery").

The current scope of Fed. R. Civ. P. 26(b)(1) reflects an amendment in 2000 intending

"'to involve the court more actively in regulating the breadth of sweeping or contentious

discovery' . . . [by] distinguish[ing] between discovery regarding matters that are relevant to a party's claim or defense and discovery of a broader scope encompassing 'any matter relevant to the subject matter involved in the action.'" *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment). The 2000 Amendment "is a clarion call for the courts to use their administrative authority to control discovery to eliminate those instances in which the parties stray far afield from the factual issues that are at the heart of their case." 6 Moore's Federal Practice § 26.42[1] (3d ed. 2016) (citing advisory committee note).[3] Courts deny discovery that is "speculative," *see Soto v. ECC Indus.*, 2006 U.S. Dist. LEXIS 85634, at *2, *7 (E.D.N.Y. 2006), or "too far attenuated" from the claims. *See Dziadek v. Charter Oak Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 26703, at *31 (D.S.D. 2014). *See also Witzel*, 531 F.3d at 119 (denying motion to enforce subpoena where there is "speculative and attenuated connection" between discovery sought and claims in case).

**B.    The Medical Information Mutual Seeks is Not Germane to Plaintiff's Claims or Mutual's Defenses And is Precluded By its own Representations.**

A determination of relevance must, as Rule 26(b)(1) requires, start with an examination of the parties' claims and defenses. The only issue in this case is the lawfulness of Mutual's blanket exclusion of Truvada users – simply, Doe's contention that the exclusion is discriminatory and Mutual's defense that it is legitimate and lawful.  Doe contends that this blanket exclusion violates the Massachusetts Public Accommodation Act (M.G.L. c. 272, § 98) because it constitutes impermissible discrimination based on both disability (Count I) and sexual orientation (Count II). *See* Complaint, ¶¶ 30-35. He seeks injunctive relief; there is no claim for damages. Mutual's defense is that its blanket policy is based on legitimate underwriting

---

[3] *See also Soto v. ECC Indus.*, 2006 U.S. Dist. LEXIS 85634, at *5 (E.D.N.Y. 2006).

considerations and therefore lawful. *See* Doc. No. 9, Answer, Fifth Defense ("Plaintiff's claims are barred because Mutual of Omaha's actions were based on legitimate underwriting business considerations.").[4] Mutual has not asserted fraud or misrepresentation as an affirmative defense. *See* Fed. R. Civ. P. 9(b) (allegations of fraud or mistake must be stated "with particularity").

More importantly, Mutual's admissions and representations reveal that the medical information it seeks has no connection to the claims and defenses here. Upon receiving Doe's application for insurance, Mutual undertook its usual and standard medical underwriting practices for evaluating the insurability of an applicant.  Mutual explained in its Position Statement to the Massachusetts Commission Against Discrimination:

> Following its standard practices, on January 9, 2015, an agent of Mutual interviewed Doe over the phone about his medical history. Doe indicated during the interview that he used Truvada for HIV prevention. [] In addition, using an authorization provided by Doe, Mutual obtained medical records from Doe's primary care physician [Ronald Katz, M.D.]. Those records confirmed that Doe had been prescribed Truvada for HIV prevention on November 10, 2014.

*See* Mutual of Omaha Position Statement, November 24, 2015 (cover page and page 5), attached as Exhibit A.

Further, Mutual had Dr. Katz's records and, following its regular process, conducted a full assessment of Doe's health conditions and insurability. Mutual has produced to Doe its log of communications and steps it took to review Doe's medical history as part of the underwriting process. That log reveals that it undertook a thorough review of Dr. Katz's records and considered all aspects of Doe's medical history and health, including cardiac health, diagnoses

---

[4] Mutual also pled affirmative defenses that: (1) Doe is "not disabled nor regarded as disabled" (Third Defense);  (2) "Mutual of Omaha is not a place of public accommodation" (Fourth Defense); and (3) the "Court may not construe M.G.L. c. 151B so as to restrict Mutual of Omaha's classification of Truvada use as an uninsurable risk" (Sixth Defense). *See* Doc. No. 9, Answer.

such as osteoarthritis, past medical conditions such as Lyme disease, colonoscopy results and a full range of blood and laboratory results.[5]

Subsequently, in this litigation, Doe moved to remand this diversity case to state court. Doe argued that the amount in controversy was not the face value of the policy, as Mutual asserted, because a judgment for Doe "will simply enjoin Mutual from treating him differently from any other applicant because Doe takes Truvada. He must still meet all the other underwriting requirements that Mutual may legitimately impose." *See* Doe's Memorandum in Support of Motion to Remand, Doc. No. 12, at 5.

Mutual emphatically disagreed with Doe's position. It represented to this Court that:

> According to both plaintiff and Mutual of Omaha, Truvada was the only reason the policy application was denied. There is no evidence otherwise. As such, were Plaintiff to prevail in his Complaint, there would be <u>no other underwriting requirements</u> <u>to meet and he would be, as he prayed, entitled to the benefit of the</u> <u>[] policy</u>.

