Lisa Ging
7/19/2017

51 (192 - 195)

Page 192

1  information about?
2     A.  Additional information was not necessary
3  because he was uninsurable.
4     Q.  Okay.  All right.
5        Is there anything else that you can
6  identify that was -- that seems lacking or
7  insufficient in the medical records for purposes of
8  long-term care insurance underwriting?
9           MR. MAGRATTEN:  Objection to the
10 form.
11          THE WITNESS:  We review the records
12 that are provided to us.  So if something is missing
13 from these, I don't know.
14 BY MR. KLEIN:
15    Q.  Okay.  All right.
16       But in terms of what you -- from a long
17 term -- from the -- for the purposes of long-term
18 care underwriting, are these the kind of records you
19 expect to receive when you make a request to a
20 primary care physician?
21          MR. MAGRATTEN:  Objection to form.
22          THE WITNESS:  For this particular
23 case, I find that it's odd that there is no
24 corresponding office visit with the 11/10/14
25 prescription.  I would normally expect to see an

Page 193

1  office visit when a medication is prescribed.
2  BY MR. KLEIN:
3     Q.  All right.  And did Mutual of Omaha
4  request that -- request records relating to that
5  office visit?
6     A.  We requested medical records for the last
7  three years.  This is what the provider submitted to
8  us.
9     Q.  And is it your -- is it your contention
10 that medical records for the last three years were
11 not provided by Dr. Katz?
12    A.  I have no way of knowing that.
13    Q.  Okay.  So that would be medical records
14 from, like, 2012 to 2015?
15          MR. MAGRATTEN:  Objection to form.
16          THE WITNESS:  The cover page says
17 January 1st, 2012, to present.
18          MR. KLEIN:  Okay.  All right.  I need
19 to just go off the record for a second.
20          (Discussion had off the record.)
21          (3:54 p.m. - Recess taken.)
22
23
24
25

Page 194

1           (At 4:07 p.m., with all the parties
2  present as before, the following proceedings were
3  had, to-wit:)
4              (Exhibit No. 9
5              marked for identification.)
6  BY MR. KLEIN:
7     Q.  Ms. Ging, can you please review -- just
8  take a look at all of the pages of Exhibit 9.
9     A.  Okay.
10    Q.  All right.  Looking at the cover page,
11 it's a fax on Mutual of Omaha Insurance Company
12 letterhead from a Candace to a Jerrian Hawkins
13 regarding the plaintiff in this case, John Doe.  Do
14 you know -- do you know who Candace is?
15    A.  I do not.
16    Q.  Do you know who Jerrian Hawkins is?
17    A.  She's a supervisor in the medical
18 information retrieval team.
19    Q.  Okay.  And if you look at the next page,
20 it appears to be a note from Jerrian to Candace; is
21 that correct?
22    A.  There is nothing that identifies who
23 drafted the note.
24    Q.  Okay.  It says [reading] I am faxing over
25 a note describing the information we need from the

Page 195

1  doctor.  We need this information today, please.  A
2  request for these records was already sent and we
3  believe an office visit note was missing from the
4  information we received.  According to the records
5  we received from your office, a prescription for
6  Truvada was started 11/10/14 and would like the
7  office visit telephone notes reflecting why and when
8  this medication was prescribed.
9        Is this referring to the office note that
10 you indicated earlier you would have expected to
11 see?
12    A.  There is a prescription dated 11/14 and no
13 corresponding office note.
14    Q.  Okay.  And if you turn to page 3 of
15 Exhibit 9, is that the office note regarding the
16 Truvada prescription for the plaintiff, Doe?
17          MR. MAGRATTEN:  Objection to form.
18          THE WITNESS:  I don't know.  This was
19 after I was involved in the case.  So this is -- we
20 finalized our underwriting in early 2015, and this
21 is dated September 2015.  I have no knowledge of
22 this.
23 BY MR. KLEIN:
24    Q.  Well, is it possible that was misdated?  I
25 mean...