# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> MUTUAL OF OMAHA INSURANCE COMPANY, <br><br> Defendant. | C.A. No. 1:16-cv-11381-GAO |

**PLAINTIFF JOHN DOE'S SUPPLEMENTAL RESPONSES TO MUTUAL OF OMAHA INSURANCE COMPANY'S INTERROGATORIES 11-17**

Plaintiff John Doe supplements his responses to Defendant's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

Plaintiff John Doe objects generally to Defendant's First Set of Interrogatories on the following grounds:

1. Plaintiff objects to the extent Defendant's interrogatories are overly broad, unduly burdensome, vague, disproportionate to the needs of the case and otherwise beyond the scope of permissible discovery.

2. Plaintiff objects to the interrogatories to the extent the information requested is protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege or discovery immunity. Any inadvertent disclosure of material protected by the attorney-client privilege, the work product doctrine or any other applicable privilege or discovery immunity is not intended and shall not constitute a waiver.

1

3.      Plaintiff objects to Defendant's "Instructions" and "Definitions" to the extent they seek to require answers, information, identification of documents or persons or things, supplementation or to impose any obligations beyond what is permitted by the Federal Rules of Civil Procedure and any applicable Local Rules of the District of Massachusetts.

## SUPPLEMENTAL RESPONSE

INTERROGATORY NO. 11:

State each and every fact upon which you rely in alleging, in paragraph 25 of the Complaint, that the Defendant's denial of Plaintiff's application was based on:

(a) bias against gay men;

(b) negative beliefs about gay male sexuality;

(c) stereotypes that gay male sexuality is inherently risky and unhealthy; and

(d) false and unscientific beliefs about the contagion of HIV

and identify all witnesses with knowledge of the facts stated in response to this interrogatory and all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 11 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in the litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

Doe has not yet developed all facts related to the answer to this interrogatory, including facts and documents that will be developed in further discovery as well as information contained in his expert reports. Consistent with the Order entered by Magistrate Judge Boal on August 22,

2017 Doe identifies the following facts while reserving the right to supplement this answer at a later date:

Based on research and data available as of February 2015, and subsequent research, the efficacy of PrEP when taken as directed approaches 100%. Please see, for example, the IPREX post hoc data analysis published by Anderson et al. in Science Transnational Medicine in 2012 ("Emtricitabine-tenofovir exposure and pre-exposure prophylaxis efficacy in men who have sex with men"). A full explanation of the research data and documents supporting this statement will be contained in Plaintiff's expert report which will be provided to the Defendant pursuant to the Court's scheduling Order.

Lisa Ging testified that in 2014 and 2015, or at any time previously, Mutual did not review the studies or information available on the efficacy of PrEP, including in the context of denying Doe's application and his appeal.

Lisa Ging testified that Truvada is uninsurable because it is indicated for individuals at high risk for acquiring HIV without regard to the risk of HIV transmission when PrEP is used.

Lisa Ging testified that PrEP would be uninsurable even if it were 100% effective in preventing HIV infection.

Lisa Ging testified that Mutual would provide long-term care insurance to an individual who was previously on PrEP, but had not been taking PrEP for six months.

Lisa Ging testified that not all persons at risk for HIV use PrEP.

Mutual does not exclude from long-term care insurance gay men, or any other individuals, on the basis that they are engaging in receptive anal sex, with or without a condom.

Individuals who take PrEP are at less risk for HIV than similarly situated individuals who do not take PrEP.

3

An individual who takes PrEP, but is not fully adherent, is not at greater risk for HIV infection than similarly situated individuals that Mutual insures.

Mutual provides long-term care insurance to individuals who have bipolar disorder, manic depression, depression, diabetes insipidus, sleep apnea, and many other diseases on the condition that it is controlled by medication, therapies, or lifestyle choices.

With respect to these medications that are requisites for insurance, Mutual does not monitor compliance with the required medication, therapy, or lifestyle choices after the issuance of a policy.

Mutual provides long-term care insurance to individuals with coronary artery disease if they are tobacco free for 12 months, but does not monitor tobacco use after the issuance of the policy even though it acknowledges that smoking is a significant health concern that can make this condition worse.

Lisa Ging testified that she agreed with a statement made in the 1990s that people infected with HIV have significantly shorter life expectancy and will have substantially more illness than a class of persons otherwise similar who are not HIV-infected, as a basis to support the exclusion from long-term care insurance of all people with HIV in 2015.

Lisa Ging testified that complications including lymphoma, AIDS-related dementia, chronic wasting disease, and kidney failure are reasons to exclude all people with HIV from long-term care insurance today.

A person not on PrEP is more likely to get HIV than a similarly situated person who is on PrEP.

