UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
JOHN DOE,                               )
                                        )
              Plaintiff,                )
                                        )
      v.                                )          C.A. No. 1:16-cv-11381-GAO
                                        )
MUTUAL OF OMAHA INSURANCE               )
COMPANY,                                )
                                        )
              Defendant.                )
_____)

**PLAINTIFF JOHN DOE'S OPPOSITION TO DEFENDANT MUTUAL OF OMAHA'S MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH DISCOVERY ORDER REGARDING INTERROGATORY ANSWERS**

Defendant Mutual of Omaha Insurance Company ("Mutual") denied John Doe insurance coverage, for which it determined that he was otherwise qualified, based on its blanket policy of excluding all HIV-negative people who take the medication Truvada as pre-exposure prophylaxis (PrEP) for HIV. Mutual understands full well the basis for Doe's challenge to Mutual's policy under M.G.L. c. 272, §§ 92A and 98: It is based on unscientific information about HIV transmission in PrEP users, and the impact of Mutual's unscientific beliefs about PrEP falls on gay men who are the predominant users of PrEP. Mutual "regarded" Doe as disabled because it denied him insurance based on its belief that his use of Truvada marked him as too high a risk for HIV, a covered disability under Massachusetts law, without regard to the scientific evidence about HIV transmission when using PrEP. Mutual discriminated based on sexual orientation because PrEP is predominantly used by and popularly associated with gay men. Indeed, Mutual's own words in its position statement to the Massachusetts Commission Against Discrimination demonstrate that it understands the association between PrEP and gay

men. It stated that: "Approval of PrEP was particularly controversial in the lesbian, gay, bisexual

and transgender community." *See* Exhibit A (attached). It then went on to include the following

block quote:

> PrEP intervention has been the subject of notable dissensus, particularly in
> the lesbian, gay, bisexual and transgender (LGBT) community. For
> example, Larry Kramer, a long-time HIV/AIDS activist, recently stated
> that people taking Truvada for PrEP must have 'rocks in their heads' for
> risking potential long-term side effects. Controversially, Michael
> Weinstein, President of the AIDS Healthcare Foundation, analogized oral
> PrEP to a 'party drug' and predicted that it would lead to widespread drug
> resistance and encourage condomless sex.

MCAD Position Statement, Exhibit A (quoting a law review article).  Mutual's references to

community controversy and the characterization of PrEP by nonscientists as a "party drug" is

evidence of bias and reliance on stigma and stereotypes rather than objective scientific

information which Mutual claims is the basis for its other underwriting decisions.

Doe provided detailed supplemental answers to Mutual's interrogatories 11-17 as

required by this Court's Order on Discovery Motions (Docket No. 61 at 6). *See* Supplemental

Answers (Exhibit B). This Court should reject Mutual's assertion that Doe has not complied with

the Order for the following reasons:

First, Mutual asserts that the Court ordered Doe to "present facts he possessed prior to

filing his Complaint."  Docket No. 73, at 2. The Order does not say that. The relevant section of

the Court's Order stated:

> Doe argues that these are contention interrogatories that should be
> deferred until after discovery is completed. However, Doe presumably has
> a Rule 11 basis for his various allegations in the Complaint. Accordingly,
> the Court finds that Doe should be required to answer those interrogatories
> now and may supplement his answers later should discovery reveal
> additional or different information.

Docket No. 61 at 6 (emphasis supplied) (citation omitted). There is nothing in this language that

suggests that Doe must answer with what facts he had available at the time he filed the

Complaint. Rather, the Court simply noted that Doe must have had a Rule 11 basis for filing the Complaint so presumably it is not unfair to expect him to answer the interrogatories now, with leave to supplement with later-gathered information. Nothing in the Order places a temporal requirement on Doe's answers, orders him to demonstrate that he complied with Rule 11, or precludes Doe from answering with information obtained during discovery to date. It is puzzling that a defendant would argue for narrower rather than broader information in discovery.[1]

In any event, Doe's answers do, in fact, include information that was available to him at the time he filed the Complaint and this should have been apparent to Mutual. In the interrogatory answers attached as Exhibit B, Doe has underlined the facts that he knew at the time he filed his complaint, some of which are framed as deposition testimony where a witness confirmed what Doe previously knew. There is nothing in the Court's Order that required Doe to separate information he knew at the time of filing from information learned or confirmed during discovery.

