UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JOHN DOE,                                    )
                                             )
              Plaintiff,                      )
                                             )
       v.                                    )        C.A. No. 1:16-cv-11381-GAO
                                             )
MUTUAL OF OMAHA INSURANCE                    )
COMPANY,                                     )
                                             )
              Defendant.                      )
_____)

**PLAINTIFF JOHN DOE'S OPPOSITION TO DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S MOTION TO COMPEL PLAINTIFF'S COMPLIANCE WITH DISCOVERY ORDER REGARDING PLAINTIFF'S DEPOSITION**

Plaintiff John Doe ("Doe") objects to Defendant Mutual of Omaha Insurance Company's ("Mutual") motion to compel further deposition testimony on the basis that the deposition questions at issue: (1) go beyond the Court's limitation of "some inquiry" into the reasons that Doe takes Truvada; 2) inquire about information in medical records that Mutual did not obtain or have before it for purposes of evaluating Doe's application for long-term care insurance, and which in fact Mutual solicited from Doe's primary care physician under questionable circumstances long after its denial of Doe's application for insurance; 3) inquire into subject areas that Mutual did not ask about for purposes of evaluating Doe's application (e.g., what his doctor told him about medication compliance), contrary to this Court's delineation of the scope of  permissible discovery; and 4) implicate the attorney-client privilege because the answers involve disclosing not merely facts from third-parties, as Mutual posits, but rather communications in the context of rendering legal services in which Doe's counsel was providing legal analysis of how and why certain facts supported a legal argument for his case.

1

<u>**ARGUMENT**</u>

**I.    THE COURT SHOULD DENY MUTUAL'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY.**

**A.    The Court's Delineation of the Scope of Permissible Discovery.**

This case is a state law discrimination claim challenging Mutual's blanket exclusion from long-term care insurance of every applicant who is HIV-negative and takes the medication Truvada as pre-exposure prophylaxis (PrEP) to prevent HIV disease. Acting pursuant to that policy, Mutual denied Doe's application for long-term care insurance on February 9, 2015.

On August 22, 2017 the Court (Boal, M.J.) issued an Order ruling on various disputes about the relevant issues in the case and the scope of permissible discovery. Docket No. 61. Three components of the Court's Order are particularly pertinent to evaluating Mutual's motion.

First, the Court identified the "sole issue in this case [as] whether Mutual's blanket policy denying coverage to users of Truvada is discriminatory." Order, Docket No. 61 at 5. The Court further explained that "the reasonableness of that policy is likely to be determined with reference to expert testimony regarding the effectiveness of Truvada." *Id.*

Second, the Order twice noted Mutual's consistent position that it denies long-term care insurance to anyone who takes Truvada regardless of the reason. Order, Docket No. 61 at 3-4. *See also* Docket No. 57-1 at 7 (testimony of Mutual's Chief Underwriter, Lisa Ging, answering "correct" to the question: "So the reasons that [an applicant] took Truvada would be irrelevant to the underwriting process; is that correct?"). For that reason, the Court permitted only "some inquiry into the reasons Doe started taking Truvada[.]" Order, Docket No. 61 at 6-7 n.5.[1]

---

[1] It is illuminating that Mutual characterizes the discovery it is seeking as Doe's "beliefs about the efficacy of Truvada" and "his personal experience with this drug," neither of which mattered in the least to Mutual at the time it evaluated and denied Doe's application for insurance and which appear totally irrelevant based on the Court's understanding of the case. *See* Mutual's

Third, the Court limited discovery to the medical records that Mutual obtained and the subjects it inquired into as part of its underwriting of Doe's application on or before February 9, 2015. The Court stated that "Doe's health records (other than the records and materials that Mutual obtained and relied upon in evaluating Doe's application for LTC insurance) are irrelevant to this action." *Id.* at 6. Further, in the context of Mutual's argument for discovery about Doe's HIV test result information, the Court allowed Mutual to "inquire into this subject only to the extent that it did so and/or obtained such records for the purposes of evaluating Doe's application." *Id.* at 6-7 n.5.

