UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-11381-GAO |
| | ) | |
| MUTUAL OF OMAHA INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S COMPLIANCE
WITH DISCOVERY ORDER REGARDING PLAINTIFF'S DEPOSITION
AND JOINT MOTION OF PLANTIFF AND HIS SPOUSE TO QUASH DEPOSITION
SUBPOENA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER
[Docket Nos. 63, 76]

February 1, 2018

Boal, M.J.

In this action, plaintiff John Doe alleges that defendant Mutual of Omaha Insurance Company ("Mutual") discriminated against him on the basis of his sexual orientation and a perceived disability when it denied his application for long-term care ("LTC") insurance coverage in violation of M.G.L. c. 272, § 98. Mutual has moved to compel Doe to provide deposition testimony on certain topics. Docket No. 76.[1] Doe and his spouse have jointly moved to quash a deposition subpoena directed to Doe's spouse. Docket No. 63. The Court heard oral argument on January 30, 2018. For the following reasons, the Court grants in part and denies in part Mutual's motion to compel and grants in part and denies in part Doe and his spouse's

---

[1] On December 20, 2017, the District Court referred this case to the undersigned for full pretrial management. Docket No. 89.

motion to quash or, in the alternative, for a protective order.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On or about November 1, 2014, Doe applied to Mutual for LTC. Amended Complaint ¶ 6. Mutual denied Doe's application initially on February 9, 2015, id. at ¶ 9, and on appeal on April 22, 2015. Id. at ¶ 21. Doe alleges that Mutual denied his LTC insurance application solely because he takes the medication Truvada, which is approved by the Food and Drug Administration ("FDA") to prevent transmission of HIV infection in HIV-negative individuals. Id. at ¶ 1. Mutual has a blanket policy of denying coverage to anyone who takes Truvada, regardless of the reason for the prescription. Id. at ¶ 21. Doe alleges that Mutual's rejection of Doe's application was an unfair and discriminatory classification of risk based on negative attitudes and false beliefs that gay male sexuality is inherently risky and unhealthy, and based on "myths, fears, and unscientific beliefs" about the transmission of HIV. Id. at ¶¶ 1, 25-29.

Doe seeks a permanent injunction (1) enjoining Mutual from categorically excluding from its LTC insurance individuals, including Doe, who take Truvada as prevention for HIV; and (2) ordering that Mutual provide Doe with the LTC that he applied for, without excluding him or treating him differently based on his use of the medication Truvada as pre-exposure prophylaxis, and with the same terms and rates he would have received had his original application been accepted. Complaint, Requests for Relief.

The parties filed competing motions regarding the discoverability of Doe's medical records and treatment from December 28, 2009 to the present (beyond records or materials that Mutual obtained and relied upon in evaluating Doe's application for LTC insurance). Docket Nos. 29, 32, 38, and 40. Among other things, Mutual sought discovery regarding Doe's reasons for using Truvada and whether Doe complied with Truvada protocols. See, e.g., Docket No. 42

at 2-3.

This Court found that Doe's health records (other than the records and materials that Mutual obtained and relied upon in evaluating Doe's application for LTC insurance) are irrelevant to this action.  Docket No. 61 at 6.  This Court specifically prohibited discovery regarding HIV testing unless Mutual had inquired into this subject and/or obtained such records for the purposes of evaluating Doe's application.  Id. at 6-7, n. 5.  In so doing, the Court noted that Doe does not challenge Mutual's decision to deny coverage based on Truvada use as applied to him.  Id. at 4.  Rather, Doe argues that Mutual's blanket policy is discriminatory.  Id.

The Court, however, allowed "some inquiry into the reasons why Doe started taking Truvada."  Id. at 7, n. 5.  The Court allowed such inquiry only as background on that subject to give some context for the allegations in this case.

On September 7, 2017, Mutual took Doe's deposition.  Docket No. 77 at 2.  Mutual maintains that, on the instruction of his attorney, Doe improperly refused to answer questions about why he started taking Truvada, facts about the efficacy and side effects of Truvada, and facts underlying Doe's claims against Mutual.  Docket No. 77 at 2.  Mutual has filed a motion to compel Doe to appear at a continued deposition to answer questions about these topics.  Docket No. 76.  Doe opposes the motion.  Docket No. 84.[2]

Mutual has also issued a subpoena for the deposition of Doe's spouse.  Docket No. 64 at 2 and Ex. A thereto.  Doe and his spouse request that the Court quash the subpoena.  Docket No. 64.  In the alternative, they request that the Court enter a protective order limiting the scope of the deposition to the logistics of the LTC insurance application and specifically prohibit Mutual from questioning Doe's spouse about any aspect of Doe's use of Truvada, the couple's

---

[2] Mutual has filed a reply.  Docket No. 92.

relationship, or Doe's health.  Id.  Mutual opposes the motion.  Docket No. 69.

II.     ANALYSIS

    A.     Questions About Doe's Truvada's Use

During Doe's deposition, Mutual's counsel asked him why did he start taking Truvada. Doe gave the following answer:

> It's -- you know I lived through the holocaust -- …
>
> I lived through the holocaust of watching my friends die, so it was an emotional decision.  It's tough being in your prime and watching your friends melt away, and I thought what a horrible disease.  I'm sorry for crying. . . . To me it was an emotional decision.  I was like damn, if this thing can do this, if it can prevent one person from probably getting HIV -- sorry -- . . .
>
> Then I'm there.  I read about its efficacy, which is amazing, and I thought even though I'm low risk, why not try it, just to make sure.
>
> You know, I've walked through the streets of Boston and I see houses where my friends lived, and they're not there anymore and I watched them die, I watched them melt away, you know, really a horrible thing to watch.  When it happens by the dozens, when the first thing you read is the obituaries in the morning, and they're 40 years old; it's horrible.  And I thought, damn, wow, what a great thing this company is doing.  And I talked to my doctor, and he said that there were very few side effects, if any, and he said, try it. I'm sorry.

