UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
JOHN DOE,                    )
    Plaintiff             )
                             )
v.                           )
                             )   No. 1:16-cv-11381-GAO
MUTUAL OF OMAHA              )
INSURANCE COMPANY,           )
    Defendant             )
_____)

**MEMORANDUM IN SUPPORT OF
MUTUAL OF OMAHA INSURANCE COMPANY'S
MOTION IN LIMINE TO STRIKE
DR. KENNETH MAYER'S REPORT AND OPINIONS IN PART**

Defendant Mutual of Omaha Insurance Company ("Mutual") moves this Court in limine for an order striking, in whole or part, 17 paragraphs from Kenneth Mayer, M.D.'s ("Dr. Mayer") expert report. (Exhibit A – Mayer Report); (Exhibit C - Mayer Report with proposed redactions). In each of these 16 paragraphs, Dr. Mayer relies on information that came into existence after February 9, 2015. This Court already has determined that post-February 9, 2015 information is not relevant to Plaintiff's claims. [Doc. #61]. Therefore these paragraphs must be stricken from Dr. Mayer's report and his opinions corresponding to these paragraphs must be excluded from this case.

## INTRODUCTION

Plaintiff alleges that Mutual of Omaha discriminated against him when it denied his application for long term care ("LTC") coverage because he was taking Truvada as part of a pre-exposure prophylaxis ("PrEP") protocol to avoid contracting an HIV infection. Mutual of Omaha rejects Plaintiff's unsupported contention of discrimination and counters that Plaintiff's application was denied per reasonable underwriting guidelines.

{W6690260.2}                              1

Mutual denied Plaintiff's application for LTC coverage on February 9, 2015. Accordingly, this Court determined that any medical or health information about Plaintiff after this February date was not relevant to Plaintiff's claims of discrimination. [Doc. #61] The Court reasoned that Mutual necessarily could not have considered any post-February 9, 2015 information when denying Plaintiff's application and therefore investigation or reliance on post-February 2015 information was off-limits. [Doc. #61] The Court summarized that "the sole issue in this case is whether Mutual's blanket policy denying coverage to users of Truvada is discriminatory" and also noted that "the reasonableness of that policy is likely to be determined with reference to expert testimony regarding the effectiveness of Truvada." [Doc. #61] at p. 5.

Plaintiff designated Dr. Mayer as his expert witness to opine that PrEP is close to 100% effective at preventing HIV and that patients generally adhere to the PrEP protocol as is required to achieve this level of efficacy. Plaintiff produced Dr. Mayer's written report on December 4, 2017. (Exhibit A.) Mutual then deposed Dr. Mayer on January 28, 2018. (Exhibit B, Mayer Dep. Excerpts.) Dr. Mayer is likely qualified as an expert in the field of HIV research, (Exhibit A at ¶¶ 1 – 4). To support his opinions, however, Dr. Mayer relied principally on medical studies and research published after February 9, 2015. (Exhibit A).

For example, Dr. Mayer focused on several double-blind "intention-to-treat" studies of PrEP, which he viewed as "important when it is not established that a new intervention [here, Truvada] is efficacious." (Exhibit A at ¶ 22). Of those studies he cited most were dated after February 2015. (Exhibit A at ¶¶ 24, 25, 26, 28).

Likewise, all of the "real-world setting" studies of PrEP cited by Dr. Mayer were published after February 2015. (Exhibit A at ¶¶ 27, 29, 31). Dr. Mayer noted that "[a]dherence to PrEP is strongly correlated to the level of HIV protection" and that these "real world" or "as-

treated" studies of Truvada "best [ ] assess[ ]" "how well adherent individuals do [with the regime]." (Exhibit A at ¶¶ 22, 31).  For these individuals, Dr. Mayer opined that "[s]cientific research and data demonstrate that PrEP reduces the risk of HIV transmission among gay and bisexual men and trans gender women by close to 100% when taken daily." (Exhibit A at ¶ 19.) To support this statement, Dr. Mayer relied on "pro hac analyses," "open-label studies," and "demonstration projects." (Exhibit A at ¶ 19).  Again almost all were presented after February 2015. (Exhibit B at 21:16-33:17; 34:12-35:6 (explaining that all four "open label studies" were after 2015 and of the two "demonstration projects" one was from 2016)); (Exhibit A at sources).

Whether patients actually comply with the PrEP protocol by taking the daily medication and getting regular testing, Dr. Mayer acknowledged that there are no studies measuring adherence to those "discrete metrics."  (Exhibit B at 41:17-42:18.)   He explained "that's why the Kaiser study is so important because there is a huge period of follow-up from a large number of individuals with no HIV seroconversions [i]n a total real world setting, it was not a clinical trial." (Exhibit B at 42:8-42:12) (emphasis added).  The papers from this "Kaiser study" were published after February 2015. (Exhibit A at ¶ 29 & sources); (Exhibit B at 20:14-20:21.)

For his opinion that "PrEP is more effective at preventing HIV than condoms," Dr. Mayer again relied upon "studies of the real-world." (Exhibit A at ¶ 32).  Mayer noted that he reviewed a "compendium of studies" from the CDC's current website within the "last two months" of his deposition date to reach his conclusion about "condom efficacy" as compared to PrEP.  (Exhibit B at 42:19-43:16.)

And to opine that "[t]he studies of PrEP demonstrate that Truvada is a medication that is well tolerated by patients with side effects that are modest, easily monitored and managed and

{W6690260.2}                                3

reversible," (Exhibit A at ¶ 33), Dr. Mayer relied on "all the studies" he cited, which were primarily published after February 9, 2015. (Exhibit B at 33:23-34:9.)

