# Exhibit I

# In The Matter Of:

*John Doe v.*
*Mutual of Omaha Insurance Company*

*March 14, 2018*

68 Commercial Wharf • Boston, MA 02110
888.825.3376 - 617.399.0130
*Global Coverage*
court-reporting.com



Original File 3-14-18.txt
**Min-U-Script® with Word Index**

Page 1

```
 1           UNITED STATES DISTRICT COURT
 2             DISTRICT OF MASSACHUSETTS
 3   JOHN DOE,
 4        Plaintiff,
 5     vs.              CASE NO. 1:16-cv-11381-GAO
 6   MUTUAL OF OMAHA
 7   INSURANCE COMPANY,
 8        Defendant.
 9   ------------------------------x
10
11                  DEPOSITION OF
12               ████████████████
13           Wednesday, March 14, 2018
14                   9:04 a.m.
15              Pierce Atwood, LLP
16              100 Summer Street
17           Boston, Massachusetts 02110
18
19             Laurie K. Langer, RPR
20
21
22
23
24
```

Page 2

```
 1              APPEARANCES
 2
 3   ON BEHALF OF THE PLAINTIFF(s):
 4     BY:  Bennett H. Klein, Esq.
 5          GLBTQ Legal Advocates & Defenders
 6          18 Tremont Street
 7          9th Floor
 8          Boston, Massachusetts 02108
 9          (617) 426-1350
10          bklein@glad.org
11
12   ON BEHALF OF THE DEFENDANT(s):
13     BY:  Brooks R. Magratten, Esq.
14          PIERCE ATWOOD, LLP
15          One Financial Plaza
16          26th Floor
17          Providence, Rhode Island 02903
18          (401) 490-3422
19          bmagratten@pierceatwood.com
20
21
22
23
24
```

Page 3

```
 1   (Appearances continued.)
 2
 3   ON BEHALF OF THE DEPONENT(s):
 4     BY: Nicole Kinsley, Esq.
 5         FOLEY HOAG, LLP
 6         Seaport West
 7         155 Seaport Boulevard
 8         Boston, Massachusetts 02210-2600
 9         (617) 832-1000
10         nkinsley@foleyhoag.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1              INDEX OF EXAMINATION
 2
 3   WITNESS: ████████████████
 4   EXAMINATION                         PAGE NO.
 5   By Mr. Magratten                         5
 6
 7              INDEX TO EXHIBITS
 8   NO.     DESCRIPTION                  PAGE NO.
 9   1       Subpoena                          7
10   2       E-Mail Chain and Attached        27
11           MutualCare Secure Solution Long
12           Term Care Insurance Policy
13
14   (Original exhibits attached to original transcript)
15
16
17
18
19
20
21
22
23
24
```

Page 5

1          P R O C E E D I N G S
2
3
4          ▬▬▬▬▬▬▬▬▬▬▬▬▬,
5  having been satisfactorily identified by the production
6  of his driver's license, and duly sworn by the Notary
7  Public, was examined and testified as follows:
8
9
10         **EXAMINATION**
11
12 **BY MR. MAGRATTEN:**
13   Q.  Good morning, Mr. ▬▬▬.
14   **A.  Good morning.**
15   Q.  I'm Brooks Magratten and I'm representing Mutual
16 of Omaha Insurance Company in the action that's been
17 captioned John Doe versus Mutual of Omaha pending in the
18 District of Massachusetts.
19      You're familiar with this lawsuit?
20   **A.  Yes.**
21   Q.  Have you ever been in a deposition before?
22   **A.  No.**
23   Q.  All right. The process is this, I'm going to be
24 asking you a series of questions this morning, you've

Page 6

1  been sworn to give truthful responses to these
2  questions. I'm going to do my best to ask clear and
3  simple questions and I'm going to ask you to do your
4  best to provide full and complete responses; is that
5  agreeable?
6    **A.  Yes.**
7    Q.  Okay. If at anytime you don't clearly hear or
8  understand a question that I've asked please let me
9  know, I can rephrase the question or I can have it
10 repeated. So we both understand you will only be
11 responding to those questions that you clearly heard and
12 understood this morning; is that agreeable?
13   **A.  Yes.**
14   Q.  Have you been taking any medications that affect
15 your ability to recall events?
16   **A.  No.**
17      MR. KLEIN: Brooks, before we get started,
18 in terms of stipulations, is it agreeable to stipulate
19 that all objections, except as to form, are reserved?
20      MR. MAGRATTEN: Yes.
21      MR. KLEIN: Okay. Thank you.
22      MS. KINSLEY: And while we're on
23 stipulations, I assume the standard 30 days for the
24 witness to review and sign the transcript?

