# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
JOHN DOE,                          )
     Plaintiff                    )
                      )
v.                                 )
                      )    No. 1:16-cv-11381-GAO
MUTUAL OF OMAHA                     )
INSURANCE COMPANY,                  )
     Defendant                    )
_____)

### DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Mutual of Omaha Insurance Company ("Mutual") moves pursuant to Fed. R. Civ. P. 56 and on the Affidavit of Lisa Ging, RN, and materials appended hereto for summary judgment dismissing Plaintiff John Doe's Amended Complaint.

Plaintiff Doe contends that Mutual wrongfully denied his application for long-term care ("LTC") insurance because he is taking Truvada, a medication for individuals at high risk of acquiring an HIV infection.  Plaintiff contends that Mutual's underwriting guidelines, which do not extend LTC coverage to individuals taking Truvada, improperly discriminate on the basis of disability and sexual orientation.

Mutual is now entitled to summary judgment dismissing the Amended Complaint.  The facts borne out in discovery establish that there is no personal jurisdiction over Mutual in the Commonwealth nor is there any "place of public accommodation" that could give rise to a violation of the Massachusetts Public Accommodation Law, Mass. Gen. Law Ch. 272, § 98.  Moreover, §98 offers no relief for Doe's claim of discrimination on the basis of disability.

## **INTRODUCTION**

Mutual is a full-service, multi-line provider of insurance products including LTC policies.  Mutual offers LTC insurance to all people, homosexual or heterosexual, who meet its underwriting guidelines.  Mutual can legally discriminate between risk classes where there is a legitimate underwriting reason to do so.  Telles v. Comm'r of Ins., 574 N.E.2d 359, 360 (Mass. 1991) (quoting Life Ins. Ass'n of Massachusetts v. Comm'r of Ins., 530 N.E.2d 168, 171 (Mass. 1988)).

Plaintiff jointly applied to Mutual for LTC coverage with his same-sex partner in 2014 and 2015.  Mutual denied Plaintiff's application because it does not insure any person who takes Truvada.  Mutual designated Truvada as uninsurable initially because it is a treatment for HIV-positive individuals.   Mutual, like other LTC insurers, does not extend LTC coverage to HIV positive individuals.

The FDA later approved Truvada as part of a pre-exposure prophylaxis ("PrEP") protocol for individuals at a high risk of acquiring HIV.  Truvada use does not eliminate the risk of acquiring an HIV infection even when taken in compliance with PrEP.   The Truvada treatment protocol requires patients to take Truvada daily, employ safe sex practices, and see their physicians every three months for testing and other health services.  The efficacy of Truvada diminishes if the protocol is not followed.   Studies have shown significant suboptimal compliance (or non-compliance) with PrEP guidelines among participants.

Mutual classified the risks attendant to taking Truvada and determined, along with other insurers, not to insure those individuals who are taking the drug.   Plaintiff takes Truvada for PrEP and acknowledges the drug is for "adults at high risk" of a "sexually-acquired HIV infection."  Mutual denied his application for LTC coverage.  Plaintiff contends that by denying

his application Mutual discriminated against Doe on the basis of disability (Count I) and sexual orientation (Count II) in violation of the Massachusetts Public Accommodation Law, Mass. Gen. Law Ch. 272, § 98.

Plaintiff cannot maintain this lawsuit against Mutual.  No Massachusetts court may exercise personal jurisdiction over Mutual in this action.  Mutual is not a Massachusetts company and is not "at home" in Massachusetts.  Plaintiff is not a Massachusetts resident and all material events related to the LTC application occurred outside Massachusetts – in Rhode Island, Indiana, California, New Jersey, Florida, or Nebraska.  The *de minimis* contacts between Plaintiff's insurance application and Massachusetts bear little relationship to the substance of the Amended Complaint.  Simply put, there are insufficient contacts within the borders of Massachusetts to confer general or specific jurisdiction over Mutual in this action.

Likewise, as a matter of law, there can be no violation of the Massachusetts Public Accommodation statute where the acts complained of did not occur in Massachusetts and do not relate to any Massachusetts "place of public accommodation."  Additionally, there is no factual or legal basis for Plaintiff's claim for disability discrimination under §98.  Accordingly, summary judgment should now enter in Mutual's favor and the Amended Complaint should be dismissed.

## SUMMARY OF UNDISPUTED MATERIAL FACTS[1]

Mutual is a Nebraska insurer with its principal place of business in Omaha, Nebraska. (SOF ¶ 1).  Plaintiff is a citizen of Rhode Island.  He is the sole owner of a home in North Kingstown, Rhode Island.  (SOF ¶ 3).  In 2014 and 2015, Plaintiff stayed at his North

---

[1] Accompanying this Memorandum is Mutual's Statement of Undisputed Material Facts ("SOF"). Mutual's SOF presents those facts that are relevant to this Motion and for which there is no genuine issue to be tried.  Mutual incorporates the SOF by reference.

Kingstown, Rhode Island home at least four to five nights per week. (SOF ¶ 4). Plaintiff also owns a Rhode Island-incorporated business that operates a fitness center in Rhode Island. (SOF ¶ 8). He personally manages the center. (SOF ¶ 9).