*See* Doc. No. 13, Defendant Mutual of Omaha Insurance Company's Memorandum in Opposition of Plaintiff's Motion to Remand, at 4 (emphasis added). Mutual further represented that "Mutual of Omaha issuing coverage is not 'contingent on events that will occur beyond the operation of the [Plaintiff's successful] judgment in this case.'" *Id.* at 5. *See also id.* at 2 ("Because Plaintiff uses Truvada, this was the 'sole' reason his application for insurance was denied. Complaint ¶ 1, 2nd sentence & ¶ 10; Answer at First Defense at ¶¶ 2, 3 (admitting Complaint ¶1, 2nd sentence & ¶10).")); *id.* at 3 ("Plaintiff previously alleged: 'Mutual of Omaha denied Plaintiff John Doe long-term care insurance <u>solely</u> <u>because</u> he takes the medication Truvada' and that the 'the reason for the denial of coverage [was] that [Plaintiff] was taking the

---

[5] For privacy reasons, a heavily redacted copy of the call log, sufficiently demonstrating the scope of Mutual's review, is attached as Exhibit B.

medication Truvada.' . . . Mutual of Omaha agrees.") (emphasis in original). Mutual knew at the time that Truvada was not listed on Doe's initial application (*see* Argument § I(D), *infra*) – the allegation it relies upon to obtain Doe's medical information – and it never indicated to the Court that its issuance of a policy to Doe was contingent on its review of any other additional medical information about Doe.

Mutual subsequently made the same representation in the following response to Doe's interrogatory:

> 18.  Q: If Doe had not been taking Truvada as prevention for HIV, would Mutual have issued to him the long-term care insurance policy that he applied for?
>
> A: Yes.

*See* Exhibit C. This representation, of course, was also made with full awareness that Truvada had not been listed on Doe's application.

Having made one representation to the Court to obtain a successful result in the remand proceedings, Mutual now asserts the diametrically opposed position that it is entitled to additional medical information to re-examine whether to issue Doe a policy irrespective of the legality of the Truvada exclusion. This Court should apply the doctrine of judicial estoppel to prevent Mutual from "playing it fast and loose with the court" by asserting that it must undertake further underwriting with respect to Doe's application in direct contradiction to its earlier representations. *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). As the First Circuit has stated, "judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of a legal advantage.'" *See Alternative Systems*, 374 F.3d at 33 (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)). *See also Patriot Cinemas*, 834 F.2d at 212 ("where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not

thereafter, simply because his interests have changed, assume a contrary position, especially if it

be to the prejudice of the party who has acquiesced in the position formerly taken by him.")

(quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).[6] This Court should not permit Mutual to

unequivocally represent to it that no further underwriting requirements are necessary to Doe's

insurability when that suited Mutual's efforts to defeat a motion for remand, and then play fast

and loose arguing for broad and intrusive medical information long after the date of its

assessment of Doe's insurability.[7]

###    C.    Mutual's Request for Information About Doe's Compliance with Truvada Protocols is Irrelevant Because Mutual Continues to Insist That its Policy is a Blanket Exclusion of Anyone Who Takes PrEP Regardless of Individual Circumstances.

Mutual excludes all Truvada users, period. Nowhere in its motion papers does it veer

from that position. S*ee, e.g.,* Doc. No. 41 at 1 ("Mutual of Omaha declines to insure anyone

using the medication 'Truvada'"); Doc. No. 39 at 1 (same). When Mutual rejected Doe's

application due to his use of Truvada, it made no inquiry about Doe's compliance with any

protocol. Yet now Mutual argues:

> The cornerstone of Plaintiff's case rests on the reported effectiveness of Truvada. Yet if plaintiff has not strictly complied with Truvada protocols, then the cornerstone erodes. . . . Mutual is entitled to determine, from a thorough review of Plaintiff's medical history and health information, why he is taking Truvada and if he is using that medication correctly.

*See* Mutual Opposition (Doc. No. 42) at 2-3; *see also* Docs. Nos. 39 and 41 at 4. No rationale

supports such an assertion when Mutual has a blanket policy excluding every PrEP user

---

[6] Massachusetts law tracks First Circuit law on judicial estoppel. *See, e.g., Otis v. Arbella Mut. Ins. Co.*, 443 Mass. 634, 640-643 (2005); *Sandman v. McGrath*, 78 Mass. App. Ct. 800, 802-803 (2011).

[7] Even if this Court does not apply judicial estoppel, Mutual's own representations underscore the irrelevance of information after the date of its assessment and denial of Doe's insurability based on Truvada.

regardless of circumstance. The closest Mutual comes to offering a nexus between its policy and Doe's medical records is its assertion that "[p]laintiff's own compliance or non-compliance with Truvada protocol reflects on the reasonableness of Mutual of Omaha's underwriting decisions." *See* Mutual Opposition (Doc. No. 42) at 3. It is, frankly, difficult to see the logic here. Mutual established its policy long before Doe applied for insurance. Moreover, Mutual would hardly admit that proof of Doe's compliance establishes the unreasonableness of its policy. Mutual cannot have it both ways and maintain a universal exclusion while seeking individualized information about one applicant to whom it will not issue long-term care insurance under any circumstances.