Lisa Ging testified that an individual on PrEP who does not have HIV is a higher risk for claims than a person with diabetes insipidus.

4

Mutual provides long-term care insurance to an individual who smokes an unlimited amount for an unlimited duration.

Lisa Ging compared the risk of claims utilization of an HIV negative individual on PrEP to a person who smokes an unlimited amount by stating that: "An individual on PrEP has been determined to be at high risk for acquiring HIV. An individual by the sheer fact that they use tobacco has not been identified to be a high risk for acquiring HIV."

Lisa Ging testified that an individual who has coronary artery disease, and smokes (without regard to the amount or duration of the person's smoking) has a lesser risk of claims than an HIV negative on PrEP.

Lisa Ging testified that an individual with coronary artery disease in combination with diabetes who smokes (without regard to the amount or duration of the person's smoking) has a lesser risk of claims than an HIV negative individual on PrEP.

Lisa Ging testified that an individual with advanced arthritis has a lesser risk of claims than an HIV negative individual on PrEP.

Dr. Wilkins testified that with respect to the coverage of individuals with diabetes insipidus as long as it is controlled by medication, the efficacy of the therapy is relevant to Mutual's determination to insure such individuals.

Dr. Wilkins testified that in determining insurability, Mutual evaluates someone in their state on the medication or therapy rather than if they weren't taking the medication.

Dr. Wilkins testified that the risk of claims for every condition in Mutual's underwriting manual is lesser than the risk of claims for an HIV negative individual on PrEP because PrEP is new and there isn't long-term evidence that it's going to be effective.

5

Dr. Wilkins claims that Mutual denies insurance to those on PrEP because the long-term complications of PrEP are unknown.

Dr. Wilkins testified that after Truvada was approved for use as PrEP, Mutual did not undertake any review of the drug's use as prophylaxis in HIV-negative individuals.

Dr. Wilkins testified that not all persons at risk for HIV use PrEP.

Dr. Wilkins had no opinion on the comparative risk for HIV of a person who takes PrEP four to seven days a week and someone not on PrEP who has anal intercourse using a condom. He does not know that taking PrEP four to seven days a week is more effective than condoms in preventing HIV.

Dr. Wilkins testified that it is unknown whether an individual not on PrEP has a higher risk for HIV transmission than an individual with identical risk behaviors for HIV who is on PrEP.

Dr. Wilkins thinks that the term "ARC" may still be used in current medical care.

Prior to the advent of PrEP, Mutual did not assess an HIV negative person's risk for becoming HIV positive in its insurance underwriting.

Prior to the advent of PrEP, Mutual did not inquire into a person's sexual risk factors for HIV. It makes no such inquiry today or in 2014 or 2015.

In addition to Doe's experts to be named, current witnesses relevant to these facts are Lisa Ging and Michael Wilkins. Documents relevant to these facts include the exhibits to the Ging and Wilkins depositions and Mutual's Position Statement to the MCAD and its exhibits.

INTERROGATORY NO. 12:

State each and every fact upon which you rely in alleging, in paragraph 26 of the Complaint, that Defendant in denying Plaintiff's application, "failed to treat [Plaintiff] in accordance with an actual and accurate classification of his risk because of myths, stereotypes and negative attitudes about the nature and riskiness of [Plaintiff's] sexuality because he is a gay man, and about gay male sexuality in general" and identify:

(a) all persons having knowledge of the facts stated in response to this interrogatory;

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 12 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number 12 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in the litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.

INTERROGATORY NO. 13:

State each and every fact upon which you rely in alleging, in paragraph 27 of the Complaint, that by denying Plaintiff's application Defendant "engaged in unfair and discriminatory classification of risk by failing to treat [Plaintiff] the same as other persons of the same risk, based on myths, fears and stereotypes about the nature and riskiness of [Plaintiff's] sexuality because he is a gay man, and about gay male sexuality in general" and identify:

(a) all persons having knowledge of the facts stated in response to this interrogatory; and

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 13 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage of discovery in this case pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.

INTERROGATORY NO. 14:

State each and every fact upon which you rely in alleging, in paragraph 28 of the Complaint, that Defendant "failed to treat [Plaintiff] in accordance with the actual and accurate classification of his risk because of myths, stereotypes, and unscientific beliefs about the transmission of HIV" and identify:

(a) all persons having knowledge of the facts stated in response to this interrogatory; and

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Objection. Interrogatory number 14 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.

INTERROGATORY NO. 15:

State each and every fact upon which you rely in alleging, in paragraph 29 of the Complaint, that Defendant "engaged in unfair and discriminatory classification of risk by failing to treat [Plaintiff] the same as other persons of the same risk, based on myths, stereotypes, and unscientific beliefs about the transmission of HIV" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

    (b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 15 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.