Second, the remainder of Mutual's dissatisfaction is its view that the facts provided in Doe's answers are insufficient to constitute discrimination. *See, e.g.*, Docket No. 73 at 3 ("none of Plaintiff's references to deposition testimony actually address Plaintiff's allegations that Mutual of Omaha denied Plaintiff's insurance application based on" false beliefs and stereotypes); at 4 (stating that plaintiff's answer to interrogatory 16 are not responsive to the question "how was Plaintiff allegedly regarded as disabled"); and at 6 (claiming that Mutual does not understand "how Plaintiff gets from point A (Plaintiff's application was denied) to Point B

---

[1] Similarly, while Mutual now characterizes its interrogatories as asking "about the facts that [plaintiff] relied upon to craft the specific allegations of discrimination in the Complaint," Docket No. 73 at 3, the interrogatories do not actually state that. While Mutual may have contemplated a time-limited approach, that is hardly the unambiguous or even most logical reading of them.

(Mutual of Omaha discriminated)." If Mutual believes that the facts presented do not constitute discrimination, that is an argument to be made on summary judgment, not a basis to require further answers to interrogatories that Doe did answer. The interrogatories ask for the facts which form the basis of Doe's claim, not a legal argument.

For example, Mutual responded to Doe's interrogatory answers that stated the facts supporting his claim that Mutual "regarded" him as disabled by stating that Doe did not use the word "disabled" in his answer, and by simply arguing that plaintiff "did not present any facts suggesting that Mutual of Omaha regarded him as disabled." Docket No. 73 at 4; Exhibit B at 9-11. Plaintiff is not required to use the word "disabled" when providing the underlying facts that show he was "regarded as" disabled. It is, in fact, doubtful that Mutual does not understand how these facts support a legal claim that it regarded Doe as disabled, but any disagreement with their sufficiency is for summary judgment and not grounds to order further answers to interrogatories Doe has answered.

Mutual shows a similar misunderstanding when it states that none of the plaintiff's facts demonstrate myths, stereotypes, and negative attitudes about the transmission of HIV and gay male sexuality. Doe did not have to label the facts provided in its interrogatory answers as myths and stereotypes. But, for Mutual's benefit, a myth or stereotype is simply an action taken upon false beliefs and misinformation rather than a scientific basis. The <u>fact</u> that "Truvada is uninsurable because it is indicated for individuals at high risk for acquiring HIV without regard to the risk of HIV transmission when PrEP is used" is based on a false belief and unscientific information about the risk of HIV transmission. *See* Exhibit B at 3. The <u>fact</u> that "[a]n individual who takes PrEP, but is not fully adherent, is not at greater risk for HIV infection than similarly situated individuals that Mutual insures" is evidence showing that Mutual's policy is based on

false beliefs and scientific information about HIV transmission. The <u>fact</u> that PrEP is a drug predominantly taken by gay men, and that PrEP reduces HIV transmission by close to 100%, gives rise to an inference that Mutual believes gay male sexuality is inherently risky. *See* Exhibit B at 4. Similarly, the facts presented in the interrogatory answers also demonstrate that Mutual personnel have taken contradictory positions and that Mutual has not assessed coverage for individuals who take PrEP on the same bases and terms as it assesses coverage for people who take other medications. This evidence can properly create an inference that myths, stereotypes, false beliefs, and prejudice are a reason for the differential treatment. All of these facts relate to Doe's disability and sexual orientation discrimination claims.[2]

In sum, Doe has answered Mutual's interrogatories and there is nothing that demonstrates that he failed to comply with the Court's Order that he do so.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff John Doe requests that the Court deny Defendant's Motion to Compel Plaintiff's Compliance with Discovery Order Regarding Interrogatory Answers.

---

[2] With respect to the sexual orientation claims, Doe is still in the process of gathering information that will show that PrEP is taken predominantly by gay men who are the highest risk group for HIV and will supplement with that information as the Court's Order permits.

Respectfully submitted,

JOHN DOE
By his attorneys,


/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

/s/ John P. Ward
John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com




## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on

October 2, 2017, and that it is available for viewing and downloading from the Court's ECF

system. Service by electronic means has been effectuated on all counsel of record.