**B.    Mutual's Questions Go Beyond "Some Inquiry" Into the Reasons that Doe Decided to Take Truvada.**

The Court allowed "some inquiry" into the reasons that Doe takes Truvada. When asked at his deposition "[w]hy did you start taking Truvada," Doe gave a thorough response. He testified that:

> I lived through the holocaust of watching my friends die, so it was an emotional decision. It's tough being in your prime and watching your friends melt away, and I thought what a horrible disease. I'm sorry for crying.
> ….
> To me it was an emotional decision. I was like damn, if this thing can do this, if it can prevent one person from probably getting HIV – sorry – … You know, I've walked through the streets of Boston and I see houses where my friends lived, and they're not there anymore and I watched them die, I watched them melt away, you know, just really a horrible thing to watch. When it happens by the dozens, when the first thing you read is the obituaries in the morning, and they're 40 years old; it's horrible. And I thought, damn, wow, what a great thing this company is doing. And I talked to my doctor, and he said that there were very few side effects, if any, and he said try it. I'm sorry.

---

Memorandum in Support of Motion to Compel Plaintiff's Compliance with Discovery Order Regarding Plaintiff's Deposition (hereinafter, "Mutual's Memo"), Docket No. 77 at 1.

Exhibit B to Mutual's Memo at 27-28. Mutual's counsel also asked Doe why he believed he was

low-risk for HIV but decided to take Truvada. In his answer, Doe disclosed his personal fear

about contact with bodily fluids in a gym. He testified:

> Q: You testified previously that you were at low risk for contracting HIV.
> What do you mean by that?
> A:  I am in a committed relationship, and as such my understanding is that
> my risk of contracting HIV is very low…
> Q: In your case, what was your risk of acquiring HIV?
> A: Well, I work in a gym, there's times when there's blood and vomit and
> fecal matter I might come in contact with.

*Id.* at 35-36.

Doe answered Mutual's questions about his perceived risk for HIV and the reasons he

decided to take Truvada. Taking into consideration the acknowledged irrelevance of the reasons

an applicant takes Truvada, Doe understands the Court's limited allowance of "some inquiry" to

mean that Mutual can elicit from Doe some basic background on that subject as context for the

allegation of discrimination at issue in this case. Mutual's inquiries went further. An inquiry into

Doe's communications with his primary care physician, Dr. Katz, goes beyond the basic reasons

he decided to take Truvada. *See id*. at 29 and 34 ("Tell me everything you said to Dr. Katz";

"Why was Dr. Katz prescribing Truvada on this day for prevention of HIV in your case?"). An

intrusion into the privacy of the patient-physician relationship is unwarranted and unduly

invasive when, as the Court recognized, Mutual had no interest in that type of information at the

time of evaluating Doe's application and disclaims its relevance today. The Court acknowledged

that individualized evidence about Doe (in the context of the prior discovery motions, his

compliance with the Truvada protocols) "does not shed any light on the reasonableness of

Mutual's blanket policy with respect to Truvada[.]" Docket No. 61 at 4-5. This Court should rule

that inquiring into patient-physician communications goes beyond the limited scope of inquiry allowed into why Doe started taking Truvada.

Similarly, Mutual's inquiry into who was aware that Doe was taking Truvada cannot be for any purpose other than to identify other witnesses who might testify about Doe's Truvada use. Exhibit B to Mutual's Memo at 32. In light of the limited inquiry allowed by the Court, identifying friends, family members, and others who know about Doe's Truvada use is simply to harass and cause discomfort. It would have been impossible for Doe to anticipate in his motion for protective order every question Mutual might ask at his deposition. But this inquiry is clearly inconsistent with the Court's delineation of the boundaries of discovery which focused on the information Mutual obtained and inquired about in the course of evaluating Doe's application.