Docket No. 77-2 at 9.  Doe further testified that he was referring to Dr. Katz when he said he talked to his doctor.  Id.  In addition, he testified that he did not understand that Truvada was a medication for individuals who are at high risk of contracting HIV.  Id.  On the instruction of his attorney, however, Doe declined to answer questions regarding everything he said to Dr. Katz, everything he recalled Dr. Katz told him about Truvada, or who else was aware that Doe was taking Truvada from November 2014 to February 2015.  Id. at 10.

The Court has already found that individualized evidence about Doe's use of Truvada is not relevant in this case.  Plaintiff is correct that the Court's allowance of some inquiry into the

4

subject of Doe's reasons for taking Truvada was intended to provide some background on that subject as context for Doe's allegations in this case. Doe did answer Mutual's question regarding his reasons for taking Truvada. After review of the transcript of the deposition, the Court finds that no further inquiry is warranted.

      B.      <u>Questions Regarding HIV Testing</u>

To the extent that Mutual seeks to compel testimony regarding two medical records of Doe's primary care physician, Dr. Katz, marked as Exhibits 3 and 4 during Doe's deposition, that request is denied. Doe represents, and Mutual does not dispute, that these documents were not obtained for purposes of Doe's LTC insurance application but rather after Doe had filed a complaint with the Massachusetts Commission Against Discrimination. Accordingly, these documents themselves would be outside the bounds of permissible discovery in this case, as previously ordered by this Court, and Mutual has not demonstrated sufficiently why questions about the documents would be.

      C.      <u>Questions Regarding The Facts Underlying Doe's Claims</u>

During Doe's deposition, Mutual asked several questions regarding the basis for Doe's allegations in the complaint. <u>See</u>, <u>e.g.</u>, Docket No. 77-2 at 14-15. Doe testified that any information he had was based on communications from his attorney who instructed him not answer those questions based on the attorney-client privilege and work product doctrines. <u>See id.</u> The Court finds that Doe's refusal to answer questions regarding the factual basis for his allegations in the complaint was improper.

"The attorney-client privilege protects communications made in confidence by a client to his attorney." <u>In re Grand Jury Subpoena</u>, 274 F.3d 563, 571 (1st Cir. 2001) (citation omitted). The work product doctrine "protects against disclosure of materials that a party, her attorney, or

her representative prepares in anticipation of litigation." Bryan Corp. v. Chemwerth, Inc., 296 F.R.D. 31, 37 (D. Mass. 2013) (citation omitted).  A party may not, however, withhold relevant facts from disclosure simply because they were communicated to, or learned from, the party's attorney.  See, e.g., Henry v. Champlain Enter., Inc., 212 F.R.D. 73, 90-91 (N.D.N.Y. 2003); Kansas Wastewater, Inc. v. Alliant Techsystems, Inc., 217 F.R.D. 525, 528-529 (D. Kan. 2003); Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 278-279 (D. Neb. 1989).  Thus, while Mutual may not discover communications between Doe and his attorney or documents prepared by Doe's attorney, such as witness interview summaries, the underlying facts contained therein are discoverable in response to a properly worded interrogatory or deposition question.  See, e.g., Protective Nat. Ins. Co. of Omaha, 137 F.R.D. at 279-280.

    Here, Mutual was entitled to seek the factual basis for Doe's allegations in the complaint (including those learned after the filing of the complaint), regardless of whether Doe learned those facts from his attorney.  However, after review of the transcript of the deposition, the Court finds that the form of the questions was not always proper.  For example, it was proper for Mutual to ask Doe what facts support his contention that Mutual's decision to deny his application was based on stereotypes that gay male sexuality is inherently risky.  Docket No. 77-2 at 15.  It was not proper for Mutual to ask the question "[i]n your discussions with your attorney does your attorney make you aware of any facts upon which you have relied in making this claim?"  Id.  The first question seeks facts.  The follow up question starts to venture into the communications between Doe and his attorney.

    Accordingly, the Court orders Doe to appear for his continued deposition, within 30 days of the date of this order, where he will be required to answer questions regarding the factual basis for his claims in this case.  Any such questioning must be limited to the factual, not legal, basis

for Doe's claims. Mutual is directed, when formulating questions to Doe, to avoid asking questions which would tend to elicit information about the communications between Doe and his counsel, counsel's advice to Doe, or counsel's view as to the significance or lack thereof of particular facts, or any other matter which may reveal counsel's mental impressions concerning this case.

    D.    <u>Deposition Of Doe's Spouse</u>

Mutual seeks to take the deposition of Doe's spouse in order to inquire both about the application process and about Doe's reasons for taking Truvada. For the same reasons stated above, the Court will not allow inquiry of Doe's reasons for taking Truvada from Doe's spouse. Any questioning regarding the couple's relationship or Doe's health shall be limited to matters that were contained in the LTC insurance application or in documents upon which Mutual relied in evaluating Doe's application.

According to Mutual, Doe's spouse initiated the LTC insurance application process and was the primary contact during that process. Therefore, the Court will allow Mutual to depose him about the application process.

III.    <u>ORDER</u>

For the foregoing reasons, the Court grants in part and denies in part Mutual's motion to compel (Docket No. 76) and grants in part and denies in part Doe and his spouse's joint motion to quash or, in the alternative, for a protective order (Docket No. 63).

                                      /s/ Jennifer C. Boal
                                      JENNIFER C. BOAL
                                      UNITED STATES MAGISTRATE JUDGE