Dr. Mayer also offered the conclusion that gay men are predominately Truvada users, again citing only post-2015 studies (Exhibit A at ¶¶ 36, 37 & sources); (Exhibit B at 47:7-47:18) Even his explanation of the "background on HIV Disease" cited repeatedly to post-2015 statistics and studies. (Exhibit A at ¶¶ 11, 12, 15, 14 16); (Exhibit B at 13:21-14:15 (acknowledging ¶ 11 is based on a December 4, 2015 study); (Exhibit B at 14:16-24, 16:3-17:18) (acknowledging ¶ 14 is based, in part, on studies published in 2016 and 2017).

In sum, paragraphs 11, 12, 14, 15 (in part)[*], 16, 19, 24 (in part)[*], 27, 28, 29, 30, 31, 32, 33, 36, 37, and 39 of Dr. Mayer's report all rely on research that came after that February 9, 2015 date.

## ARGUMENT

Expert testimony is admissible only if it is both relevant and reliable. Fed. R. Evid. 702 (expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data . . ."); Chapman v. Bernard's Inc., 167 F. Supp. 2d 406, 420 (D. Mass. 2001). Courts must preliminarily evaluate "both the reliability and the relevance of the proffered expert testimony" by considering, among other things, "whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." Allen v. Martin Surfacing, 263 F.R.D. 47, 52 (D. Mass. 2009).

Here, this Court already made a key relevancy determination: any medical information developed after February 9, 2015 is not relevant to the case. [Doc. #61]. This Court's determination served as the foundation for this Court denying Mutual's discovery as to

---

[*] Mutual seeks to exclude those portions of ¶¶ 15 and 24 that are based on sources post-dating February 9, 2015.

{W6690260.2}                                    4

Plaintiff's medical history after February 9, 2015. The same rule must be applied to the Plaintiff and his expert. Here, because "the sole issue in this case is whether Mutual's blanket policy denying coverage to users of Truvada is discriminatory . . . the reasonableness of that policy is likely to be determined with reference to expert testimony regarding the effectiveness of Truvada." [Doc. #61] at p. 5. Of course, the reasonableness of Mutual's underwriting policy must be evaluated upon the body of knowledge that existed as of February 9, 2015. Any further research and studies that came after that date or the opinions and conclusions drawn from those later publications have no bearing on whether Mutual's policy was reasonable. This Court cannot conclude that Mutual's underwriting guidelines were unreasonable based on information not available to Mutual at the relevant time. See Mathews v. Novartis Pharm. Corp., No. 3:12-CV-314, 2013 WL 5780415, at *14 (S.D. Ohio Oct. 25, 2013) (holding that "because the 'Corso study' on which the [experts] rely was not published until 2007, after [Plaintiff] ceased his [ ] treatments, that study cannot support an opinion that [Plaintiff] should have been on a different dosing schedule . . . [and accordingly Plaintiff's] expert witnesses will not be permitted to testify concerning these topics"); see also In re Sarno, 463 B.R. 163, 167 (Bankr. D. Mass. 2011) (holding that the expert appraiser testimony as to the value of the property in June 2011 does not assist in establishing the value of the property on the petition date, which was three weeks earlier); Kent v. Robert Bosch Tool Corp, 2009 WL 5492128, at *2 (D. Mass. Jan. 23, 2009) (in the context of a motion to "preclude evidence obtained by testing saws . . . manufactured after the date of sale of the subject saws," the moving party acknowledged and the court credited that "if this motion is allowed, certain opinions of [the moving party's] own expert based on testing of [those] saws should not be admitted as well"); Hill v. Colvin, No. 1:14-CV-00353-JLT, 2015 WL 2358281, at *10 (E.D. Cal. May 15, 2015) (holding that "the limitations imposed by the

strokes which occurred months after the date Plaintiff was last insured were not relevant for purposes of determining whether he was disabled on the date last insured"); Swans v. City of Lansing, 65 F. Supp. 2d 625, 645 (W.D. Mich. 1998) (holding that "[t]he study would also have been misleading on the issue of gross negligence because the study, published in 1997, did not give the officers in 1996 a reason to believe that their conduct was safe [and] [a]ccordingly, the evidence was properly excluded").

**WHEREFORE**, Defendant Mutual of Omaha Insurance Company respectfully requests this Court to:

1. strike paragraphs 11, 12, 14, 15 (in part)[*], 16, 19, 24 (in part)[*], 27, 28, 29, 30, 31, 32, 33, 36, 37, and 39 from Dr. Mayer's expert report (see Exhibit C for redactions);

2. preclude Dr. Mayer from testifying at trial about the above paragraphs and the opinions therein; and

3. preclude Plaintiff from citing to or relying on the above paragraphs and the opinions therein in any pleading.

    Respectfully submitted,
MUTUAL OF OMAHA
INSURANCE COMPANY,
By Its Attorneys,

May 17, 2018

*/s/   Brooks R. Magratten*
Brooks R. Magratten, Esq. BBO#650393
Katharine E. Kohm, Esq. BBO#675362
PIERCE ATWOOD LLP
One Financial Plaza, 26th Floor
Providence, RI 02903
(401) 490-3422
bmagratten@pierceatwood.com

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on May 17, 2018, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

*Counsel for Plaintiff*
Bennett H. Klein, BBO# 550702
GLBTQ Legal Advocates & Defenders
30 Winter St. Suite 800
Boston, MA 02108
617-426-1350
bklein@glad.org

John P. Ward, BBO# 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
415-255-4996
johnpward@gmail.com

*Counsel for Doe's Spouse*
Nicole Kinsley
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210-2600
617-832-1185
nkinsley@foleyhoag.com


/s/      Katharine E. Kohm