Page 7

1       MR. MAGRATTEN: That's fine. Sure.
2       Can we have that marked as Exhibit 1,
3  please.
4       (Deposition Exhibit No. 1 marked for
5  identification.)
6    Q.  I'm showing you what's been marked as Exhibit 1.
7  Have you seen that document before?
8    **A.  No, I haven't.**
9    Q.  Okay. That is a subpoena that was served on your
10 counsel Ms. Kinsley compelling your attendance at a
11 deposition here this morning.
12      And it's pursuant to the subpoena that you're
13 here today; is that correct?
14      MS. KINSLEY: Objection. Only to the extent
15 that this was served prior to my involvement for the
16 original date.
17   Q.  Okay.
18   **A.  Was there a question I need to respond to?**
19   Q.  You're here today pursuant to the subpoena?
20   **A.  I -- I'm here today as a result of a subpoena.**
21   Q.  All right. That's fine.
22      And your age, sir?
23   **A.  61.**
24   Q.  And a very brief summary of your education.

Page 8

1    **A.  Bachelor of architecture; Syracuse, University.**
2    Q.  Anything else?
3    **A.  No.**
4    Q.  What's your occupation?
5    **A.  Exhibition designer.**
6    Q.  Where are you employed?
7    **A.  ▬▬▬▬▬▬▬▬▬▬.**
8    Q.  How long have you worked there?
9    **A.  Six years.**
10   Q.  Do you have any other employment?
11   **A.  No.**
12   ==Q.  Marital status?==
13   ==**A.  Married.**==
14   ==Q.  Since when?==
15   ==**A.  July 2017.**==
16   ==Q.  And that's to Mr. ▬▬▬ correct?==
17   ==**A.  That is correct.**==
18   ==Q.  Where do you live?==
19   ==**A.  Boston, Massachusetts.**==
20   ==Q.  Street address?==
21   A.  ▬▬▬▬▬▬▬▬▬▬.  *Doe's Partner's Boston Address*
22   Q.  Is there an apartment number, a unit number?
23   A.  ▬▬.
24   Q.  ▬▬ did you say?

**Page 9**

1  A. A as in apple.
2  Q. Well, is that a condominium?
3  A. Yes, it is.
4  Q. How long have you lived there?
5  A. Since 2005.
6  Q. You're the sole owner of that property?
7  A. Yes, I am.
8  Q. You pay property taxes on that property?
9  A. Yes, I do.
10 Q. Did you vote in the last presidential election?
11 A. Yes, I did.
12 Q. Where did you vote?
13 A. In Boston.
14 Q. Are your bank accounts in Massachusetts?
15 A. Can you define bank accounts?
16 Q. Sure. Do you have a checking account?
17 A. Yes.
18 Q. With what bank?
19 A. Santander.
20 Q. Did you open that in a branch in Boston?
21 A. Yes.
22 Q. Do you have any -- have you ever opened any bank
23 accounts in Rhode Island?
24 A. Never.

**Page 10**

1  Q. Do you own any real estate other than ▮
2  ▮ [Doe's Partner's Boston Address]
3  A. No, I do not.
4  Q. You're familiar with a property at ▮ -- excuse
5  me. Strike it.
6      Are you familiar with a property at ▮
7  ▮, Saunderstown, Rhode Island? [Plaintiff Doe's Rhode Island home address]
8  A. How do you mean "familiar"?
9  Q. Have you been there?
10 A. Yes.
11 Q. What is that property?
12 A. It's a residence.
13 Q. Who owns it?
14 A. ▮. [Plaintiff Doe]
15 Q. Do you visit that property?
16 A. Yes.
17 Q. How often?
18 A. Two or three days a week.
19 Q. And would you go there normally weekends or
20 weekdays?
21 A. Weekends.
22 Q. In 2014 you submitted an application for
23 long-term care insurance?
24 A. I believe that's when it was.