In 2014 and 2015, Plaintiff filed Rhode Island state and federal income taxes using his Rhode Island home address. (SOF ¶¶ 10, 11, 12). He voted in Rhode Island. (SOF ¶ 7). He has a Rhode Island driver's license and his car is Rhode Island registered. (SOF ¶¶ 5, 6). Plaintiff banks in Rhode Island. (SOF ¶ 25). He has also filled his prescription for Truvada exclusively at a CVS Pharmacy in East Greenwich, Rhode Island. (SOF ¶ 15).

With respect to the LTC application, Plaintiff's partner began the process of obtaining LTC coverage by contacting his financial advisor J.D. Loden ("Loden") in Naples, Florida. (SOF ¶ 16). Loden offered to assist Plaintiff and his partner to procure LTC coverage from a third-party insurer. (SOF ¶¶ 16, 17). From Florida, Loden contacted Ash Brokerage's ("Ash") office in Red Bank, New Jersey, with its headquarters in Fort Wayne, Indiana, to request quotes for LTC coverage. (SOF ¶ 17). Loden asked Ash to search for insurers who offer a spousal discount for domestic (unmarried) partners, a practice that is not universal in the industry. (SOF ¶ 18).

Once Ash identified Mutual as offering the insurance product and the domestic-partner discount, Ash prepared an application for Plaintiff and his partner. (SOF ¶¶ 19, 20). Loden advised Plaintiff's Partner that Mutual's decline rate "has been about 50%." (SOF, ¶ 21). Although Plaintiff lives, works, votes, banks, pays taxes, etc. in Rhode Island, the address listed for Plaintiff in the application was his partner's condominium in Boston, Massachusetts. (SOF ¶ 22). The application was transmitted from an Ash broker in New Jersey to Loden in Florida and then to Plaintiff and his partner for their signatures. (SOF ¶¶ 19, 20). Plaintiff's partner returned the signed page and enclosed a check for his portion of the initial premium payment to Loden in

Florida.  (SOF ¶¶ 22, 24).  It is possible that Plaintiff and Plaintiff's partner signed application in Rhode Island (SOF ¶23).  Plaintiff's check was drawn on his BankRI account and listed his Rhode Island home address. (SOF ¶ 25).

On December 17, 2014, Loden in Florida submitted the joint application to Ash, headquartered in Indiana.  (SOF ¶ 24).  However, because the dates of Plaintiff's and his partner's signatures were then more than one month old at that time, the application was invalid and needed to be resubmitted with current signatures.  (SOF ¶ 26).

Loden in Florida then sent Plaintiff and his partner a new signature page by email, which they signed and returned with new checks to Loden in Florida.  (SOF ¶¶ 27, 28).  Again, Plaintiff's check was drawn on his BankRI account and listed his Rhode Island home address. (SOF ¶ 30).  On January 5, 2015, Loden in Florida returned the newly signed application page and checks to an Ash broker in New Jersey.  (SOF ¶ 29).  On January 13, 2015, Ash sent the joint application and checks to Mutual in Omaha, Nebraska.  (SOF ¶ 31).

Soon after receiving the application Mutual learned that Plaintiff was taking Truvada. (SOF ¶ 32).  On February 9, 2015, Mutual sent a letter to Plaintiff denying his portion of the joint application based on underwriting guidelines. (SOF ¶ 33). The letter was sent from a St. Paul, Minnesota address, which is a third-party administration processing center, but the text of the letter was prepared by Mutual's underwriting consultant who was working out of California at the time. (SOF ¶ 9).  Mutual sent the denial letter to Plaintiff at his partner's Boston, Massachusetts address. (SOF ¶ 33).  Plaintiff's partner did not thereafter pursue LTC coverage with Mutual for himself. (SOF ¶ 35).  Plaintiff did not thereafter pursue LTC coverage with any other insurer.  (SOF ¶ 36).

Plaintiff appealed the application denial on or about March 30, 2015. (SOF ¶ 37). Mutual responded again stating that Plaintiff's application was denied because he was taking Truvada. (SOF ¶ 37).

## LEGAL ARGUMENTS

Plaintiff's Amended Complaint should now be dismissed.  First, Plaintiff cannot establish personal jurisdiction—general or specific—over Mutual in this Court (or any court of the Commonwealth).  Second, Plaintiff's Amended Complaint consists of two counts, both alleging violations of the Massachusetts Public Accommodation Law, Mass. Gen. Law c. 272, § 98. However, this statute is not applicable to activities that occur beyond Massachusetts's borders nor where there is no "place of public accommodation" in Massachusetts.  Finally, §98 does not provide relief for Plaintiff on the basis of an allegation that he is *perceived* as being at a high risk of acquiring HIV.