> **D.    Mutual's Claim That it is Entitled To Further Medical Information Because Doe Did Not Disclose Truvada on His Application is Based on Incomplete and Misleading Statements.**

Mutual asserts that it is entitled to broad medical information about Doe, including after the date he filled out his application and Mutual denied him insurance, in order to "test the veracity of the remaining representations in Plaintiff's application … [and discover] other medical reasons not to issue an LTC policy to Plaintiff." Mutual Opposition at 3, 5; Memorandum in Support of Motion to Compel Interrogatories (Doc. No. 39) and Memorandum in Support of Motion to Compel Documents (Doc. No. 41) at 4. Mutual had Dr. Katz's records at the time of its underwriting review and thoroughly assessed Doe's medical condition and history. More importantly, Mutual's sole rationale for this request is its assertion that "Plaintiff did <u>not</u> disclose his Truvada prescription in his written application." *See* Mutual Opposition (Doc. No. 42 at 5) (emphasis in original); *see also* Mutual's Reply to Doe's Opposition to Defendant's Motion to Compel Compliance with Subpoena, Doc. No. 48 at 2. It states that Doe's application was dated December 28, 2014. *See* Mutual Opposition, Doc. No. 42 at 3 n.1.

Mutual failed to tell the Court about all of the information in its possession that undercuts its insinuation. Doe signed and dated his original application, which included a medical questionnaire, on November 1, 2014. *See* Exhibit D (Doe's signature is redacted, but this document is in Mutual's possession). As Mutual acknowledges, Doe had not been prescribed the medication Truvada at that time. *See* Mutual Opposition, Doc. No. 42 at 3 n.1. The application that Doe signed on November 1, 2014 is signed and dated December 15, 2014 by the broker. There was obviously a delay in the broker submitting the application, and apparently due to the time lapse Doe had to sign another signature page again later in December. Doe did not at that time redo the questionnaire on the application.

Mutual also failed to tell the Court that as part of its medical underwriting process Mutual conducted a telephone interview with Doe on January 9, 2015. In this interview, Doe was asked about his prescriptions. Doe had obtained a prescription for Truvada on November 10, 2014 and stated in his interrogatory answers to Mutual that he began taking it toward the end of November or beginning of December of 2014. During the telephone interview Doe disclosed his Truvada use without prompting in response to an inquiry about his prescriptions. He even explained to the Mutual representative, who was not familiar with Truvada, that "[I]t's a, um, preventative for HIV. . . . I've never been diagnosed with HIV or anything[.]"[8] If Doe had wanted to hide his Truvada use from Mutual, he simply could have delayed his initiation of PrEP until after Mutual had issued a policy to him. Mutual had the information from both Doe and Dr. Katz. Nobody hid anything.

---

[8] Mutual has the tape recording of this interview and provided it to the Plaintiff in its initial disclosures. An accurate transcription of the portion of the interview in which Doe discloses his Truvada use is attached as Exhibit E.

The strongest indicator that Mutual is seeking to conjure up an issue where none exists is that Mutual obviously knew during the underwriting process in January and February 2015 that Doe's Truvada medication was not on his application. It specifically noted this twice in its log of the steps it took in reviewing Doe's application. *See* Exhibit B (third and eighth pages). If Mutual believed, as it asserts here, that it "is entitled to test the veracity of the remaining representations in Plaintiff's application" and determine if there are "other medical reasons not to issue an LTC policy to plaintiff" (*see* Mutual Opposition, Doc. No. 42 at 3, 5), then it also knew that at the time of its representations to the Court in the remand briefing. If this were a legitimate, genuine concern, Mutual would in good faith have told the Court then that there were material underwriting issues to be determined beyond Doe's Truvada usage. Instead, Mutual represented that other than Doe's Truvada use there were no other underwriting requirements to meet. Mutual's allegation is hardly an indicia of fraud or dishonesty and does not provide any basis to permit Mutual to rummage around in Doe's medical records on a fishing expedition that is far afield from the claims and defenses in this case.

Mutual's attempt to argue that broad access to Doe's medical records is relevant for impeachment purposes is equally unavailing. *See* Mutual Opposition (Doc. No. 42) at 5, citing *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455 (S.D.N.Y. 1988). That case specified several factors for assessing relevance inquiries for impeachment that were not identified by Mutual, including whether there has been demonstrated a "propensity for deception" and whether there is a sufficient "relationship … [to] the instant litigation." *See Davidson*, 120 F.R.D. at 462-463. *Davidson* is clearly inapposite as in that case a deposed witness stated that the company had committed tax evasion. *Id.* at 459. Here, the circumstances of Doe's application hardly give rise to a similar inference. Doe's Truvada use was not hidden in

the underwriting process. And Mutual failed to raise it in prior court proceedings here or make any issue of it until it was searching for a hook to obtain Doe's medical records.