INTERROGATORY NO. 16:

State each and every fact upon which you rely in alleging, in paragraph 32, that "Plaintiff... is within the protected class of the prohibition on disability discrimination in M.G.L.c. 272, § 98 because defendant... regarded him as disabled within the meaning of M.G.L.c. 151B, § 1 (17)" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

    (b) all documents pertaining to the facts stated in response to this interrogatory.

9

ANSWER: Objection. Objection. Interrogatory number 16 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number 16 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

Doe has not yet developed all facts related to the answer to this interrogatory, including facts and documents that will be developed in further discovery as well as information contained in his expert reports. Consistent with the Order entered by Magistrate Judge Boal on August 22, 2017 Doe identifies the following facts while reserving the right to supplement this answer at a later date:

Mutual's long-term care insurance provides benefits in the event that someone is unable to perform activities of daily living or is cognitively impaired.

A right to benefits is triggered by impairment in two of six activities of daily living that include bathing, dressing, eating, continence, and transferring.

An insured under Mutual's long-term care benefits plan meets the criteria for receipt of benefits if they are unable to care for themselves with respect to those daily activities or cognitive impairment.

Mutual excludes people who use PrEP from long-term care insurance because of its belief that such individuals are at high risk of acquiring HIV.

Mutual believes it can screen out individuals at risk for HIV by using PrEP as a proxy for a rational screening process.

Lisa Ging testified that if an individual develops HIV they many need to utilize long-term care services.

Asked to compare the risk of claims for an HIV-negative person on PrEP with the risk of claims for a person who has been diagnosed with HIV disease, Lisa Ging testified that the individual on PrEP has been deemed to be at high risk of acquiring HIV, so if they acquire HIV the risk is the same.

In addition to Doe's experts to be named, current witnesses relevant to these facts are Lisa Ging and Michael Wilkins. Documents relevant to these facts include the exhibits to the Ging and Wilkins depositions, Mutual's Position Statement to the MCAD and its exhibits, Mutual's underwriting guide, and the denial letters from February and April 2015.

INTERROGATORY NO. 17:

State each and every fact upon which you rely in alleging, in paragraph 35, that the Defendant "discriminated against Plaintiff...in access to a place of public recommendation based on sexual orientation in violation of M.G.L.c. 272, § 98 and identify:

(a) all persons having knowledge of the facts stated in response to this interrogatory; and

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 17 is overly broad and calls for expert testimony. Interrogatory number 17 also calls for information that is in the possession of the defendant and is the subject of discovery in this case. Further, interrogatory number 17 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

In 2014 and 2015 Mutual sold long-term care insurance in Massachusetts.

Mutual sold long-term care insurance in Massachusetts through authorized agents and producers.

Mutual has marketing materials and a website that provide consumers with information about long-term care insurance and a way to connect with an agent or producer with the ultimate goal of selling long-term care insurance to consumers, including in Massachusetts.

Producers and agents must comply with Mutual's requirements and policies.

A producer or agent cannot market or sell Mutual's products without Mutual's permission and authorization.

Mutual accepted applications for long-term care insurance from people in Massachusetts in 2014.

The application for long-term care insurance is submitted to Mutual.

Mutual is responsible for determining whether to issue long-term care insurance to an applicant.

Mutual underwrites the long-term care insurance.

The denial of long-term care insurance to Doe was solely the decision of Mutual.

The application for long-term care insurance at issue in this case listed Massachusetts addresses.

JD Loden was required by Mutual to obtain a license to sell long-term care insurance in Massachusetts in order to act as an agent to offer Doe a long-term care policy issued by Mutual.

The February 9, 2015 denial letter was mailed to Doe in Massachusetts.

The April 22, 2015 denial letter was mailed to Doe in Massachusetts.

Mutual is licensed by the Commonwealth of Massachusetts to sell long-term care insurance in Massachusetts.

Witnesses relevant to these facts are Nicole DeVries, JD Loden, and Teresa Curreri. The documents include the long-term care insurance applications, denial letters, and documents produced by JD Loden and Teresa Curreri.

Respectfully submitted,

JOHN DOE
By his attorneys,

_____
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

_____ /BHK
John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com

_____
John Doe

Date: September 13, 2017

14

## CERTIFICATE OF SERVICE

I, Bennett H. Klein, counsel for Plaintiff John Doe, hereby certify that on this 13 day of September, 2017, I served a copy of Plaintiff John Doe's Supplemental Responses to Defendant's First Set of Interrogatories upon Brooks R. Magratten, counsel for Defendant Mutual of Omaha Insurance Company, by overnight mail to his address, Pierce Atwood LLP, 72 Pine Street, Providence, RI 02902.

/s/ Bennett H. Klein
Bennett H. Klein