Brooks R. Magratten, BBO# 650393
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

Mark A. Pogue, BBO# 550807
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
mpogue@pierceatwood.com

Katharine E. Kohn, BBO# 675362
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
kkohm@pierceatwood.com

Nicole Kinsely, BBO # 682528
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1185
nkinsley@foleyhoag.com

/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

# Exhibit A

PIERCE ATWOOD LLP

**MARK A. POGUE**

72 Pine Street
Providence, RI 02903

P 401.490.3416
F 401.588.5166
mpogue@pierceatwood.com
pierceatwood.com

Admitted in: MA, RI

November 24, 2015

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place
Boston, MA  02108
ATTN:  Keith Healey
Administrative Assistant

RE:    John Doe v. Mutual of Omaha
       MCAD Docket Number:  15BPA02661

Dear Mr. Healey:

This letter sets forth the position of Respondent Mutual of Omaha Insurance Company ("Mutual" or the "Company") in response to the charge of discrimination (the "Charge") filed by John Doe ("Doe").  As shown below, Mutual had every right to deny long-term care insurance to Doe and any other person using the drug Truvada.  Doe's claims of disability and sexual orientation discrimination are consequently without merit, and the Commission should dismiss the Charge.

<b><u>Factual Background</u></b>

The following facts are relevant to the Charge.

**A.  <u>Mutual of Omaha Insurance Company</u>**

Mutual is a full-service, multi-line provider of insurance and financial services products that provide financial protection to help families, individuals, businesses and groups achieve their financial goals.  The Company's products include annuities and retirement plans, dental insurance, disability insurance, life insurance, long-term care insurance and Medicare supplement insurance.

Page 3
November 24, 2015

> medication Truvada (a combination of tenofovir and emtricitabine)
> may be 44% to 92% efficacious for preventing HIV infection, with
> higher efficacy depending on how well users adhere to medication
> schedules.

Kristen Underhill, Paying for Prevention: Challenges To Health Insurance Coverage for Biomedical HIV Prevention In The United States, 38 Am.J. L. & Med. 607, 618-19 (2012).

> The FDA's approval of Truvada as PrEP was controversial.
>
> Principal opposition to FDA approval of Truvada as PrEP came from
> the largest nonprofit HIV/AIDS healthcare provider in the United
> States, the AHF [AIDS Healthcare Foundation]...[T]he gravamen of
> the AHF's opposition was that the completed trials failed to demonstrate
> that the benefits of Truvada as PrEP outweighed the risks.

Jason Potter Burda, When Condoms Fail: Making Room Under The ACA Blanket Fro PrEP HIV Prevention, 52 San Diego L. Rev., 171, 172 (2015).

> Approval of Truvada for PrEP was particularly controversial in the lesbian, gay, bisexual and transgender community.
>
> PrEP intervention has been the subject of notable dissensus,
> particularly in the lesbian, gay, bisexual and transgender (LGBT)
> community.  For example, Larry Kramer, a long-time HIV/AIDS activist,
> recently stated that people taking Truvada for PrEP must have
> 'rocks in their heads' for risking potential long-term side effects.
> Controversially, Michael Weinstein, President of the AIDS Healthcare
> Foundation, analogized oral PrEP to a 'party drug' and predicted
> that it would lead to widespread drug resistance and encourage
> condomless sex.

Burda, supra at 172.

Notwithstanding this controversy, the FDA approved Truvada for PrEP in 2012.  In May 2014, the U.S. Centers for Disease Control and Prevention (the "CDC") issued an authoritative set of clinical practice guidelines for the use of Truvada as PrEP.  Exh. C.  The CDC guidelines recommend use of the drug as PrEP "only for people who are at ongoing substantial risk of HIV infection."  Id. (emphasis added).  According to the CDC, persons at substantial risk for HIV infection include:

- anyone (man or woman) in an ongoing relationship with an HIV-positive partner;

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>       v.<br><br>MUTUAL OF OMAHA INSURANCE<br>COMPANY,<br><br>       Defendant. | C.A. No. 1:16-cv-11381-GAO |

## PLAINTIFF JOHN DOE'S SUPPLEMENTAL RESPONSES TO MUTUAL OF OMAHA INSURANCE COMPANY'S INTERROGATORIES 11-17

Plaintiff John Doe supplements his responses to Defendant's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

Plaintiff John Doe objects generally to Defendant's First Set of Interrogatories on the following grounds:

1.    Plaintiff objects to the extent Defendant's interrogatories are overly broad, unduly burdensome, vague, disproportionate to the needs of the case and otherwise beyond the scope of permissible discovery.

2.    Plaintiff objects to the interrogatories to the extent the information requested is protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege or discovery immunity. Any inadvertent disclosure of material protected by the attorney-client privilege, the work product doctrine or any other applicable privilege or discovery immunity is not intended and shall not constitute a waiver.