### C. Mutual's Deposition Questions Were Based on Medical Records It Did Not Have at The Time of Doe's Application and Subjects It Did Not Inquire into When Underwriting Doe's Application.

The next answers Mutual seeks to compel are based on two medical records of Doe's primary care physician, Dr. Katz, marked as Exhibits 3 and 4 in the deposition. They are attached as Exhibit A to this memorandum. The use of these records and questions that are based on them are impermissible because they are not "records and materials that Mutual obtained and relied upon in evaluating Doe's application for LTC insurance[.]" Order, Docket No. 61 at 6.

In fact, Mutual solicited and obtained these records from Dr. Katz's office long after its February 9, 2015 denial and April 22, 2015 denial on appeal of Doe's application. Mutual obtained a release for Doe's medical records from Dr. Katz as part of its underwriting of Doe's application that was denied on February 9, 2015. The Court will note, however, that Doe Exhibit 3 has a fax date of September 24, 2015 and Doe Exhibit 4 has a fax date of October 5, 2015. Exhibit A. That is because Mutual solicited and obtained these records from Dr. Katz on

September 23, 2015 (Exhibit B, fourth page), obviously not for purposes of any legitimate underwriting of Doe's application, but for use in litigation. Mutual's request to Dr. Katz's office that contains the relevant communications is attached as Exhibit B to this memorandum.[2]  The note from Ms. Hawkins of Mutual to Candace in Dr. Katz's office (2nd page of fax) indicates that there were some missing records from Dr. Katz's earlier submission at the time of Doe's application and states that "we would like the office visit/telephone notes reflecting why and when this medication [Truvada] was prescribed." Exhibit B at 2. It gives the impression that it is a continuing part of the underwriting process and notes some urgency in receiving the records. *See* Exhibit B at 2 ("We need this information today please."). The witnesses at the Rule 30(b)(6) deposition of Mutual could not explain this document and, in lieu of further depositions on that subject, Mutual's counsel agreed to look into the matter. The urgency turned out to be this litigation. Mutual's counsel informed Doe's counsel: "Mutual of Omaha received a fax and documents from Dr. Katz's office (pp. 000001-7) in Sept/Oct 2015 *in response to the complaint filed in the MCAD*." Exhibit C hereto (emphasis added). Regardless of whether or not Mutual's request for these documents was proper, the records were not part of its consideration of Doe's application and are outside the bounds of permissible discovery. Questions about these documents should not be permitted.[3]

---

[2] Candace, referenced on the cover page, works in Dr. Katz's office. Jerrian Hawkins works for Mutual. The cover page indicates that Ms. Hawkins faxed the document to Candace who returned it to Mutual with the requested documents and crossed out and reversed the "to" and "from'.

[3] The note at the seventh page of Exhibit B (WF-DOE-000007) is dated October 2, 2015 and labeled "Addendum." It is likely that this document was produced by Dr. Katz at that later date separately in response to Mutual's request. In any event, the reasons that these records do not seem to have been submitted to Mutual in February 2015 cannot be of consequence in light of Mutual's policy that it denies coverage to any Truvada user without further inquiry. If the "office visit/telephone notes reflecting why and when this medication was prescribed" (Exhibit B, at 2)

Even if Mutual had obtained and relied upon these records in February 2015, Mutual's questions about "compliance, risks … and package literature/instruction/side effects" noted in the records are outside the boundaries of discovery established by the Court because Mutual did not inquire about these subjects when evaluating Doe's application. To the contrary, it disclaims that these subjects are relevant to its underwriting. This Court should deny Mutual's motion to compel responses to its questions about these documents and the subjects referenced in them.

### D.    Mutual's Questions Are Objectionable Because They Seek Privileged Attorney-Client Communications.

The final group of questions at issue in Mutual's motion involves inquiries into Doe's "good faith basis in law or fact" for allegations in the Complaint that Mutual's discrimination emanated from bias against gay men and stereotypes and false beliefs about HIV transmission. *See* Mutual Motion at 3-4, 7-9. Doe testified that any information he had was based on communications from his attorney who instructed him not to answer the questions on that basis.