**Page 11**

1  Q. All right. And that was with Mutual of Omaha?
2  A. That is correct.
3  Q. How did that process begin, the process of
4  applying for long-term care insurance?
5  A. Can you be more specific?
6  Q. Sure. What made you decide to apply for
7  long-term care insurance?
8  A. My parents both had long term health care
9  insurance and I saw the benefits of it.
10 Q. Your parents when they were alive were in Naples,
11 Florida?
12 A. That is correct.
13 Q. So what did you do next?
14 A. With regard to?
15 Q. Applying for long-term care insurance.
16 A. I contacted the individual who sold them their
17 policy.
18 Q. Who was that?
19 A. His name is J.D. Loden.
20 Q. When did you do that?
21 A. I don't recall exactly.
22 Q. Would that have been in 2014?
23 A. That sounds about right.
24 Q. And who is J.D. Loden?

**Page 12**

1  A. He is what -- he's a certified financial planner.
2  Q. Okay. Prior to contacting Mr. Loden had you
3  contacted any other individuals about long-term care
4  insurance?
5  A. No, I hadn't.
6  Q. And what did Mr. Loden do in response to your
7  inquiry?
8  A. He -- he asked me if he'd like -- if I would like
9  him to prepare some information about various policies.
10 Q. And what did you say?
11 A. Yes, I would like that.
12 Q. And did he do that?
13 A. Yes, he did.
14 Q. And what did he send you?
15 A. I don't remember exactly.
16 Q. When you had these conversations with Mr. Loden
17 where did they occur?
18 A. Over the phone.
19 Q. And Mr. Loden was in Florida at that time?
20 A. That's correct.
21 Q. You said Mr. Loden sent you information about
22 long-term care insurance?
23 A. Yes, he did.
24 Q. And was that -- was that information all with

Page 21

1  Q. Okay. What happened after that?
2  A. He referred me to his colleague who had been
3  assigned within his practice to be my physician.
4  Q. Okay. What happened next?
5  A. I reached out to that physician who had moved to
6  another location and was unable to provide me with my
7  records.
8  Q. Did you make any other efforts to obtain records
9  for your application?
10 A. Yes, I did. I -- I reached out to my physician
11 who, my former physician who had since retired to
12 Florida.
13 Q. Okay. And what came of that?
14 A. He redirected me to Beth Israel medical records
15 division here in Boston.
16 Q. Okay. What happened next?
17 A. They were only able to provide me with three
18 years worth of records.
19 Q. And what happened next?
20 A. With regard to my application?
21 Q. Yes.
22 A. Nothing.
23 Q. Did you tell Mr. Loden you were unable to obtain
24 the medical information that Mutual of Omaha requested?

Page 22

1  A. Yes, I did.
2  Q. And how was that communicated?
3  A. I don't recall.
4  Q. After you submitted the application for Mutual of
5  Omaha coverage and that was denied, did you submit any
6  other applications for long-term care insurance with any
7  other insurance company?
8  A. No.
9  Q. Why not?
10 A. I was intending to continue to get my records.
11 Q. And did you?
12 A. I have not been successful at that.
13 Q. All right. Well, apart from contacting Beth
14 Israel and obtaining records then for the prior three
15 years, have you done anything else to obtain medical
16 records?
17 A. No, I have not.
18 Q. You made some effort with Beth Israel Hospital to
19 obtain records, was it in 2014?
20 A. I don't recall exactly.
21 Q. It might have been 2015?
22 A. It could have been.
23 Q. So since that effort of trying to contact Beth
24 Israel which was perhaps 2015 you have not done anything

Page 23

1  else since then to obtain records?
2  A. That is correct.
3  Q. Have you made any efforts -- strike that.
4    Since 2015 have you made any other efforts to
5  obtain long-term care coverage?
6  A. No.
7  Q. Are you familiar with Ash Brokerage?
8  A. Yes.
9  Q. Okay. Tell me what is Ash Brokerage?
10 A. That I don't know.
11 Q. How are you familiar with the term?
12 A. I saw them on a communication that was shared by
13 counsel.
14 Q. All right. Have you had any direct communication
15 with Ash Brokerage?
16 A. Not to my knowledge.
17 Q. Have you had any direct communication with
18 Theresa Curreri?
19 A. Not to my knowledge.
20 Q. Have you had any communication directly with a
21 Brittany Jordan?
22 A. Not to my knowledge.
23 Q. Have you had any direct communication with Mutual
24 of Omaha?