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A material fact is one which has the potential to affect the outcome of the suit under applicable law."  Kirby v. Payless Shoesource, Inc., 2008 WL 4381917, at *9 (D. Mass. 2008).  To secure summary judgment, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once this burden is met, the burden shifts to the "nonmovant [to] contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The

"evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). "Neither conclusory allegations nor improbable inferences are sufficient to defeat summary judgment. Rather . . . the opposing party must present enough competent evidence to enable a fact finder to decide in its favor on the disputed claims. Evidence that is merely colorable or is not significantly probative cannot deter summary judgment." Summer v. Harvard Univ., 397 F. Supp. 2d 166, 171-72 (D. Mass. 2005). This Court must also "disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation." Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997), vacated on other grounds, 524 U.S. 624 (1998). The evidence "must be significantly probative of specific facts." Perez v. Volvo Car Corp., 247 F.3d 303, 317 (1st Cir. 2001).

In the event the Court does not grant all the relief requested in a motion for summary judgment, it may enter an order stating that a material fact, including damages or other relief, is not genuinely in dispute and is established in the case. Fed. R. Civ. P. 56(g).

**B.    This Court Cannot Exercise Personal Jurisdiction Over Mutual of Omaha**

Without personal jurisdiction, a case must be dismissed. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) ("To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'"). "When a court's personal jurisdiction over a defendant is contested, the plaintiff

has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010) (citing Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 & n. 1 (1st Cir. 1986)).  Upon motion, "a district court 'may choose from among several methods to determine whether the plaintiff has met [this] burden." Id. (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir.2007)); World Depot Corp. v. Lorenzo Onofri et al., No. CV 16-12439-FDS, 2017 WL 6003052, at *7 (D. Mass. Dec. 4, 2017) (methods include the "prima facie" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard.). Where the personal jurisdiction question is raised at the summary judgment stage, the district court considers whether the Plaintiff has "demonstrate[d] jurisdiction by a preponderance of the evidence" as opposed to the lesser taxing prima facie standard.  Adams, 601 F.3d at 4; see Sorenson v. H & R Block, Inc., No. CIV.A.99-10268-DPW, 2002 WL 31194868, at *6 (D. Mass. Aug. 27, 2002), aff'd, 107 F. App'x 227 (1st Cir. 2004) ("Given that the defendants have raised the issue of personal jurisdiction on a motion for summary judgment, the grounds for [for jurisdiction] are subject to a more searching scrutiny than might occur in motion to dismiss practice."); see also Rivera-Olivera v. Antares Oil Servs., LLC, 957 F. Supp. 2d 119, 124 (D.P.R. 2013) (recounting Plaintiff's burden to establish jurisdiction at the summary judgment stage (citing Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir.1995)).

"In deciding whether a defendant may properly be subjected to personal jurisdiction in a given forum, a court must consider 'a variety of interests,' including 'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.' [ ] But the court's 'primary concern' is 'the burden on the defendant,' [ ] not only because there may be practical problems resulting from forcing a defendant to litigate in an inconvenient forum, but because the question of jurisdiction also implicates the 'territorial limitations on the power of the

respective States.'" Gulf Oil Ltd. P'ship v. Petroleum Mktg. Grp., Inc., No. CV 17-10813-GAO,

2018 WL 1586029, at *2 (D. Mass. 2018) (quoting Bristol–Myers Squibb Co. v. Super. Ct. of

Cal., 137 S.Ct. 1773, 1780 (2017)).  "To establish personal jurisdiction, [a] plaintiff must show

that the requirements of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, are

satisfied, and that the exercise of jurisdiction is consistent with constitutional due process."

World Depot, 2017 WL 6003052, at *7; see also Knox v. MetalForming, Inc., No. CV 17-11144-

GAO, 2018 WL 1586032, at *3 (D. Mass. 2018) (same).  A court's exercise of personal

jurisdiction over an out-of-state defendant comports with due process only "if the defendant has

certain minimum contacts with the State such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." Daimler AG v. Bauman, 134 S. Ct. 746,

754 (2014) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal citation and

punctuation omitted).  The Supreme Court "distinguish[es] between specific or case-linked

jurisdiction and general or all-purpose jurisdiction." BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549,

1558 (2017); Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 109 (D. Mass.

2013) (recounting the "two types of personal jurisdiction—general or specific.").

### i. *Massachusetts Long-Arm*

"The Massachusetts long-arm statute enumerates eight specific grounds on which a

nonresident defendant may be subjected to personal jurisdiction by a court of the

Commonwealth."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 55 (Mass. 2017) (citing Mass.

Gen. Laws ch. 223A, § 3)).  "The jurisdictional requirements imposed by the Massachusetts

long-arm statute are quite similar to, though not completely congruent with, the jurisdictional

requirements imposed by the Due Process Clause." World Depot, 2017 WL 6003052, at *8

(quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir.

2016)).  The Supreme Judicial Court has "long held that the long-arm statute 'asserts jurisdiction over the [defendant] to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established.'" SCVNGR, Inc.  (quoting Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76 (Mass. 1979)).  "Accordingly, a judge would 'be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites' of G. L. c. 223A, § 3." Id.  And "[b]ecause the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." Access Now, Inc. v. Otter Prod., LLC, No. CV 17-10967-PBS, 2017 WL 6003051, at *2 (D. Mass. Dec. 4, 2017) (quoting SCVNGR, Inc., 85 N.E.3d 50); Knox, 2018 WL 1586032, at *2 (same). But see World Depot, 2017 WL 6003052 (holding that the "modest differences" between long arm and constitutional minimum contacts were "immaterial" and held that the "analysis [for that case] will begin directly with the constitutional test").  In an abundance of caution, and in accordance with the very recent directives of the Massachusetts Supreme Judicial Court and United States District Court for the District of Massachusetts, Mutual proceeds to the Massachusetts long-arm statute first and then to the constitutional analysis.