Finally, there is no basis to provide Mutual with unfettered access to Doe's medical records should he prevail in this case. *See* Mutual Opposition, Doc. No. 42 at 6. In a discrimination case the prevailing plaintiff must be put in the position he would have been had the discrimination not occurred, in this case the issuance of the policy on the terms and conditions that Doe would have received in February 2015 but for the Truvada exclusion. *See U.S. v. City of Miami*, 195 F.3d 1292, 1299 (11th Cir. 1979) (purpose of antidiscrimination remedy is to "recreate the conditions and relationships that would have been" absent the discrimination (quoting International Brotherhood of Teamsters v. U.S., 431 U.S. 324 (1977))); *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir. 1977) ("The make whole standard of relief should be the touchstone for the district courts in fashioning both the legal and equitable remedies in age discrimination cases."); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252 (5th Cir. 1974) ("the injured workers must be restored to the economic position in which they would have been *but for* the discrimination—their 'rightful place.'") (emphasis in original).

In sum, Mutual has a blanket policy of excluding any Truvada user. It does not dispute its prior representations, made after a full review of Doe's health history, that Truvada was the only reason for the denial and that without such an exclusion it would have issued him a policy. This Court should deny Mutual's motions to obtain medical information not related to the claims and defenses in this case.

## II.    THIS COURT SHOULD RULE THAT DEFENDANT'S CONTENTION INTERROGATORIES SHOULD BE DEFERRED UNTIL AFTER DISCOVERY IS COMPLETED.

Interrogatory Nos. 11-17 are premature contention interrogatories that relate to fact or the application of law to fact that should be properly deferred to a later stage in the litigation

pursuant to Fed. R. Civ. P. 33(a)(2). This is particularly appropriate where the interrogatories request a wide range of information that is in the possession of the defendants and is the subject of expert opinion. *See, e.g.* Interrogatory No. 12 (relating to plaintiff's allegation that Mutual "failed to treat [him] in accordance with an actual and accurate classification of his risk," where such comparative information on how Mutual classifies various risks is in its possession).

Fed. R. Civ. P. 33(a)(2) grants courts the discretion to delay responses to contention interrogatories, *see* Fed. R. Civ. P. 33(a)(2) ("court may order that the interrogatory need not be answered until designated discovery is complete"), and there is "considerable support" for delaying answers "until after a substantial amount of discovery has been completed." *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). *See also Eveden, Inc. v. Northern Assurance Co. of Am.*, 2012 U.S. Dist. LEXIS 14257, at *1 (D. Mass. 2012) (O'Toole, J.) ("it may . . . be more appropriate to withhold answering [contention interrogatories] until a 'substantial amount' of discovery has been completed"); *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (contention interrogatories . . . "are more appropriate after a substantial amount of discovery has been conducted" (quoting *Fischer and Porter Co. v. Tolson*, 143 F.R.D. 93, 95)); *Barnes & Noble, Inc. v. LSI Corp.*, 2013 U.S. Dist. LEXIS 24077, at *6 (N.D. Cal. 2013) (denying motion to compel "given courts' reluctance to compel early responses"); 10A John Kimpflen, et. al., *Federal Procedure, Lawyer's Edition* § 26:545 (2017).

Courts defer contention interrogatories because it is neither fair nor efficient to require a party to "summarize their potential trial" before substantial discovery has occurred. *See In re Facebook*, 2016 U.S. Dist. LEXIS 89890 at *9 (S.D.N.Y. 2016) ("Contention interrogatories are more appropriately reserved for after discovery so that they may narrow the issues already known, thus saving both the parties and the court from inefficiency and unnecessary delay."). Courts are particularly reluctant to order early discovery for contention interrogatories "that

simply track all of the allegations in an opponent's pleading or, in the case of interrogatories directed to the plaintiff, where the complaint is not facially infirm and the defendants appear to have control over or adequate access to much of the evidence[.]" Kimpflen, *Federal Procedure, Lawyer's Edition* § 26:584.

The Court should order that responses to Interrogatory Nos. 11-17 be deferred until the close of discovery.[9]

## CONCLUSION

For the foregoing reasons, this Court should:

(1) Quash the subpoena issued by Mutual to Ronald Katz, M.D. for the production of Doe's medical records from December 28, 2009 to present;

(2) Issue a Protective Order prohibiting inquiry at Doe's deposition, and in discovery generally, into any matters related to medical and health-related information beyond the records and materials that Mutual obtained, and that it relied upon, in evaluating Doe's application and denying coverage to him on February 9, 2015, including information about any aspects of Doe's health or medical condition <u>after</u> the date of Mutual's denial of long-term care insurance; and

(3)  Issue a Protective Order prohibiting inquiry at Doe's deposition, and in discovery generally, into the following specific subjects set forth in Mutual's First Set of Interrogatories dated April 11, 2017: (a) the identity of all physicians with whom Doe treated or consulted from December 2009 to present; (b) all health insurance coverage from December 2009 to present; (c) all dates Doe has been tested for HIV from 2009 to present and the test results; and (d) the reasons that Doe began taking Truvada; and

---

[9] If the Court does order Doe to answer the contention interrogatories now, it should in fairness also order Mutual to answer the contention interrogatories to which it objected about the basis for its affirmative defenses. *See* Exhibit F.