1

3.      Plaintiff objects to Defendant's "Instructions" and "Definitions" to the extent they seek to require answers, information, identification of documents or persons or things, supplementation or to impose any obligations beyond what is permitted by the Federal Rules of Civil Procedure and any applicable Local Rules of the District of Massachusetts.

## SUPPLEMENTAL RESPONSE

INTERROGATORY NO. 11:

State each and every fact upon which you rely in alleging, in paragraph 25 of the Complaint, that the Defendant's denial of Plaintiff's application was based on:

(a) bias against gay men;

(b) negative beliefs about gay male sexuality;

(c) stereotypes that gay male sexuality is inherently risky and unhealthy; and

(d) false and unscientific beliefs about the contagion of HIV

and identify all witnesses with knowledge of the facts stated in response to this interrogatory and all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 11 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in the litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

Doe has not yet developed all facts related to the answer to this interrogatory, including facts and documents that will be developed in further discovery as well as information contained in his expert reports. Consistent with the Order entered by Magistrate Judge Boal on August 22,

2

2017 Doe identifies the following facts while reserving the right to supplement this answer at a later date:

Based on research and data available as of February 2015, and subsequent research, the efficacy of PrEP when taken as directed approaches 100%. Please see, for example, the IPREX post hoc data analysis published by Anderson et al. in Science Transnational Medicine in 2012 ("Emtricitabine-tenofovir exposure and pre-exposure prophylaxis efficacy in men who have sex with men"). A full explanation of the research data and documents supporting this statement will be contained in Plaintiff's expert report which will be provided to the Defendant pursuant to the Court's scheduling Order.

Lisa Ging testified that in 2014 and 2015, or at any time previously, Mutual did not review the studies or information available on the efficacy of PrEP, including in the context of denying Doe's application and his appeal.

Lisa Ging testified that Truvada is uninsurable because it is indicated for individuals at high risk for acquiring HIV without regard to the risk of HIV transmission when PrEP is used.

Lisa Ging testified that PrEP would be uninsurable even if it were 100% effective in preventing HIV infection.

Lisa Ging testified that Mutual would provide long-term care insurance to an individual who was previously on PrEP, but had not been taking PrEP for six months.

Lisa Ging testified that not all persons at risk for HIV use PrEP.

Mutual does not exclude from long-term care insurance gay men, or any other individuals, on the basis that they are engaging in receptive anal sex, with or without a condom.

Individuals who take PrEP are at less risk for HIV than similarly situated individuals who do not take PrEP.

An individual who takes PrEP, but is not fully adherent, is not at greater risk for HIV infection than similarly situated individuals that Mutual insures.

Mutual provides long-term care insurance to individuals who have bipolar disorder, manic depression, depression, diabetes insipidus, sleep apnea, and many other diseases on the condition that it is controlled by medication, therapies, or lifestyle choices.

With respect to these medications that are requisites for insurance, Mutual does not monitor compliance with the required medication, therapy, or lifestyle choices after the issuance of a policy.

Mutual provides long-term care insurance to individuals with coronary artery disease if they are tobacco free for 12 months, but does not monitor tobacco use after the issuance of the policy even though it acknowledges that smoking is a significant health concern that can make this condition worse.

Lisa Ging testified that she agreed with a statement made in the 1990s that people infected with HIV have significantly shorter life expectancy and will have substantially more illness than a class of persons otherwise similar who are not HIV-infected, as a basis to support the exclusion from long-term care insurance of all people with HIV in 2015.

Lisa Ging testified that complications including lymphoma, AIDS-related dementia, chronic wasting disease, and kidney failure are reasons to exclude all people with HIV from long-term care insurance today.

A person not on PrEP is more likely to get HIV than a similarly situated person who is on PrEP.

Lisa Ging testified that an individual on PrEP who does not have HIV is a higher risk for claims than a person with diabetes insipidus.

Mutual provides long-term care insurance to an individual who smokes an unlimited amount for an unlimited duration.

Lisa Ging compared the risk of claims utilization of an HIV negative individual on PrEP to a person who smokes an unlimited amount by stating that: "An individual on PrEP has been determined to be at high risk for acquiring HIV. An individual by the sheer fact that they use tobacco has not been identified to be a high risk for acquiring HIV."

Lisa Ging testified that an individual who has coronary artery disease, and smokes (without regard to the amount or duration of the person's smoking) has a lesser risk of claims than an HIV negative on PrEP.