Mutual's statement of the law of attorney-client privilege is incomplete. It states that there is no privilege when an attorney is simply reporting to a client facts learned from a third-party. That is not the case, however, when the factual information is included in "legal analysis … made in order to render legal advice or services to the client." *See In re Lidoderm Antitrust Litig.*, 2015 U.S. Dist. LEXIS 159601, *39-40 (N.D. Cal. 2015) (quoting *ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co.,* 1998 U.S. Dist. LEXIS 8808, *9 (S.D.N.Y. 1998)) ("recognizing that an 'attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client,' and the 'critical inquiry is

---

were relevant to Mutual's underwriting, it clearly would have requested the records in February 2015, not later, solely for purposes of litigation.

whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client.'"). This is distinct from circumstances where the conveyance of facts is not privileged either because a lawyer is being used as a "mere conduit in an attempt to cloak otherwise non-confidential information with the attorney-client privilege," *Lidoderm*, 2015 U.S. Dist. Lexis at *37 (and cases cited therein), or "when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379 (1991).

The ultimate criterion for a privileged communication is that it is made from lawyer to client "in order to render legal advice or services to the client." *ECDC*, 1998 U.S. Dist. LEXIS at *26 (quoting *Spectrum*, 78 N.Y.2d at 815). Here, information conveyed to Doe from his counsel about the facts supporting his claim that Mutual discriminated against him were, and could only have been, for purposes of rendering legal services and analysis. There is no other conceivable context for the conveyance of such information. There is no clearer example of a privileged attorney-client communication than a lawyer explaining to a client the basis of a legal claim for a lawsuit.

Further, Magistrate Judge Collings has explained, though in a slightly different context, the problematic nature of deposition questions that seek to elicit from a plaintiff the bases for allegations in complaints. Judge Collings reasoned:

> [I]t is not clear that a 30(b)(6) deposition is the best method for obtaining the information. Rather, it can be argued that contention interrogatories are a better vehicle. The reason is simple – complaints and answers, including affirmative defenses, are drafted by attorneys, and asking a 30(b)(6) witness, usually a non-lawyer, to answer this type of question … makes it extremely difficult to distinguish between "facts" (not protected) and the issue of why those facts have legal consequences which usually has a work-product (lawyer's mental impressions) dimension. This problem is more acute since it is most likely that the lawyer was the source of the information which was provided to the 30(b)(6) witness[.]

8

*Fid. Mgmt. & Research Co. v. Actuate Corp.,* 275 F.R.D. 63, 64 (D. Mass. 2011). *See also Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989) ("depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes."); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 516 (D. Conn. 1976) ("when a deponent answered a question about his reasons by saying that he was only relying on his attorney's legal advice, that answer is a sufficient response.").[4]

In this case Doe has answered interrogatories that seek exactly the same information Mutual is asking of the plaintiff in a deposition. Even if Doe could answer the questions without implicating attorney-client privileged communications and work product, which he cannot, there will be little gained by forcing him to resume his deposition. The questions are essentially legal facts that are in the province of a lawyer's knowledge to develop as part of proving a client's case. The disputed questions do not elicit the type of information that a Plaintiff or a lawyer's client is expected to know.

## CONCLUSION

For the foregoing reasons, Plaintiff John Doe requests that the Court deny Defendant Mutual of Omaha Insurance Company's Motion to Compel Plaintiff's Compliance with Discovery Order Regarding Plaintiff's Deposition.

---

[4] *Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980), for example, cited at Mutual's Memo at 8, is inapposite because it was "a FOIA case where the court's concern was allowing government agencies to shield facts by passing them through agency attorneys." *Lidoderm*, 2015 U.S. Dist. LEXIS at *4 n.8.