Page 24

1  A. No.
2  Q. Have you ever visited any Mutual of Omaha
3  facility in Massachusetts?
4  A. No.
5  Q. Have you ever had any direct communication with a
6  Mutual of Omaha employee?
7  A. I don't know.
8  Q. Do you have long-term care coverage now?
9  A. I do not.
10 Q. I'm going to show you what has been marked as
11 Exhibit 1 in the deposition of         . If we can
12 just take a look at that, please.
13 A. (Witness reviewing.)
14 Q. Have you seen this document before?
15 A. Yes.
16 Q. What is it?
17 A. An application for long-term care insurance.
18 Q. Okay. Is this the application for LTC insurance
19 that you and Mr.        initially submitted back in
20 November of 2014?
21 A. Yes.
22 Q. All right. Turning to the fifth page of
23 Exhibit 1 of the      deposition. Is that your
24 signature in the right column?

Page 25

1  A. I believe I'm on the wrong page.
2  Q. Just the fifth page numerically.
3  A. Oh, okay.
4  Q. Yeah.
5  A. Not by page number.
6  Q. Right.
7  A. That is my signature.
8  Q. And you signed that on November 1, 2014?
9  A. Yes.
10 Q. Where were you when you signed this?
11 A. I believe I was in Boston.
12 Q. Okay. November 1st is a Saturday, is it possible
13 you signed this in Rhode Island?
14 A. It's possible.
15 Q. Okay. I'm going to ask you to turn to the page
16 that is designated page 16 of that same packet. And is
17 that your signature on page 16 as well --
18 A. Yes.
19 Q. -- on the right side?
20 A. Yes, it is.
21 Q. And on page 17, the same question, is that your
22 signature, November 1, 2014?
23 A. Yes, it is.
24 Q. Okay. And on page 19?

Page 26

1  A. That is also my signature.
2  Q. All right. And the following two pages, those
3  are both of your signatures?
4  A. Yes.
5  Q. Okay. I'm going to show you what's been marked
6  as Exhibit 2 from the         deposition. I'm going to
7  ask you if you've seen that document before?
8  A. Can you repeat your question.
9  Q. Sure. I've just shown you what's been marked as
10 Exhibit No. 2 from the         deposition. Have you seen
11 that document before?
12 A. I don't recall seeing this document before.
13 Q. Okay. I'll represent to you Mr.        has
14 identified this document as being the application for
15 long-term care insurance submitted in December of 2014.
16     Is it possible that Mr.        is correct about
17 that?
18 A. It's possible.
19 Q. Okay. I direct your attention, please, to the
20 page that is designated page 16 and in the right column
21 is that your signature with a date appearing
22 December 28, 2014?
23 A. That is my signature.
24 Q. Okay. And the following page again, is that your

Page 27

1  signature, December of 2014?
2  A. Yes, it is.
3  Q. And page 19; is that your signature?
4  A. Yes, it is.
5  Q. And the following two pages, the last two pages
6  of that exhibit, that's your signature?
7  A. Yes, they are.
8      MR. MAGRATTEN: Can I have this marked
9  number 2, please.
10     (Deposition Exhibit No. 2 marked for
11 identification.)
12 Q. I'm showing you now what's been marked Exhibit 2
13 of the          deposition.
14     Exhibit 2 consists of documents that were
15 produced in this matter by your attorney. I'm going to
16 start with the page that's been Bates numbered 001; do
17 you see that?
18 A. Not yet. I'm sorry. In the lower right-hand
19 corner?
20 Q. Yes. That's something lawyers do, they Bates
21 stamp things. So it's that boldfaced number in the
22 lower right column. I'll skip all the numbers and just
23 say 001.
24 A. Okay.

Page 28

1  Q. Okay. So this appears to be an e-mail; have you
2  seen this?
3  A. Yes, I have.
4  Q. Okay. Is this your e-mail to J.D. Loden of
5  May 1, 2014?
6  A. Yes, it is.
7  Q. In this you say, "J.D.," I assume that's J.D.
8  Loden?
9  A. That's correct.
10 Q. And you write, "after our conversation this
11 morning I realized that I've been meaning to talk with
12 you about LTC insurance for both myself and       ."
13     Was this the first time you raised the topic of
14 LTC insurance with Mr. Loden?
15 A. I don't recall.
16 Q. "He will be turning 60 this August, so he is
17 eager to get a policy in place before that birthday."
18     So at this time, May 2014, Mr.       was eager to
19 get long-term care insurance?
20 A. According to this document, yes.
21 Q. And is that your recollection?
22 A. Yes.
23 Q. Okay. The next page 002 it looks like a fragment
24 of an e-mail on top. Is that a response from Mr. Loden