The Massachusetts's long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a), permits a court to "exercise personal jurisdiction over a [defendant], who acts directly or by an agent, as to a cause of action in law or equity arising from the [defendant's] . . . transacting any business in this [C]ommonwealth." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015); see Mass. Gen. Law ch. 223A, s. 1 (defining "person" to include "commercial entity" which includes Mutual here).  Similarly, Mass. Gen. Law ch. 223A, § 3(f), states that a "court may exercise

personal jurisdiction over a [defendant], who acts directly or by an agent, as to a cause of action in law or equity arising from the [defendant's] . . . contracting to insure any person, property or risk located within this [C]ommonwealth at the time of contracting."  For a defendant to be subject to jurisdiction under the Massachusetts long-arm statute the claim must "aris[e] from" the defendant's contacts with the Commonwealth.  Mass. Gen. Law ch. 223A, §§ 3(a), 3(f).

Accordingly, whether there is jurisdiction over Mutual here turns on whether Plaintiff's claims arise from Mutual's "transaction of business in" in the Commonwealth or from Mutual "contracting to insure" Plaintiff in the Commonwealth.  Id.  As the Access Now Court pointed out, "[b]ecause the [claimed] harm—the denial of access to the website [experienced by the Attleboro, Massachusetts-resident Plaintiff]—occurred in the Commonwealth, the injury [arose] from [defendant's] transaction of business via its website in the Commonwealth."  Access Now, 2017 WL 6003051, at *4 (emphasis added).  However, "the two out-of-state [Access Now] plaintiffs . . . [did] not have a basis for asserting personal jurisdiction over [the defendant]" under the Massachusetts long-arm statute.  Access Now, 2017 WL 6003051, at *4 (citing Bristol–Myers Squibb Co., 137 S.Ct. at 1780–81) (emphasis added).  For these out-of-state plaintiffs, their access to the defendant's website and alleged injuries did not occur in the Commonwealth and there was no basis for jurisdiction of an action between those out-of-state plaintiffs and the out-of-state defendant.  Id.

Simply put, whether Plaintiff can satisfy the Massachusetts long-arm-statute depends on whether Plaintiff is a citizen of another state and therefore will not feel the alleged harm in the Commonwealth.  For the reasons explained above and below, Plaintiff is a citizen of Rhode Island, and all material activities related to this case occurred outside the Commonwealth.

Plaintiff cannot satisfy the Massachusetts long-arm statute.  See infra (the lack of sufficient contacts with this forum to confer case-specific jurisdiction).

### ii.  *General Jurisdiction*

This Court lacks general jurisdiction over Mutual.  "General or all-purpose" jurisdiction justifies suit against a defendant in the forum even if the claims do not arise from the defendant's conduct in that forum.  World Depot, 2017 WL 6003052, at *8 (quoting Int'l Shoe Co., 326 U.S. at 318).  General jurisdiction requires the defendant's "affiliations with the [forum to be] so continuous and systematic as to render [it] essentially at home in the forum[.]" Daimler AG, 134 S. Ct. at 754; BNSF, 137 S. Ct. at 1559; see also Knox, 2018 WL 1586032, at *3 (holding that a German manufacturer was not "at home" in Massachusetts notwithstanding that its products were sold in the Commonwealth); Gulf Oil, 2018 WL 1586029, at *3 (holding that notwithstanding the defendant's "sizable economic presence in Massachusetts and [that] formerly a plausible case might have been made for exercising general jurisdiction over [the defendant, that was] [n]o longer" the case). "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business." BNSF, 137 S. Ct. at 1559.  In only the "exceptional case" can a "corporate defendant's operations in another forum 'be so substantial and of such a nature as to render the corporation at home in that State.'" BNSF, 137 S. Ct. 1558 (quoting Daimler, 134 S. Ct. at 754). In other words, the contacts must be so substantial that the operations are "comparable to a domestic enterprise in that State." Daimler, 134 S. Ct. at 758 n.11; see also id. at 756 (citing as the single example of an "exceptional" case for general jurisdiction where the forum had become the "corporation's principal, if temporary, place of business" (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-48 (1952)).

Importantly, the "general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety." Id. (quoting Daimler, 134 S. Ct. at 762 n. 20). Indeed, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." Id. In other words, for a corporate defendant to be "at home" in a forum—to justify being haled to court in that forum for any claim—requires more than just doing business there. World Depot, 2017 WL 6003052, at *8; see BNSF, 137 S. Ct. at 1559 (rejecting general jurisdiction over the defendant notwithstanding defendant had "over 2,000 miles of railroad track and more than 2,000 employees in Montana," the forum state); see also Daimler, 134 S. Ct. at 754, 760 (holding that having even imputing the contacts of Daimler's purported agent -- "multiple California-based facilities," serving as the "largest supplier of luxury vehicles to the California market" and its "California sales account[ing] for 2.4% of worldwide sales" – there was an insufficient basis to "subject Daimler AG to general jurisdiction in California"); Gulf Oil, 2018 WL 1586029, at *3 (observing that "BP is incorporated in Maryland[,] [i]t maintains its principal place of business in Illinois[,] [and] [e]ven though it does a substantial amount of business in Massachusetts, as it presumably does in other States, that fact does not distinguish it from any other company that does business on a nationwide scale[, and] [indeed] [t]here are no particular facts in the record to support a conclusion that BP's business operations are 'so substantial and of such a nature' that it is 'at home' in Massachusetts, so to warrant characterizing this as the sort of 'exceptional case' the Supreme Court hypothesized").