(4) Deny Defendant's motion to compel compliance with the subpoena to Dr. Katz, and its motion to compel interrogatories and document requests.

Respectfully submitted,

JOHN DOE
By his attorneys,

/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

/s/ John P. Ward
John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com

**CERTIFICATE OF SERVICE**

I certify that the within document was electronically filed with the clerk of the court on June 23, 2017 and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

Brooks R. Magratten, BBO# 650393
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

Mark A. Pogue, BBO# 550807
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
mpogue@pierceatwood.com

Katharine E. Kohn, BBO# 675362
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
kkohm@pierceatwood.com

                                        /s/ Bennett H. Klein
                                        Bennett H. Klein
                                        BBO # 550702
                                        GLBTQ Legal Advocates & Defenders
                                        30 Winter St. Suite 800
                                        Boston, MA 02108
                                        617-426-1350
                                        bklein@glad.org

**EXHIBIT A**

PIERCE ATWOOD ᴸᴸᴾ

**MARK A. POGUE**

72 Pine Street
Providence, RI 02903

P 401.490.3416
F 401.588.5166
mpogue@pierceatwood.com
pierceatwood.com

Admitted in: MA, RI

November 24, 2015

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place
Boston, MA  02108
ATTN:  Keith Healey
Administrative Assistant

RE:    John Doe v. Mutual of Omaha
       <u>MCAD Docket Number:  15BPA02661</u>

Dear Mr. Healey:

This letter sets forth the position of Respondent Mutual of Omaha Insurance Company
("Mutual" or the "Company") in response to the charge of discrimination (the "Charge") filed by
John Doe ("Doe").  As shown below, Mutual had every right to deny long-term care insurance to
Doe and any other person using the drug Truvada.  Doe's claims of disability and sexual
orientation discrimination are consequently without merit, and the Commission should dismiss
the Charge.

**Factual Background**

The following facts are relevant to the Charge.

### A.  Mutual of Omaha Insurance Company

Mutual is a full-service, multi-line provider of insurance and financial services products
that provide financial protection to help families, individuals, businesses and groups achieve
their financial goals.  The Company's products include annuities and retirement plans, dental
insurance, disability insurance, life insurance, long-term care insurance and Medicare
supplement insurance.

Case 1:16-cv-11381-GAO     Document 52     Filed 06/23/17     Page 22 of 42


Page 5
November 24, 2015

Truvada is only prescribed for people who are HIV-positive, or who are at high risk of becoming HIV-positive.

Second, even when used as directed, Truvada for PrEP is not completely effective in preventing HIV infection. Exhs. C, D. Given that Truvada users already are at significant risk of becoming infected with HIV, the fact that the drug is less than 100% effective adds another layer of risk to their underwriting profiles.

In addition to these risks, there is a concern that Truvada as PrEP will give users a false sense of security and encourage promiscuity or condomless intercourse, thereby increasing the risk of HIV infection. Burda, supra at 172. There is anecdotal evidence that use of PrEP increases promiscuity, and decreases condom use. Exh. F.

Nowhere in Mutual's underwriting guidelines is sexual orientation used as a basis for granting or denying long-term care coverage. In fact, Mutual's records reflect that, in the past five years, it has sold more than 150 long-term care insurance policies to male partners who submitted joint applications for such insurance, and are presumably homosexual.

Mutual's list of uninsurable medications include several other drugs which, like Truvada, are used as a preventive, or other than for treatment of a disease or infection. These include Antabuse, Cerefolin, Marinol and Methadone. [2]

Any person using a drug appearing on the uninsurable medications list – male or female, heterosexual or homosexual – is ineligible for purchasing long-term care insurance from Mutual.

### E.  Doe's Application For Long-Term Care Coverage

Doe received a prescription for Truvada in November, 2014. Exh. G. The following month, he and his partner applied for long-term care insurance from Mutual. Charge ¶ 4.

Following its standard practices, on January 9, 2015, an agent of Mutual interviewed Doe over the phone about his medical history. Doe indicated during the interview that he used Truvada for HIV prevention. Exh. H. In addition, using an authorization provided by Doe, Mutual obtained medical records from Doe's primary care physician. Those records confirmed that Doe had been prescribed Truvada for HIV prevention on November 10, 2014. Exh. G.

By letter dated February 9, 2014, Mutual denied Doe's application for long-term care insurance. Exh. I. The denial letter explained that Doe's application was being denied because Mutual does not insure people using Truvada, whether for PrEP or for treatment of HIV. The

---

[2] Antabuse is used as a preventive against consumption of alcohol. Cerefolin is a dietary supplement. Marinol, or synthetic marijuana, is used for (among other things) appetite enhancement. Methadone reduces narcotic withdrawal symptoms, and thereby serves as a preventive against the injection of opiate drugs.