Lisa Ging testified that an individual with coronary artery disease in combination with diabetes who smokes (without regard to the amount or duration of the person's smoking) has a lesser risk of claims than an HIV negative individual on PrEP.

Lisa Ging testified that an individual with advanced arthritis has a lesser risk of claims than an HIV negative individual on PrEP.

Dr. Wilkins testified that with respect to the coverage of individuals with diabetes insipidus as long as it is controlled by medication, the efficacy of the therapy is relevant to Mutual's determination to insure such individuals.

Dr. Wilkins testified that in determining insurability, Mutual evaluates someone in their state on the medication or therapy rather than if they weren't taking the medication.

Dr. Wilkins testified that the risk of claims for every condition in Mutual's underwriting manual is lesser than the risk of claims for an HIV negative individual on PrEP because PrEP is new and there isn't long-term evidence that it's going to be effective.

Dr. Wilkins claims that Mutual denies insurance to those on PrEP because the long-term complications of PrEP are unknown.

Dr. Wilkins testified that after Truvada was approved for use as PrEP, Mutual did not undertake any review of the drug's use as prophylaxis in HIV-negative individuals.

Dr. Wilkins testified that not all persons at risk for HIV use PrEP.

Dr. Wilkins had no opinion on the comparative risk for HIV of a person who takes PrEP four to seven days a week and someone not on PrEP who has anal intercourse using a condom. He does not know that taking PrEP four to seven days a week is more effective than condoms in preventing HIV.

Dr. Wilkins testified that it is unknown whether an individual not on PrEP has a higher risk for HIV transmission than an individual with identical risk behaviors for HIV who is on PrEP.

Dr. Wilkins thinks that the term "ARC" may still be used in current medical care.

Prior to the advent of PrEP, Mutual did not assess an HIV negative person's risk for becoming HIV positive in its insurance underwriting.

Prior to the advent of PrEP, Mutual did not inquire into a person's sexual risk factors for HIV. It makes no such inquiry today or in 2014 or 2015.

In addition to Doe's experts to be named, current witnesses relevant to these facts are Lisa Ging and Michael Wilkins. Documents relevant to these facts include the exhibits to the Ging and Wilkins depositions and Mutual's Position Statement to the MCAD and its exhibits.

INTERROGATORY NO. 12:

State each and every fact upon which you rely in alleging, in paragraph 26 of the Complaint, that Defendant in denying Plaintiff's application, "failed to treat [Plaintiff] in accordance with an actual and accurate classification of his risk because of myths, stereotypes and negative attitudes about the nature and riskiness of [Plaintiff's] sexuality because he is a gay man, and about gay male sexuality in general" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory;

    (b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 12 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number 12 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in the litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.


INTERROGATORY NO. 13:

State each and every fact upon which you rely in alleging, in paragraph 27 of the Complaint, that by denying Plaintiff's application Defendant "engaged in unfair and discriminatory classification of risk by failing to treat [Plaintiff] the same as other persons of the same risk, based on myths, fears and stereotypes about the nature and riskiness of [Plaintiff's] sexuality because he is a gay man, and about gay male sexuality in general" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 13 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage of discovery in this case pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.


INTERROGATORY NO. 14:

State each and every fact upon which you rely in alleging, in paragraph 28 of the Complaint, that Defendant "failed to treat [Plaintiff] in accordance with the actual and accurate classification of his risk because of myths, stereotypes, and unscientific beliefs about the transmission of HIV" and identify:

(a) all persons having knowledge of the facts stated in response to this interrogatory; and

(b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Objection. Interrogatory number 14 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.

INTERROGATORY NO. 15:

State each and every fact upon which you rely in alleging, in paragraph 29 of the Complaint, that Defendant "engaged in unfair and discriminatory classification of risk by failing to treat [Plaintiff] the same as other persons of the same risk, based on myths, stereotypes, and unscientific beliefs about the transmission of HIV" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

    (b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 15 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

See response to interrogatory number 11.


INTERROGATORY NO. 16:

State each and every fact upon which you rely in alleging, in paragraph 32, that "Plaintiff... is within the protected class of the prohibition on disability discrimination in M.G.L.c. 272, § 98 because defendant... regarded him as disabled within the meaning of M.G.L.c. 151B, § 1 (17)" and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

    (b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Objection. Interrogatory number 16 calls for information that is in the possession of the defendant and is the subject of discovery in this case. In addition, interrogatory number 16 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

Doe has not yet developed all facts related to the answer to this interrogatory, including facts and documents that will be developed in further discovery as well as information contained in his expert reports. Consistent with the Order entered by Magistrate Judge Boal on August 22, 2017 Doe identifies the following facts while reserving the right to supplement this answer at a later date:

Mutual's long-term care insurance provides benefits in the event that someone is unable to perform activities of daily living or is cognitively impaired.