Respectfully submitted,

JOHN DOE
By his attorneys,


/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

/s/ John P. Ward
John P. Ward
BBO # 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
johnpward@gmail.com

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on October 13, 2017, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

Brooks R. Magratten, BBO# 650393
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

Mark A. Pogue, BBO# 550807
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
mpogue@pierceatwood.com

Katharine E. Kohn, BBO# 675362
Pierce Atwood LLP
72 Pine Street, 5th Floor
Providence, RI 02903
(401) 490-3422
kkohm@pierceatwood.com

Nicole Kinsely, BBO # 682528
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1185
nkinsley@foleyhoag.com

/s/ Bennett H. Klein
Bennett H. Klein
BBO # 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

# Exhibit A

Patient: ███████████████████

Status: Signed 11/10/2014 17:30
Visit Date:11/10/2014

Author: Electronically Signed by Ronald M. Katz, M.D.

Reviewed complaince, risks. Please read package literature/instruction/side effects.

F/u here 3 months. HIV test then.

Precautions discussed in detail.



1

OCT-05-2015   09:43                                                    P.004

Patient: ████████████████████
Author: Electronically Signed by Ronald M. Katz, M.D.

Status: Signed 10/02/2015 16:35
Visit Date:11/10/2014

*ADDENDUM*

TRUVADA WRITTEN TODAY FOR ITS INDICATION:

PREVENTION OF HIV.

WE REVIEWED SIDE EFFECTS AND FOLLOW UP IN DETAIL.



1

# Exhibit B

**MUTUAL** *of* **OMAHA INSURANCE COMPANY**
Mutual of Omaha Plaza
Omaha, NE 68175
mutualofomaha.com





From **To**:                         Candace
      **Subject:**
      **Date:**            09/25/2015 07:47:49 AM
      **Pages:**           2, including cover page

To:   *Note*    *Attn.*  Jerrian Hawkins
      **E-mail:**          Ph: 800-733-0740
      **Phone:**
      **Fax:**
      **Company:**         Mutual of Omaha
      **Address:**         Mutual of Omaha Plaza
                           Omaha, Nebraska 68175

          FAX: 402-739-8245 , Call when sending

This communication and any attachments transmitted with it are confidential and are solely for the use of the addressee. It may contain material that is legally privileged, proprietary or subject to copyright belonging to Mutual of Omaha Insurance Company and its affiliates, and it may be subject to protection under federal or state law. If you are not the intended recipient, you are notified that any use of this material is strictly prohibited. If you received this transmission in error, please contact the sender immediately and delete the material from your system. Mutual of Omaha Insurance Company may archive electronic documents, which may be accessed by authorized persons and may be produced to other parties, including public authorities, in compliance with applicable laws.

*See attached*
*3 pages total (1) page note*

SEP-24-2016  14:18
Page  2 of 2
P.002

Good morning Candace. Per our conversation yesterday, I am faxing over a note describing the information we need from the doctor. We need this information today please.

A request for these records was already sent and we believe an office visit note was missing from the information we have received.
According to the records we received from your office, a prescription for Truvada was started 11/10/14 and we would like the office visit/telephone notes reflecting why and when this medication was prescribed.

Thank you for your help. I will be calling today to confirm you have received this fax and to confirm we will be receiving this information today.

WF-DOE-000002

Patient: ██████████████

Status: Signed 11/10/2014 17:30
Visit Date:11/10/2014

Author: Electronically Signed by Ronald M. Katz, M.D.

Reviewed complaince, risks. Please read package literature/instruction/side effects.

F/u here 3 months. HIV test then.

Precautions discussed in detail.