Page 29

1  to you?
2  **A. What are you referring to?**
3  Q. To the very top of the second page of Exhibit 2.
4  **A. The line starting with, "you have been"?**
5  Q. Yes.
6  **A. Yes, that is a response from him.**
7  Q. Okay. And there's a line there about trust
8  title; I assume that has nothing to do with long-term
9  care insurance?
10 **A. That is correct.**
11 Q. And Mr. Loden says, "I will run a couple of LTC
12 strategies for your review."
13     Do you see that?
14 **A. Yes, I do.**
15 Q. Did he send you some LTC strategies?
16 **A. I believe he did.**
17 Q. And by strategies -- well, strike that.
18     Earlier you testified that Mr. Loden sent you a
19 prospectus. Is that what he's referring to when he
20 says, "strategies"?
21 **A. I would assume that.**
22 Q. You never got anything from Mr. Loden separately
23 labeled Strategy?
24 **A. No.**

Page 30

1  Q. Okay. And page -- the page designated 4.
2  **A. Yes.**
3  Q. About a third down Mr. Loden writes, "do you or
4     have any questions about the LTC quotes I sent?"
5     So by this point Mr. Loden sent you the LTC
6  quotes?
7  **A. It would appear that way.**
8  Q. Okay. Did those arrive by e-mail or by regular
9  mail?
10 **A. I don't recall.**
11 Q. Turning to what's been designated Page No. 9.
12 About the middle of the page there is some text; is that
13 part of an e-mail from Mr. Loden to you?
14 **A. The section starting with, "just a quick heads
15 up"?**
16 Q. Yes.
17 **A. Yes, it is.**
18 Q. All right. At this point did Mr. Loden speak
19 with you about any LTC coverage from any other insurer?
20 **A. I don't recall.**
21 Q. Did you ever ask him about LTC coverage with
22 other insurers?
23 **A. I don't recall.**
24 Q. Did Mr. Loden -- strike that.

Page 31

1     Did Mr. Loden ever explain why he was
2  recommending Mutual of Omaha for you?
3  **A. I do recall him saying he thought it was the best
4  product on the market.**
5  Q. Anything else?
6  **A. No.**
7  Q. The next few pages, the page numbered 11. About
8  halfway down this is another e-mail from J.D. Loden to
9  you; am I correct?
10 **A. Yes.**
11 Q. He writes, "great news. The rates for MA did not
12 change for the Mutual of Omaha long-term care policy.
13 Attached is the quote that I believe     was leaning
14 toward."
15    What does that mean, "the quote     was leaning
16 toward"?
17 **A. Can you repeat the question?**
18 Q. Sure.
19    MR. MAGRATTEN: Can you read it back.
20    (Prior testimony read back.)
21         "He writes, "great news. The
22         rates for MA did not change for
23         the Mutual of Omaha long-term
24         care policy. Attached is the

Page 32

1         quote that I believe     was
2         leaning toward." What does
3         that mean, "the quote     was
4         leaning toward"?
5  **A. I would have to assume what J.D. meant.**
6  Q. Okay. Well, at this time in July of 2014 did you
7  and Mr.     discuss various options for long-term care
8  coverage?
9  **A. I don't recall.**
10 Q. Okay. At this time, July 2014, did Mr.
11 ever discuss with you preference for one policy option
12 over another?
13 **A. I don't recall.**
14 Q. Okay. Near the bottom of that page Mr. Loden
15 writes, "finally, it's a great policy. However, I was
16 told that the decline rate has been about 50 percent."
17    Do you see that?
18 **A. I do.**
19 Q. Do you recall reading that at the time?
20 **A. I don't.**
21 Q. Did you ever have any discussions with Mr.
22 about the fact that the decline rate was about
23 50 percent?
24 **A. I don't recall that.**

9/22/2017

# RE: Long term care insurance

**JD Loden**

Thu 5/1/2014 7:11 PM

To: ▇

Yes I can assist you.