Here, Mutual is a Nebraska insurance company with a principal place of business in Omaha, Nebraska. This is not an "exceptional" case whereby Mutual is "at home" in Massachusetts. There are no grounds for exercising general jurisdiction over Mutual.

### iii. *Specific Jurisdiction*

"For specific personal jurisdiction, the constitutional analysis has three distinct prongs: relatedness, purposeful availment, and reasonableness." A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016); Knox, 2018 WL 1586032, at *3 (same). Courts employ this three-part approach when analyzing specific jurisdiction asking:

> (1) whether the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities;' (2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;' and (3) whether the exercise of jurisdiction is reasonable.

A Corp., 812 F.3d at 59 (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)).

Plaintiff's claims flounder at the first step -- relatedness. "To satisfy this standard, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" B2 Opportunity Fund, LLC v. Trabelsi, No. CV 17-10043-RGS, 2017 WL 4684028, at *6 (D. Mass. Oct. 18, 2017) (quoting Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014)). "Thus, 'specific jurisdiction is confined to adjudication of issues arising from, or connected with, the very controversy that establishes jurisdiction.'" Id. (quoting Bristol-Myers Squibb, 137 S. Ct. at 1780); see also Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation" where "the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 134 S.Ct. at 1115 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). "The relationship must arise out of contacts that the defendant himself creates with the forum State." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "[T]he defendant's in-state conduct must form an important or at least material element of proof in the

plaintiff's case." <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 61 (1st Cir. 2005).   The relatedness

inquiry "serves the important function of focusing the court's attention on the nexus between a

plaintiff's claim and the defendant's contacts with the forum." <u>Sawtelle</u>, 70 F.3d at 1389. "The

relatedness requirement is not an open door; it is closely read, and it requires a showing of a

material connection." <u>Harlow</u>, 432 F.3d at 61.  Moreover, "for a plaintiff's claims to be 'related

to' a defendant's in-forum contacts, something more would be necessary than the bare fact that

the plaintiff 'felt the effects' of the defendant's out-of-state conduct . . . within the forum." <u>Gulf</u>

<u>Oil</u>, 2018 WL 1586029, at *6 (quoting <u>A Corp.</u>, 812 F.3d at 60, which noted that the "in-forum

effects of non-forum activity, standing alone, were insufficient to support personal jurisdiction").

   Here, Plaintiff's claim does not "directly arise out of, or relate to, the defendant's forum

state activities."  <u>B2 Opportunity Fund</u>,  2017 WL 4684028, at *6.  Nor does Plaintiff  "feel the

effects" of Mutual's out-of-state conduct in Massachusetts – to the extent that could even be a

sufficient "contact" to confer jurisdiction. <u>Gulf Oil</u>, at *6.  That Mutual does some business in

Massachusetts is immaterial to the specific jurisdiction inquiry where those business contacts are

not connected to Plaintiff's claims.  <u>Bristol-Myers Squibb</u>, 137 S. Ct. at 1781 ("When there is no

such connection, specific jurisdiction is lacking regardless of the extent of a defendant's

unconnected activities in the State."); <u>Gulf Oil</u> at *4 (noting that "BP does sell gas through

stations in Massachusetts, but that economic activity is wholly unrelated to [plaintiff's] claims in

this suit.").  Plaintiff is a Rhode Island resident seeking LTC coverage from a Nebraska insurer.

He lives, works, owns, votes, banks, and pays taxes in Rhode Island.  Mutual, the agent, and

insurance broker are out-of-state too -- from Nebraska, New Jersey, California, Florida, and

Indiana.  But for the fortuitous, and perhaps strategic, use of Plaintiff's partner's Boston address[2] on the application, there would be zero connection between Plaintiff, Mutual, and the Commonwealth.  There is certainly not a "substantial connection" or "something like a proximate cause nexus," which are necessary to confer jurisdiction in this forum.[3]  Walden, 134 S.Ct. at 1115; Harlow, 432 F.3d at 61; see Bristol-Myers Squibb, 137 S. Ct. at 1780 (holding that because the forum-state plaintiffs alleged they were injured by a drug in the forum state, they could make out a claim for specific personal jurisdiction against the non-resident pharmaceutical company in the forum state, but that the non-forum state plaintiffs could not maintain a claim in the forum state because they did not buy the drug from forum state sources nor were they were injured in the forum state); see also N.H. Ins. Guar. Ass'n v. Markem Corp., 676 N.E.2d 809, 812 (Mass. 1997) (holding there is no personal jurisdiction over policyholder defendants where insurance contracts were drafted outside the forum state, insured activity did not occur in the forum state, and only relevant contacts were plaintiff's mailing of policy from the forum state to defendant, defendant's mailing of payment to the plaintiff in forum state, and defendant's submission of claims to the forum state).