{W5211426.1}

**EXHIBIT B**

CONFIDENTIAL

Call Logs

⚠ CONFIDENTIAL



Provider 1 : DR. RONALD KATZ

Address: 25 BOYLSTON ST

CHESTNUT HILLS , MA 02467

Phone: 617-307-3200

Record Range: Obtain ALL records for this patient



pharm red - 7 fills of Truvada 11/2014 (appears all were filled then), and 1 fill of Hydrocodone 7/2014

⚠ CONFIDENTIAL

**01/09/15** ▮▮▮▮▮▮ CAUTION PHARM CK - TRUVADA - FOR HIV

7 FILLS ALL IN 11/14 AND NOT MENTIONED ON APPLICATION

7/11 hozpd Lyme dz 10dys w/ abx -full recovery

*Truvada 12/14 for HIV prevention- denies HIV

1/12 osteo with a ?- C5-6 = see chiro

1/10 bcc chest - burnedoff

1-2 cigars/month

CONFIDENTIAL

etoh amt = ok

*prevention or not, that HIV med on our uninsurale list

1. prob list (of note)  11 lyme >heart block= rx IV/PO, bcc, hld , lt ear stapelectomy lt ear dr Vernick, palps, , OA, b9 colon polyps

doing well some upper back pain sees chiro

probs =lyme 11 > heart block = rx IV/PO= all gone, bcc, stapelectom, y palps- fine now -ekg -nml

labs = cbc hgb 17.2 H , cmp bilirubin 1.9 rest ok , chol = ok , A1C5.6 , HCV- non reactive

1/29/14 screening colonoscopy = sesslie polyps int roids

CONFIDENTIAL

CONFIDENTIAL

Cardio -ok

Reason(s) for declination (use complete sentences)

We could not offer the coverage you applied for due to your disclosure in your interview of taking Truvada and confirmed in your medical records from Dr. Katz.

Reason(s) for declination (use complete sentences)

We do not offer coverage if you are taking this medication regardless of reason as it is on our uninsurable list of medications.

Reason(s) for declination (use complete sentences)

If applicable, encourage to reapply in "x" months



CONFIDENTIAL

CONFIDENTIAL



1.Disclosed  Truvada in interview to prevent HIV

2.. Medical records only list the med and  provides no other details.

3. . Truvada use not  disclosed on application for some reason.



**EXHIBIT C**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br>        Plaintiff<br><br>v.<br><br>MUTUAL OF OMAHA<br>INSURANCE COMPANY,<br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 1:16-cv-11381-GAO

## DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S RESPONSES TO PLAINTIFF JOHN DOE'S FIRST SET OF INTERROGATORIES

Defendant Mutual of Omaha Insurance Company responds to Plaintiff's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

Defendant  Mutual of Omaha Insurance Company objects generally to Plaintiff's First Set of Interrogatories on the following grounds:

A.  Defendant objects to each interrogatory to the extent that it seeks to have Defendant answer on behalf of entities other than itself, or on behalf of agents or employees of other entities. Accordingly, Defendant construes these interrogatories to only refer to the Defendant, and Defendant gives the answers below solely on its behalf.

B. Defendant objects to the extent Plaintiff's interrogatories are overly broad, unduly burdensome, vague, ambiguous, disproportionate to the needs of the case and otherwise beyond the scope of permissible discovery.

C.  Defendant objects to the interrogatories to the extent the information requested is protected from disclosure by the attorney-client privilege, the work product doctrine or any other

Answer: Objection.  Plaintiff's interrogatory is overly broad, vague and not relevant or proportional to the case.  Without waiving the general or specific objections asserted, Mutual of Omaha responds: Mutual of Omaha received and reviewed Plaintiff's application.  It then requested medical records from Plaintiff's healthcare providers.  It conducted an interview of the Plaintiff by telephone.  It then denied the application due to Plaintiff's Truvada prescription.

18. If Doe had not been taking Truvada as prevention for HIV, would Mutual have issued to him the long-term care insurance policy that he applied for?

Answer:  Yes.

19. Identify and describe all communications, written oral (including memoranda, notes, emails or other documents), concerning Mutual's consideration of Doe's application for long-term care insurance and/or its decision to deny long-term care insurance to Doe.

Answer:  See Mutual of Omaha's Rule 26(a)(1) disclosures.

20. Please state the name and current home address of every person Mutual intends to call as a witness in this case and that person's anticipated testimony.

Answer:  Objection.   Plaintiff's interrogatory seeks information protected by the attorney work product privilege.  Mutual of Omaha will disclose its trial witnesses in accordance with the Court's pretrial requirements.