A right to benefits is triggered by impairment in two of six activities of daily living that include bathing, dressing, eating, continence, and transferring.

An insured under Mutual's long-term care benefits plan meets the criteria for receipt of benefits if they are unable to care for themselves with respect to those daily activities or cognitive impairment.

Mutual excludes people who use PrEP from long-term care insurance because of its belief that such individuals are at high risk of acquiring HIV.

Mutual believes it can screen out individuals at risk for HIV by using PrEP as a proxy for a rational screening process.

Lisa Ging testified that if an individual develops HIV they many need to utilize long-term care services.

Asked to compare the risk of claims for an HIV-negative person on PrEP with the risk of claims for a person who has been diagnosed with HIV disease, Lisa Ging testified that the individual on PrEP has been deemed to be at high risk of acquiring HIV, so if they acquire HIV the risk is the same.

In addition to Doe's experts to be named, current witnesses relevant to these facts are Lisa Ging and Michael Wilkins. Documents relevant to these facts include the exhibits to the Ging and Wilkins depositions, Mutual's Position Statement to the MCAD and its exhibits, Mutual's underwriting guide, and the denial letters from February and April 2015.

INTERROGATORY NO. 17:

State each and every fact upon which you rely in alleging, in paragraph 35, that the Defendant "discriminated against Plaintiff...in access to a place of public recommendation based on sexual orientation in violation of M.G.L.c. 272, § 98 and identify:

    (a) all persons having knowledge of the facts stated in response to this interrogatory; and

    (b) all documents pertaining to the facts stated in response to this interrogatory.

ANSWER: Objection. Interrogatory number 17 is overly broad and calls for expert testimony. Interrogatory number 17 also calls for information that is in the possession of the defendant and is the subject of discovery in this case. Further, interrogatory number 17 is a premature contention interrogatory that relates to fact or the application of law to fact that should properly be deferred to a later stage in this litigation pursuant to Fed. R. Civ. P. 33(a)(2).

SUPPLEMENTAL ANSWER:

In 2014 and 2015 Mutual sold long-term care insurance in Massachusetts.

Mutual sold long-term care insurance in Massachusetts through authorized agents and producers.

Mutual has marketing materials and a website that provide consumers with information about long-term care insurance and a way to connect with an agent or producer with the ultimate goal of selling long-term care insurance to consumers, including in Massachusetts.

Producers and agents must comply with Mutual's requirements and policies.

A producer or agent cannot market or sell Mutual's products without Mutual's permission and authorization.

Mutual accepted applications for long-term care insurance from people in Massachusetts in 2014.

The application for long-term care insurance is submitted to Mutual.

Mutual is responsible for determining whether to issue long-term care insurance to an applicant.

Mutual underwrites the long-term care insurance.

The denial of long-term care insurance to Doe was solely the decision of Mutual.

The application for long-term care insurance at issue in this case listed Massachusetts addresses.

JD Loden was required by Mutual to obtain a license to sell long-term care insurance in Massachusetts in order to act as an agent to offer Doe a long-term care policy issued by Mutual.

The February 9, 2015 denial letter was mailed to Doe in Massachusetts.

The April 22, 2015 denial letter was mailed to Doe in Massachusetts.

12

Mutual is licensed by the Commonwealth of Massachusetts to sell long-term care insurance in Massachusetts.

Witnesses relevant to these facts are Nicole DeVries, JD Loden, and Teresa Curreri. The documents include the long-term care insurance applications, denial letters, and documents produced by JD Loden and Teresa Curreri.

Respectfully submitted,

JOHN DOE
By his attorneys,

Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com

John Doe

Date:  September 13, 2017

## CERTIFICATE OF SERVICE

I, Bennett H. Klein, counsel for Plaintiff John Doe, hereby certify that on this 13 day of September, 2017, I served a copy of Plaintiff John Doe's Supplemental Responses to Defendant's First Set of Interrogatories upon Brooks R. Magratten, counsel for Defendant Mutual of Omaha Insurance Company, by overnight mail to his address, Pierce Atwood LLP, 72 Pine Street, Providence, RI 02902.

/s/ Bennett H. Klein
Bennett H. Klein