1

MUTUAL *of* OMAHA INSURANCE COMPANY
Mutual of Omaha Plaza
Omaha, NE 68175
mutualofomaha.com

# *Fax*



**MUTUAL** *of* **OMAHA**

| | |
|---|---|
| From/**To:** | Candace |
| **Subject:** | ▆▆▆▆ |
| **Date:** | ~~09/23/2015 07:47:40 AM~~ |
| **Pages:** | 2, including cover page |
| | |
| To: ~~**Note:**~~ Attn. Jerrian Hawkins | |
| **E-mail:** | Ph: 800-733-0740 |
| **Phone:** | |
| **Fax:** | |
| **Company:** | Mutual of Omaha |
| **Address:** | Mutual of Omaha Plaza |
| | Omaha, Nebraska 68175 |

FAX: 402-739-8245 , *Call when sending*

This communication and any attachments transmitted with it are confidential and are solely for the use of the addressee. It may contain material that is legally privileged, proprietary or subject to copyright belonging to Mutual of Omaha Insurance Company and its affiliates, and it may be subject to protection under federal or state law. If you are not the intended recipient, you are notified that any use of this material is strictly prohibited. If you received this transmission in error, please contact the sender immediately and delete the material from your system. Mutual of Omaha Insurance Company may archive electronic documents, which may be accessed by authorized persons and may be produced to other parties, including public authorities, in compliance with applicable laws.

*See attached*

*3 pages total (1) page note*

*✻ Addendum Additional page*

*10/6/15 - Candace*

*④ total*

WF-DOE-000004

Good morning Candace. Per our conversation yesterday, I am faxing over a note describing the information we need from the doctor. We need this information today please.

A request for these records was already sent and we believe an office visit note was missing from the information we have received.
According to the records we received from your office, a prescription for Truvada was started 11/10/14 and we would like ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thank you for your help. I will be calling today to confirm you have received this fax and to confirm we will be receiving this information today.

WF-DOE-000005

P.003

Patient: ███████████████████                        Status: Signed 11/10/2014 17:30
Author: Electronically Signed by Ronald M. Katz, M.D.              Visit Date:11/10/2014

Reviewed complaince, risks. Please read package literature/instruction/side effects.

F/u here 3 months. HIV test then.

Precautions discussed in detail.

1

WF-DOE-000006

Patient: ████████████████████

Author: Electronically Signed by Ronald M. Katz, M.D.

Status: Signed 10/02/2015 16:35

Visit Date: 11/10/2014

**ADDENDUM**

TRUVADA WRITTEN TODAY FOR ITS INDICATION:

PREVENTION OF HIV.

WE REVIEWED SIDE EFFECTS AND FOLLOW UP IN DETAIL.

1

WF-DOE-000007

# Exhibit C

**Bennett Klein**

| | |
|---|---|
| **From:** | Brooks R. Magratten <bmagratten@PierceAtwood.com> |
| **Sent:** | Monday, July 31, 2017 5:25 PM |
| **To:** | Bennett Klein |
| **Subject:** | Doe ▮▮▮▮ v. Mutual of Omaha |

Ben:  This is to respond to questions you raised during the depositions in Omaha:

-Yes, it is possible for a Mutual of Omaha agent in one state to sell LTC coverage to a customer physically located in a different state.

-Mutual of Omaha received a fax and documents from Dr. Katz's office ( pp. 000001 – 7) in Sept / Oct 2015 in response to the complaint filed in the MCAD.

-The Underwriting Guide numbered 000222-280 was released on December 8, 2014.
-The Underwriting Guide numbered 000281-339 was released on February 14, 2014.
-The Underwriting Guide numbered 000160-221 was released on July 7, 2015.
-The Underwriting Guide numbered 100505 was released on March 25, 2016
-The Underwriting Guide numbered 172559 was released on December 2, 2016.

**Brooks R. Magratten**
PIERCE ATWOOD LLP

72 Pine Street
Providence, RI 02903

**PH** 401.490.3422
**FAX** 401.588.5166
**CELL** 401.965.2506

bmagratten@PierceAtwood.com    **BIO** ›

This e-mail was sent from Pierce Atwood. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it please delete it and notify us as soon as possible.