Sent from Samsung Mobile

-------- Original message --------
From: ▇
Date: 05/01/2014 5:32 PM (GMT-05:00)
To: JD Loden
Subject: Long term care insurance

JD,

After our conversation this morning I realized that I have been meaning to talk with you about LTC insurance for both myself, and ▇ He will be turning 60 this August, so he is eager to get a policy in place before that birthday.
Do you still deal with this type of product?
Any information that you could provide would be appreciated.
Thanks again -
▇

Sent from my iPhone

Securities offered through Investors Capital Corporation, Member FINRA/SIPC. Advisory Services, if applicable, offered through Investors Capital Advisory. 6 Kimball Lane, Lynnfield, MA 01940, (800) 949-1422.

This email, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this email is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this email is prohibited. If you have received this email in error, please notify the sender by replying to this message and delete this email immediately. Please keep in mind that trade orders will not be accepted by e-mail. Please contact your Representative directly or contact the Investors Capital Trade Desk by calling (800) 337-8723.

Email communications with Investors Capital Corporation, its personnel, and its independent registered representatives must be delivered from and to an Investors Capital Corporation approved email address. Please address any correspondence to the email address from which you were communicated. Please also address any questions RELATIVE TO THE EMAIL POLICY ONLY to emailquestions@investorscapital.com.

https://outlook.live.com/owa/?path=/mail/search/rp

EXHIBIT 2
WIT: ▇
DATE: 3-14-18
LAURIE LANGER, RPR

1/1

**CONFIDENTIAL**                                                                                              **DS000001**

Ma

# Long-term Care Quotes

### JD Loden

Thu 7/31/2014 10:15 AM

To: 

📎 2 attachments (3 MB)

 MOO SS Quote July 2014.pdf; MC Secure Solutions National CB.pdf;

**LODEN**
WEALTH MANAGEMENT, INC.
DISCIPLINED | FOCUSED | PRINCIPLED

Great news! The rates for MA did not change for the Mutual Omaha Long-term Care policy. Attached is the quote that I believe ▇▇▇ was leaning toward.

Furthermore, I reviewed the contract in detail with the general agency to better understand the policy definitions. The following is a brief summary:

### TWO OPTIONS FOR HOW BENEFITS ARE PAID

- **Reimbursement-** at 100% up to monthly benefit $6000; or

- **Cash-** up to 30% of the monthly benefit or $1800. NO ELIMINATION period required. To pay a friend, family, church, or unlicensed person. No receipts required to submit. You can switch back and forth monthly. Sometime in the early stages of a LTC event, licensed care isn't necessary. This can extend policy period because you use less of the maximum.

### ELIMINATION PERIOD

- **2 of 6 Activities of daily living (ADL)-** bathing, dressing, eating, transferring, toileting and continence. Begins the first day you receive a covered service. The other 89 days of care could be by a friend.

Remember this is a pot of money. If you use less then the $6000 monthly benefit, your policy will last longer.

Finally, it's a great policy. *However, I was told that the decline rate has been about 50%.* We should review your health history (confidential) to determine if we have any issues. As a back up, I have quotes from **TransAmerica**

CONFIDENTIAL

DS000011

9/20/2017

which also has a great contract.

When you have some time, call me so that we can review your health history. NOTE: The General Agency can take the application over the phone.

Thank you again for your business and trust.

## NOTE: OUR OFFICE HAS MOVED TO

500 5th Ave South
Suite 528
Naples, FL 34102
*(Immediately East of Café' Lurcat)*

J.D. Loden

*"Always do right- this will gratify some and astonish the rest"*   MARK TWAIN

Investment results and past performance do not guarantee future results

**JD LODEN WEALTH MANAGEMENT, INC.**
**Privileged and Trusted to Manage Our Clients Wealth**
Securities offered through Investors Capital Corporation
Member FINRA/SIPC
6 Kimball Lane, Lynnfield MA 01940  800-949-1422

500 5TH Ave South, Suite 528
Naples, FL 34102
239-430-0104  FAX 239-430-0105
WEBSITE www.jdlodenwealth.com



Voted 2013 Broker/Dealer of the Year!

Securities offered through Investors Capital Corporation, Member FINRA/SIPC. Advisory Services, if applicable, offered through Investors Capital Advisory Services. 6 Kimball Lane, Lynnfield, MA 01940, (800) 949-1422.

This email, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this email is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this email is prohibited. If you have received this email in error, please notify the sender by replying to this message and delete this email immediately. Please keep in mind that trade orders will not be accepted by email. Please contact your Representative directly or contact the Investors Capital Trade Desk by calling (800) 337-8723.