Anticipating Plaintiff's arguments that the agent, Loden, became registered to sell insurance in Massachusetts and that Loden emailed with Plaintiff's partner who lives in Massachusetts, these purported "contacts" do not change the personal-jurisdiction calculus. Loden's registration and Plaintiff's partner's address are inconsequential when compared to the

---

[2] Although Plaintiff's partner initially applied for LTC coverage jointly with Plaintiff, he did not pursue his application and did not receive LTC coverage from Mutual. (SOF ¶ 35).

[3] Because Plaintiff cannot establish "relatedness," this Court need not reach the second and third prongs of specific jurisdiction: "purposeful availment" and "reasonableness." A Corp., 812 F.3d at 60 (recounting "purposeful availment" assures that "that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state" and the "reasonableness" "Gestalt factors"  serve to assist the court decide "close cases").

numerous other non-Commonwealth contacts outlined above.  See <u>N.H. Ins. Guar. Ass'n</u>, 676

N.E.2d at 812.

Moreover, it was Plaintiff's partner who solicited the LTC coverage from Loden in

Florida <u>not</u> Loden or Mutual reaching into the Commonwealth to attempt to sell the policy

specifically to Plaintiff's partner.  <u>Calderon-Sitiriche v. Educators Mut. Life Ins. Co.</u>, 101 F.

Supp. 2d 61, 66 (D.P.R. 2000) (emphasizing that "parties who 'reach out beyond one state and

create continuing relationships and obligations with citizens of another state' are subject to

regulation and sanctions in the other State for the consequences of their activities" (quoting

<u>Burger King Corp.</u>, 471 U.S. at 473).  The "substantial connection," between the defendant and

the forum state necessary for a finding of minimum contacts must come about by an action of the

defendant "purposefully directed toward" the forum State.  <u>Burger King</u>, 471 U.S. at 475.

In sum, there are insufficient grounds for exercising specific jurisdiction over Mutual in

this case.

**II.**      **<u>The Massachusetts Public Accommodations Law does not apply to activities that occur beyond Massachusetts's borders or in the absence of any connection to a physical "place of public accommodation" in Massachusetts, therefore both Counts must be dismissed</u>**

"In order to establish a prima facie claim of discrimination in a place of public

accommodation [under Mass. Gen. Law c. 272, § 98], [Plaintiff] must prove that: 1) he is a

member of a protected class; 2) he was denied access to or restricted in the use or enjoyment of

an area or facility; and 3) the area or facility was a place of public accommodation."  <u>Doran v.</u>

<u>The Rose Fund, Inc.</u>, 2014 WL 495720, at *3 (MCAD 2014).   Here, Plaintiff alleges that

"Defendant Mutual of Omaha is a place of public accommodation within the meaning of M.G.L.

c. 272, § 92A and the contents and provisions of the long-term care insurance that Doe applied

for are subject to the nondiscrimination mandate of M.G.L. c. 272, § 98."  Amd. Compl., [Doc. #

97], ¶ 31.  Mutual is in the business of selling insurance.  Plaintiff's application involved no

physical office of Mutual in Massachusetts.  In this case there is no "place of public

accommodation" in Massachusetts to implicate the non-discrimination statute, which enumerates

a non-exhaustive list of "public accommodations" that are all physical places:

> "A place of public accommodation, resort or amusement within the meaning hereof shall
> be defined as and shall be deemed to include any place, whether licensed or unlicensed,
> which is open to and accepts or solicits the patronage of the general public and, without
> limiting the generality of this definition [collecting a list of physical places]."

Mass. Gen. Laws Ann. ch. 272, § 92A.

While this definition has been expanded by caselaw, all such cases still involve a

connection to some physical location or "place" that exists within the Commonwealth.  For

example,  Currier v. National Board of Medical Examiners, 965 N.E.2d 829, 842 (Mass. 2012),

held that the national board that administered medical licensing examination was a "place of

public accommodation" for purposes of the public accommodation statute.  The Currier Court

was persuaded because the national board hired a testing agency to provide physical testing sites

within the Commonwealth and controlled the conditions of those physical sites.  See also Joyce

v. Town of Dennis, 705 F. Supp. 2d 74 (D. Mass. 2010) (applying the law to a golf course in

Dennis, Massachusetts); Concord Rod & Gun Club, Inc. v. Massachusetts Comm'n Against

Discrimination, 524 N.E.2d 1364 (Mass. 1988) (applying the law to a fishing and hunting club's

clubhouse and surrounding property in Concord, Massachusetts); Local Fin. Co. of Rockland v.

Massachusetts Comm'n Against Discrimination, 242 N.E.2d 536, 538 (Mass. 1968) (applying the

law to a loan company in Rockland, Massachusetts).