As to Objections:

_____
Brooks Magratten, Esq.
Pierce Atwood LLP
72 Pine Street, Suite 500
Providence, RI 02903
401.490.3422
401.588.5166 (fax)
bmagratten@pierceatwood.com

<u>VERIFICATION</u>

STATE OF NEBRASKA          )
                          )
COUNTY OF DOUGLAS          )

    Lisa Ging, being duly sworn, says:

1. I am above the age of 18 and a Chief Underwriter for the Mutual of Omaha Insurance Company.

2. I have reviewed the foregoing answers to Plaintiff's interrogatories.

3. The foregoing responses are, to my personal knowledge, correct.

                                                  Lisa Ging

Subscribed and sworn to before me
this 24 day of April, 2017.

_Susan L. Lewis_
Notary Public

My commission expires: 7/8/2020

GENERAL NOTARY - State of Nebraska
SUSAN L. LEWIS
My Comm. Exp. July 8, 2020

{W6099319.1}        9

**EXHIBIT D**

CONFIDENTIAL

| Section M | AGREEMENTS AND ACKNOWLEDGEMENTS |
|---|---|

1. The undersigned applicant agrees that (a) all answers in this application are true and complete and Mutual of Omaha Insurance Company will rely on these answers to determine insurability, and (b) incorrect or misleading answers may void this application and any policy issued from its effective date.

2. Applicant acknowledges that Mutual of Omaha Insurance Company may require: an Attending Physician's Statement, medical records, an underwriting assessment, a medical examination, or other information for underwriting purposes.

3. Applicant agrees that Mutual of Omaha Insurance Company will not issue a policy as a result of this application unless (a) the insurance applicant completes all medical examinations and tests required by Mutual of Omaha Insurance Company, (b) Mutual of Omaha Insurance Company receives additional information requested for underwriting (such as Personal Worksheet, Personal Health Interview, or Attending Physician's Statement), and (c) the insurance applicant is, as of the policy application date, determined to be eligible for the exact insurance coverage applied for, or the insurance applicant has subsequently accepted an offer by Mutual of Omaha Insurance Company for coverage other than as applied for, according to the underwriting standards of Mutual of Omaha Insurance Company then in force.

4. Applicant agrees that this application does not provide temporary or interim insurance prior to policy issuance. If the applicant has made an advance premium payment, applicant agrees to the terms and conditions under any temporary insurance agreement or conditional receipt. Applicant agrees that completing this application or making an advance premium payment is not a guarantee that this application will be approved. If approved, the issued policy will indicate its effective date. Applicant acknowledges that if his or her application is declined, the long-term care coverage applied for will not become effective and any advance premium payment submitted with the application will be refunded to applicant, without interest. No insurance coverage will be in effect until Mutual of Omaha Insurance Company (a) issues a policy and (b) receives payment of the full initial premium according to the mode of payment specified in the application.

5. A completed and signed application will become part of each applicant's policy.

6. Applicant acknowledges that no Producer can (a) waive or change any receipt or policy provision, or (b) agree to issue a policy.

7. Applicant acknowledges receipt of an Outline of Coverage, *Your Options for Financing Long-Term Care: A Massachusetts Guide*, Long-Term Care Insurance Personal Worksheet, Things You Should Know Before You Buy Long-Term Care Insurance, Potential Rate Increase Disclosure Form and, if applicable, *Guide to Health Insurance for People with Medicare*.

**Fraud Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**Caution: If your answers on this application are incorrect or untrue, Mutual of Omaha Insurance Company has the right to deny benefits or rescind your policy.**

I have read and understand this Agreements and Acknowledgements Section, including the Fraud Warning and I approve all my answers as recorded in this application.

Signed at Boston City / MA State
X _____ Signature of Applicant A / 11/1/14 Date

Signed at BSTW City / MA State
X _____ Signature of Applicant B / 11/1/14 Date

I/We, the Producer(s) certify that each question was asked exactly as written and I/we have recorded the answers provided by the Applicant(s) completely and accurately. I/We also agree that my/our answers in this application are true and complete.
☑ Yes ☐ No (If "No," please explain) _____

X _____ Signature of Licensed Producer

X _____ Signature of Other Licensed Producer, if applicable

CONFIDENTIAL

SUBMIT TO LTC SERVICE OFFICE

| Appendix 3 | CONDITIONAL RECEIPT |
|---|---|

This receipt is given and accepted with the understanding that the insurance applied for by each applicant will become effective on the date of the completed application (unless a later date is selected by the applicant, in which case coverage will become effective on the date selected by the applicant) if all of the following conditions have been fully satisfied:

**CONDITIONS**

1 The insurance applicant completes all medical examinations and tests required by Mutual of Omaha Insurance Company,

2 Mutual of Omaha Insurance Company receives any additional information requested for underwriting (such as Personal Worksheet, Personal Health Interview, or Attending Physician's Statement),

3 The insurance applicant is, as of the policy application date, determined to be eligible for the exact insurance coverage applied for, according to the underwriting standards of Mutual of Omaha Insurance Company then in force, and the policy is issued, and

4 The minimum premium of at least two month's is received on the date of the application via check and is honored on its first presentation for payment.

**Applicant A**

Payment has been received for **Applicant A** for the amount of $ ▮▮▮▮▮▮ as the initial premium with the attached Long-Term Care Insurance application to Mutual of Omaha Insurance Company.