Here, unlike Currier, Joyce, Concord Rod, and Local Finance, Plaintiff's claims have no

relationship to any particular location or "place" within the Commonwealth's borders.  The

Court's holding in U.S. Jaycees v. Mass. Comm'n Against Discrimination is particularly

instructive:  It is "important to distinguish the case of a discriminatory membership policy (which the U.S. Jaycees concededly practices) from circumstances where the denial of membership is used as a method for denying access to a particular place . . . . It is only the latter type of discrimination that is covered by conventional place of public accommodation statutes." 463 N.E.2d 1151, 1160 (Mass. 1984).  The Jaycees Court explained that the policies of the U.S. Jaycees were not a "place of public accommodation" under the Massachusetts statute given that there was no denial to any particular place.  The Court illustrated this holding noting that the U.S. Jaycees, given their practices, could not "conduct a meeting in Massachusetts, or jointly conduct a meeting with the Massachusetts Jaycees, without violating the law." Id.

Even if the sale of insurance could be construed as a "place of public accommodation," here that "place" is not in Massachusetts.  Plaintiff is a Rhode Islander.  (SOF ¶¶ 3-12, 15). Loden, the agent, is in Florida. (SOF ¶ 16).  Ash, the broker, is in Indiana and New Jersey. (SOF ¶ 17.)  And Mutual is in Nebraska. (SOF ¶ 1).   There is no connection to a Massachusetts place and a state's anti-discrimination statute cannot reach beyond its borders to try to regulate conduct occurring elsewhere.  See, e.g., Blackman v. Lincoln Nat. Corp., No. CIV.A. 10-6946, 2012 WL 6151732, at *6 (E.D. Pa. Dec. 10, 2012) (holding "[p]laintiff has failed to state a claim under the [Pennsylvania Human Relations Act (PHRA)] upon which relief can be granted [for the alleged gender discrimination] [because] Plaintiff lives in Illinois and works for Defendant in Illinois . . . [and] does not allege that she works in Pennsylvania."); Taylor v. Rodale, Inc., Civ. No. 04–799, 2004 WL 1196145 (E.D. Pa. May 27, 2004) (denying a Georgia resident, who worked in Georgia, claims under PHRA because decision-makers who engaged in the alleged discriminatory practices worked in Pennsylvania and noting that its holding "is consistent with an overwhelming majority of state and federal courts that have addressed the jurisdictional reach

of their state anti-discrimination laws"); <u>Hoffman v. Parade Pub.</u>, 933 N.E.2d 744, 748 (N.Y. Ct.

App. 2010) (holding that New York State Human Rights Law does not protect plaintiff who

neither lived nor worked in New York); <u>Arnold v. Cargill, Inc.</u>, No. CIV.012086(DWF/AJB),

2002 WL 1576141, at *4 (D. Minn. July 15, 2002) ("the Court shall dismiss the MHRA claims

of those Plaintiffs who have neither lived nor worked in Minnesota, finding that the MHRA does

not provide for extraterritorial application[.]")

### III.    **Plaintiff is not disabled under the Massachusetts Public Accommodations Law therefore Count I must be dismissed**

In Count I, Plaintiff alleges that he "is within the protected class of the prohibition on

disability discrimination in M.G.L. c. 272, § 98 because defendant Mutual of Omaha <u>regarded</u>

<u>him as disabled</u> within the meaning of M.G.L. c. 151B, §1(17)." (Am. Compl. at ¶ 32) (emphasis

added).  At his deposition, Plaintiff (who is an attorney) was asked to elaborate on the factual

basis for this claim.  He could not:

> Q. Turning to paragraph 32. You allege, "Plaintiff Doe is within the protected class of the prohibition on disability discrimination in Mass. General Laws Chapter 272, Section 98, because Defendant Mutual of Omaha regarded him as disabled within the meaning of Mass. General Laws Chapter 151B, Section 1, Subsection 17." Do you see that?
>
> A. Yes, sir.
>
> Q. Okay. What are the facts upon which you rely in alleging that Mutual of Omaha regarded you as disabled?
>
> MR. KLEIN: Objection. Calls for a legal conclusion. And I want to just caution you if you do not know what these terms mean you should, you know, you need to tell Mr. Magratten that you do not understand.
>
> A. Yes, I do not understand. I'm not familiar with those terms.
>
> Q. So as –
>
> A. I left that up to my attorney.

Q. What is your -- as you read paragraph 32 what is your understanding of the term "disabled"?

MR. KLEIN: Objection. Calls for a legal conclusion. That is a term of law.

A. I do not know.

MR. KLEIN: It's not a fact.

(SOF ¶ 44).

Similarly, Mutual asked Plaintiff in an interrogatory to provide "each and every fact upon which [he] rel[ied]" in claiming he was a within "protected class . . . because defendant . . . regarded him as disabled[.]"  He responded without using the word "disabled" or "regarded as disabled" at all.  Plaintiff said only that "Mutual excludes people who use PrEP from long-term care insurance because of its belief that such individuals are at high risk of acquiring HIV" and "the individual on PrEP has been deemed to be at high risk of acquiring HIV, so if they acquire HIV the risk is the same."  (SOF ¶ 44).

Mutual moved this Court to order Plaintiff to provide a more detailed response to this interrogatory.  [Doc. # 72,73].  The Court denied that motion.  [Doc. # 93].  Discovery has now closed.