**Applicant B**

Payment has been received for **Applicant B** for the amount of $ ▮▮▮▮▮▮ as the initial premium with the attached Long-Term Care Insurance application to Mutual of Omaha Insurance Company.

Total Premium
$ ▮▮▮▮▮▮

Payment Method: ☑ Check

**(ALL CHECKS FOR PREMIUMS MUST BE MADE PAYABLE TO MUTUAL OF OMAHA INSURANCE COMPANY ("MUTUAL OF OMAHA"). ONE CHECK IS ACCEPTABLE FOR JOINT APPLICANTS. DO NOT MAKE CHECKS PAYABLE TO THE PRODUCER OR LEAVE THE PAYEE BLANK.)**

Mutual of Omaha Insurance Company reserves the right to disapprove the application by offering to issue coverage other than as applied for or by declining to issue coverage. If applicable, Mutual of Omaha Insurance Company will return monies received with the application if (a) the coverage, other than applied for, is offered but not accepted, or (b) if the coverage is declined. Any delay in completion of the underwriting process or refunding of monies shall not be construed as approval of the application for coverage.

This is not a temporary insurance agreement and does not create any temporary or interim insurance. I/We understand that the Producer has no authority to change the terms of this Receipt.

**SIGNATURES**

X ▮▮▮▮▮▮▮▮   11/1/14
Signature of Applicant A    Date

X ▮▮▮▮▮▮▮▮   11/1/14
Signature of Applicant B    Date

I/We agree that I/we am/are not authorized to change or waive the terms of this Receipt and represent that I/we have not attempted to do so. I/We have read and explained the terms of this Receipt and have left a copy with the Applicant(s).

➡ X _(signature)_    12-15-2014
Signature of Licensed Producer    Date

➡ X
Signature of Other Licensed Producer, if applicable    Date

**EXHIBIT E**

**Are you taking any medications including over-the-counter drugs?**
**Field Audio**
**January 9, 2015**

Mutual: Are you currently taking any medications including over-the-counter drugs?
Doe: Yes.
Mutual: Okay. What's the name of the first one that you're on?
[discussion of three medications omitted]
Mutual: Okay. All right, any others?
Doe: Truvada.
Mutual: Is that a P? Provada?
Doe: T—T-R-U-V-A-D-A.
Mutual: And the dosage, if you know it?
Doe: I don't.
Mutual: Okay. And how often do you take that [unintelligible]?
Doe: That's—a-again, once a night.
Mutual: Okay. And how long have you been taking that, and for what reason?
Doe: Ummm, probably a month and it's a, um, preventative for HIV.
Mutual: Okay.
Doe: I've never been diagnosed with HIV or anything, but it's, again, uh, sorta like the same reason I'm taking Atorvastatin.
Mutual: Got it. And spell that again for me, P as in Paul, T as in Tom?
Doe: T—T as in Tom. Start with a T, as in Tom, R, U, V as in Victor, A-D-A.
Mutual: V-A-D-A. Okay, thank you. Like Truvada.
Doe: Yes.
Mutual: Okay. And the next one.
Doe: That's—that's four prescription.
Mutual: Okay. Anything else over—
Doe: I take—
Mutual: —the counter?
Doe: I take vita—I—I take vitamins.

**EXHIBIT F**

Answer:  Objection.  Plaintiff's interrogatory is overly broad, vague and not relevant or proportional to the case.   Without waiving the general or specific objections asserted, Mutual of Omaha responds that some of the other uninsurable medications include: Axona (caprylidine); Aricept (donepezil); Cerefolin; Cognex (tacrine); Namenda (memanitine); Namzeric; Razadyne (galantamine); Reminyl (galantamine); Exelon (rivastigimine); Vayacog;  Campral (acamprosate); Anatabuse (disulfiram); Vivitrol (naltrexone); Cellcept (mycophenolate mofetil).

14. Please state the basis for your contention in the "Fourth Defense" of your Answer that "Mutual of Omaha is not a place of public accommodation."

Answer:  Objection.  Plaintiff's interrogatory seeks a legal conclusion.

15. Please state the basis for your contention in the "Fifth Defense" of your Answer that "[p]laintiff's claims are barred because Mutual of Omaha's actions were based on legitimate underwriting business considerations."

Answer:  See response to Interrogatory no. 10.

16. Identify all individuals who participated directly or indirectly in the processing, consideration, and evaluation of Doe's application for long-term care insurance, and the denial of his application, stating each person's job duties, the role each person played, and the dates on which he or she performed such role.

Answer:  Objection.  Plaintiff's interrogatory is overly broad, vague and not relevant or proportional to the case.   Without waiving the general or specific objections asserted, Mutual of Omaha responds: Lisa Ging, RN, (Chief Underwriter) and John Blair, (underwriting consultant, now retired).

17. Please identify and describe all steps taken to evaluate medical information regarding Doe in connection with his application for long-term care insurance at issue in this case.

{W6115214.1}                                         7