On this record, even with all reasonable inferences drawn in Plaintiff's favor, Count I must be dismissed as a matter of law.  Plaintiff alleges that Mutual regarded him as having a high risk of contracting HIV.  Even assuming that a person who is HIV positive is "physically or mentally disabl[ed]," Mass. Gen. Law c. 272, § 98, the *higher risk* of contracting HIV is not an actual disability.  There is no possible definition of "disabled" or "disability" that a *higher risk* of a disability is a disability in and of itself.  And of course, Mutual, in offering insurance, can legally discriminate between risk classes of people where there is a legitimate underwriting

reason to do so.  Telles, 574 N.E.2d at 360 (quoting Life Ins. Ass'n of Massachusetts, 530 N.E.2d at 171).

Moreover, the Massachusetts Public Accommodations, Mass. Gen. Laws ch. 272, § 98 does not include within its protected class those who are "regarded as" having a disability.  (Am. Compl., ¶ 32).  Mass. Gen. L c. 272, s. 98 states that "whoever makes any distinction, discrimination or restriction on account of . . . any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation . . . shall be liable . . ."  The plain language of the statute says nothing about being " regarded as" disabled.  It only speaks to actual disability.  Importantly, in 2000, the Massachusetts Commission Against Discrimination ("MCAD") considered amending the term "any physical or mental disability" used in Mass. Gen. L c. 272, s. 98 by adopting regulations that would add being "as regarded" disabled as within the protected class under the statute.  But MCAD did not adopt that amendment in 2000 or any year since then.  Compare Proposed Mass. Code. tit. 804, ch. 5.00 available at https://www.umass.edu/legal/Levinsky/paregs.htm and https://www.umass.edu/legal/Levinsky/regs.Feb2000.htm with Current Mass. Code. Reg. tit. 804, ch. 5.00 ("reserved").  See Currier, 965 N.E.2d at 830 (applying Mass. Gen. Laws c. 272, s. 98 and noting that "[w]e . . . are guided in our interpretation of the statute by the construction afforded by the commission [MCAD]").

Plaintiff creatively cites to Mass. Gen Laws c. 151B, §1(17) to define "disability" under Mass. c. 272, §98.  However Mass. Gen Laws c. 151B, §1(17) has no relationship with Mass. Gen. Laws c. 272, §98. They are separate statutes – c. 151B prohibits discrimination in employment and c.272, § 98 prohibits discrimination in public accommodations.  Their only limited connection is that Mass. Gen. Laws c. 272, § 98 permits recovery of the same

"enumerated" damages as the employment statute.  See also Mass. Gen Laws c. 151B, §5

(directing that claims under Mass. Gen. Laws c. 272, § 98 to proceed to MCAD).  Moreover,

Mass. Gen. Law 151B, §1(17) does not even use the word "disability," rather the term applied to

that statute is "handicap": "mean[ing] (a) a physical or mental impairment which substantially

limits one or more major life activities of a person; (b) a record of having such impairment; or (c)

being regarded as having such impairment." Mass. Gen. Law 151B, §1(17).  Notably, that Mass.

Gen. Law 151B clearly brings those being "regarded as" handicapped within its protected class

is further evidence that the Massachusetts's legislature knew how to write a law to include

"regarded as" disabled within the protected class.  Here, the legislature and MCAD decidedly did

not do so for the public accommodations statute, Mass. Gen. Laws c. 272, s. 98.

In sum, Count I must be dismissed because the *higher risk* of a disability is not a

recognized disability and being regarded as disabled is not actionable under the Massachusetts

public accommodations statute.

## **CONCLUSION**

For the foregoing reasons, summary judgment with prejudice should be granted on all of

the claims contained in Plaintiff's Amended Complaint along with dismissal as a matter of law.

Respectfully submitted,
MUTUAL OF OMAHA
INSURANCE COMPANY,
By Its Attorneys,

May 18, 2018

*/s/    Brooks R. Magratten*
Brooks R. Magratten, Esq. BBO#650393
Katharine Kohm, Esq. BBO#675362
PIERCE ATWOOD LLP
1 Financial Plaza, 26th Floor
Providence, RI 02903
(401) 490-3422
(401) 588-5166 (fax)
bmagratten@pierceatwood.com

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on May 18, 2018, and that it is available for viewing and downloading from the Court's ECF system. Service by electronic means has been effectuated on all counsel of record.

|  |  |
|---|---|
| Bennett H. Klein, BBO# 550702 | Nicole Kinsely, BBO #682528 |
| GLBTQ Legal Advocates & Defenders | Foley Hoag LLP |
| 30 Winter St. Suite 800 | Seaport World Trade Center West |
| Boston, MA 02108 | 155 Seaport Boulevard |
| 617-426-1350 | Boston, MA 02210 |
| bklein@glad.org | (617) 832-1185 |
|  | nkinsely@foleyhoag.com |

John P. Ward, BBO# 515860
Law Offices of John P. Ward
584 Castro St., No. 802
San Francisco, CA 94114
415-255-4996
johnpward@gmail.com

/s/    *Katharine E. Kohm*